## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

CSW Consulting, Inc., a Colorado
corporation; Colorado Colitas, LLC,
d/b/a Herbal Remedies, a Colorado
limited liability company; and,
Carl S. Wemhoff, an individual.

Petitioners,

v.

UNITED STATES OF AMERICA,
through its agency the INTERNAL
REVENUE SERVICE,

Respondent.

---

## PETITION TO QUASH SUMMONSES

---

PETITIONERS, CSW Consulting, Inc., a Colorado corporation, Colorado Colitas, LLC,

d/b/a Herbal Remedies, a Colorado limited liability company, and Carl Wemhoff, an individual,

by and through their undersigned attorneys, submit the following Petition to Quash Summonses

as follows:

### CERTIFICATION REGARDING DUTY TO CONFER

Pursuant to Local Rule 7.1, below signed counsel hereby certifies that on February 7,

2018, prior to filing this Petition to Quash, he conferred with counsel for the Respondent.

Respondent's counsel responded that he objects to the relief sought.

### STATEMENT WITH REGARD TO STANDING

The Petitioners are the Taxpayers that are the subject of the summonses at issue. The

records being summonsed are purportedly that of the Taxpayers. As such, the Taxpayers have the

right to petition to quash these third-party summonses. See *Gudenau v. United States,* 2006 U.S. Dist. LEXIS 79896. U.S. Bank National Association and Wells Fargo Bank are both Third-Party Recordkeepers under Section 7609. Likewise, the Marijuana Enforcement Division of the Colorado Department of Revenue is also a Third-Party Recordkeeper under Section 7609. Both the Federal Government and the State of Colorado have affirmed this fact. See Exhibit 1. The summonses at issue were served upon the Petitioners on January 18, 2018. See Exhibit 2. The Petitioners have timely filed their Petition to Quash on February 7, 2018. The Petition was timely served upon the IRS Auditor, U.S. Bank National Association, Wells Fargo Bank, and the Colorado Department of Revenue, Marijuana Enforcement Division by certified mail return receipt requested on February 7, 2018.

## I.   INTRODUCTION

The Government alleges that the Petitioners have violated federal law – that they are unlawfully trafficking in marijuana. To this end, the Government, through the IRS, claims that Section 280E of the Tax Code is applicable. Section 280E disallows deductions to unlawful drug traffickers. Through these summonses, the Government seeks to establish the necessary elements of unlawful drug trafficking to apply Section 280E.

The Government has contended that it has the right and duty to share the same information obtained with the Department of Justice and other law enforcement agencies for criminal prosecution purposes. The Government makes general assertions that the Petitioners do not have sufficient evidence demonstrating this information sharing, but never outright denies that it is doing so. Also, the Government's actions are coming contemporaneously with Attorney General Jeff Sessions' rescinding of the *Cole* and *Ogden* memos – an indication that criminal prosecutions of the marijuana industry may be imminent.

As will be discussed further below, the petition to quash should be granted because:

- The IRS has not completed the administrative steps necessary for the issuance of a summons.

- The IRS has not been given authority by Congress to investigate and administratively determine that a person has committed a nontax drug crime;

- The IRS cannot compel taxpayer information about nontax crimes for tax purposes without a concurrent grant of immunity;

- The summonses violate the Petitioners rights to privacy under the Fourth Amendment;

- The request for "all associated licensees related to the individuals and entities listed" is unenforceable because it is overbroad;

- The continuation of the IRS's investigation into nontax drug crimes and resulting summonses without referral to the Justice Department violates the "good faith" standard under *Powell*;

- The enforcement of the summonses against the State of Colorado would compel a person to commit a state law crime, and the Court should not use its powers to compel individuals to commit such criminal activity; and,

- The IRS cannot compel the State of Colorado to create reports which are not currently in existence.

## II.   FACTS AND BACKGROUND

### A.  The Audit.

Petitioner CSW Consulting, Inc. ("CSW") is a Colorado corporation in good standing. On or about August 3, 2017, Mr. Hewell provided an Information Document Request ("IDR") to CSW for 2013, 2014, and 2015 documents. See Exhibit 3. On or about September 27, 2017, Mr. Hewell provided a second IDR to CSW for additional documents. See Exhibit 4.

On or about December 19, 2017, Mr. Hewell issued a third IDR to CSW for additional 2013, 2014, and 2015 documents, as well as 2016 documents. See Exhibit 5. Importantly, no notice of audit was issued for the 2016 tax period. It is also important to note that, between

September and December of 2017, Mr. Wemhoff received no communication from Mr. Hewell regarding his audit. See Declaration of Carl Wemhoff, attached hereto. In discussions between Mr. Hewell and counsel, Mr. Hewell indicated that he did not want to move forward with the audit but was directed by his supervisor to issue the third IDR in December of 2017. Instead of moving forward with the audit, Mr. Hewell issued summonses for information regarding CSW to U.S. National Bank Association, Wells Fargo Bank, and the Colorado Department of Revenue, Marijuana Enforcement Division, requesting information for the period of January 1, 2013 through December 31, 2016 on or about January 18, 2018. See Exhibit 2.

Petitioner Colorado Colitas LLC, d/b/a Herbal Remedies ("Herbal Remedies"), is a Colorado limited liability company in good standing. Significantly, Mr. Hewell never issued a notice of audit or any IDRs to Herbal Remedies. Nevertheless, on or about January 18, 2018, Mr. Hewell issued summonses for information regarding Herbal Remedies to U.S. National Bank Association, Wells Fargo Bank, and the Colorado Department of Revenue, Marijuana Enforcement Division. See Exhibit 2.

Petitioner Carl Wemhoff is an individual taxpayer. On or about December 19, 2018, Mr. Hewell issued an IDR to Mr. Wemhoff for 2014, 2015, and 2016 documents. However, Mr. Hewell only provided a notice of audit for the 2014 and 2015 tax years. See Exhibit 6. Rather than carrying on the audit at this time, Mr. Hewell issued summonses for information regarding Mr. Wemhoff to U.S. National Bank Association, Wells Fargo Bank, and the Colorado Department of Revenue, Marijuana Enforcement Division on or about January 18, 2018. See Exhibit 2.

In the IDRs, Mr. Hewell repeatedly requested the Petitioners to obtain reports from the State of Colorado's METRC system. See Exhibits 3-6. The reports requested were the same as

demanded in the summons. See Exhibit 2. Mr. Hewell has not explained why these reports are relevant or why these third-party analytical reports are necessary for his examination. It is important to note, as discussed further below, METRC does not contain any financial information of substance. It is a plant tracking system. The only information the Government will receive through these summonses will be related to the alleged possession and distribution of marijuana.

Through discussions with Petitioner's counsel, Mr. Hewell has been clear that the focus of his audit is to investigate whether the Petitioners were unlawfully trafficking in a controlled substance. Since the information the IRS seeks to obtain through the IDRs and summonses is the same information that could be used by the Department of Justice to "convict overwhelmingly" (possession and distribution of marijuana), the Petitioners requested that immunity be granted. The IRS has the power to grant Petitioners immunity. See 18 USC §6004. However, Mr. Hewell has confirmed in writing that no immunity will be granted. See Exhibit 7.

Given the admission by the IRS that this audit is, at least in part, an investigation of whether the taxpayers violated federal criminal drug laws, and the fact that the Respondent is reserving all rights to prosecute, Carl Wemhoff is fully asserting Fifth Amendment privilege. See Declaration of Carl Wemhoff, attached hereto.

### B.  The Summonses.

In discussions with Petitioners' counsel, Mr. Hewell has been clear that the focus of his audit is to investigate whether the Petitioners were unlawfully trafficking in controlled substances to impose 26 U.S.C. §280E against Petitioners.

To investigate this alleged criminal activity, Mr. Hewell issued summonses to obtain banking information about the Petitioners from U.S. Bank National Association and Wells Fargo

Bank for the period of January 1, 2013 through December 31, 2016. Mr. Hewell also issued a summons to the Colorado Department of Revenue, Marijuana Enforcement Division ("MED"), requesting employees of the MED to create custom analytical reports based upon raw data purportedly provided by the Petitioners to the State. Specifically, Mr. Hewell is demanding that the State prepare the following analytical reports of the Taxpayers' raw data through its database known as *Marijuana Enforcement Tracking Reporting Compliance* system, commonly known as METRC:

- Copy of the METRC Annual Gross Sales Report for the period of January 1, 2013 through December 31, 2016;

- Copy of the METRC Transfers Report for the period of January 1, 2013 through December 31, 2016;

- Copy of the METRC Annual Harvest Report for the period of January 1, 2013 through December 31, 2016;

- Copy of the METRC Monthly Plants Inventory Report for the period of January 1, 2013 through December 31, 2016; and,

- All associated licensees related to the individuals and entities listed for the period of January 1, 2013 through December 31, 2016.

To this end, the IRS has converged on Colorado and is conducting mass audits of those it has determined to be unlawfully trafficking in controlled substances. The IRS is dishing out summonses like candy to establish that taxpayers are unlawfully trafficking in controlled substances. For example:

> The IRS made initial findings that Green Solution trafficked in a controlled substance and is criminally culpable under the CSA. The IRS then requested that Green Solution turn over documents and answer questions related to whether Green Solution is disqualified from taking credits and deductions under § 280E. It is undisputed the IRS has not made an assessment or begun collection proceedings.

*Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1113 (10th Cir. 2017). See also, *Futurevision, LTD v. United States,* 1:17-mc-00041-RBJ (D. Colo.) (IRS summonsing METRC claiming that the Petitioner unlawfully trafficked in a controlled substance.); *Nutritional*

*Elements v. United States,* 16-MC-0188-PAB (D. Colo.) (Same); *Nutritional Elements v. United States,* 17-mc-00052-RM (D. Colo.) (Same); *Colorado's Best, Inc. v. United States*, 1:17-mc-00154-RBJ (D. Colo.) (Same); *Green Solution, Inc. v. United States*, 1:16-mc-00137-PAB (D. Colo.) (Same); *Eric Speidell*, 1:16-mc-00162-PAB (D. Colo.) (Same); *Medicinal Wellness Center, LLC v. United State*s, 1:17-mc-00170-PAB (D. Colo.) (Same); *Rifle Remedies, LLC v. United States*, 1:17-mc-00062-RM (D. Colo.) (Same); *Standing Akimbo, LLC v. United States,* 1:17-mc-00169-WJM-KLM (D. Colo.) (Same); *High Desert Relief, Inc. v. United States*, 1:16-CV-469 MCA/SCY (D. N.M.) (IRS summonsing information from New Mexico Medical Cannabis Program claiming that the Petitioner unlawfully trafficked in a controlled substance.); *High Desert Relief, Inc. v. United States*, 1:16-CV-816 MCA/SCY (D. N.M.) (Same); and *Feinberg v. C.I.R.,* 808 F.3d 813 (10th Cir. 2015).

Despite the Government's assertion that it seeks the information solely to assess tax, the audit investigation and Section 280E are directed to an area "permeated with criminal statutes", towards a group "inherently suspect of criminal activities". *Marchetti v. United States,* 390 U.S. 39 (1968). As a result, the standard analysis of the regulatory tax system does not apply. This is because the IRS's investigation of inherently criminal activity poses a "constitutional difficulty" – sacrificing Fourth and Fifth Amendment rights when the information is compelled. When the IRS attempts to use the tax power to engage in such investigative activity, there has been specific standards which have been developed. As will be discussed further below, the IRS summons does not meet the special standards for investigating those inherently suspect of criminal activities and must be quashed.

### C. The METRC System.

METRC is a database tracking system used for marijuana regulatory compliance in the State of Colorado. See Exhibit 8. The Department of Revenue, Marijuana Enforcement Division ("MED") controls METRC. *Id.* Information regarding the tracking of marijuana plants is input into METRC so there can be a "traceable chain of custody" of the plants. *Id.* at 14. Those who are subject to the regulation must submit raw data to MED, which is placed into the METRC

database. *Id.* Based upon this raw data "the regulatory body can use the reporting engine to build ad hoc reports based on their individual needs." *Id.*

It is important to note that there is no business, accounting, or financial information provided to METRC. C.R.S. §12-43.3-701 and CCRM 901-904 only require that the licensee's business information be located on the licensee's premises and be available for review by MED. The licensee's business, accounting and financial information is not input into METRC. METRC is for a completely different purpose – to trace the chain of custody of the plants. Accordingly, the only information the Government will receive through these summonses will be related to the alleged possession and distribution of marijuana.

Notably, this information is confidential. MED must:

Maintain the confidentiality of reports or other information obtained from a medical or retail licensee containing any individualized data, information, or records related to the licensee or its operation, including sales information, financial records, tax returns, credit reports, cultivation information, testing results, and security information and plans, or revealing any patient information, or any other records that are exempt from public inspection pursuant to state law.

C.R.S. § 12-43.3-202(d).

Moreover, disclosure of METRC information is a state-law crime:

Any person who discloses confidential records or information in violation of the provisions of this article commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501, C.R.S.

C.R.S. §12-43.3-201(5).

A class 1 misdemeanor carries a penalty of up to eighteen months imprisonment and a five thousand dollar fine. C.R.S. 18-1.3-501.

There is no exception in the statutes allowing disclosure of METRC information to federal authorities. This makes sense given the current tension between federal and state law.

Thus, if the Court orders MED to disclose this confidential information, one or more state employees will be compelled to commit a crime.

### D.  Background of Federal Criminal Drug Laws.

Federal laws prohibiting the possession and distribution of marijuana have been around since the 1930s. For purposes of this discussion, the relevant statutes begin with the *Narcotics Control Act.* On or about July 18, 1956, Congress passed the *Narcotics Control Act.* Public Law 728; - 84th Congress Chapter 629 - 2d Session H.R. 11619 All 70 Stat. 567 ("NCA"). The NCA penalized the possession and distribution of marijuana as well as taxed the possession thereof. *Id.*, Sec. 101. The NCA was made part of the Internal Revenue Code with the Department of Treasury/IRS being the agency in charge of its enforcement. *Id.*

In 1969, the Supreme Court in *Leary v. United States,* 395 U.S. 6 (1969) declared parts of the NCA unconstitutional. The Court was especially concerned that the NCA required disclosure of a criminal act (sale/possession of marijuana) to the IRS for tax purposes, but allowed for sharing of the same information for criminal prosecution purposes. *Id.* The *Leary* Court discussed the Fifth Amendment "constitutional difficulty" of compelling a taxpayer to disclose facts of a federal crime for tax purposes, while allowing these same facts to be shared by the government for prosecution purposes. *Id.* at 26.

In response to *Leary*, Congress repealed the NCA and adopted the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("CSA"). Public Law 91-513, now codified in 21 U.S.C. §801, et seq. Congress adopted important provisions to comply with *Leary.* First, the jurisdiction of the Department of Treasury/IRS to investigate federal drug crimes was removed and given to the Attorney General and, by delegation, Department of Justice. See 21 U.S.C. §871. Second, the CSA precluded the Attorney General, and any of its delegates thereof, from

obtaining financial records from the subjects of its investigation of violations of federal criminal drug laws. See 21 U.S.C. §880(b)(4). Congress further clarified that the Secretary of Treasury's only remaining authority over federal criminal drug laws is with respect to customs and import and export of drugs out of the country. See 21 U.S.C. §966. Thus, Congress created a "Chinese wall" between the IRS and the investigation of violations of federal criminal drug laws. This wall is an important component of the CSA to assure that the amended Tax Code and the CSA did not infringe on the "constitutional difficulty" expressly addressed by repeal of the NCA.

In *Marchetti v. United States,* 390 U.S. 39 (1968), the Supreme Court found the same constitutional difficulty in the Wagering Tax Act. The Court noted that while Congress can tax such illegal activity, there are constitutional limitations:

> We are fully cognizant of the importance for the United States' various fiscal and regulatory functions of timely and accurate information (citation omitted); but other methods, entirely consistent with constitutional limitations, exist by which Congress may obtain such information.

*Marchetti v. United States,* 390 U.S. at 60.

The Supreme Court cited to *Counselman v. Hitchcock,* 142 U.S. 547 (1892) for its authority. In *Counselman*, the Supreme Court held that if Congress wishes to use its tax power to compel books and records, Congress must afford absolute immunity against future prosecution for the offence to which the question relates. *Counselman*, 142 U.S. at 586. In this case, the "offense to which the question relates" is unlawful drug trafficking. Thus, absolute immunity from prosecution under federal criminal drug laws should be afforded to the Petitioners.

Congress corrected the constitutional difficulty by prohibiting IRS from sharing the incriminating evidence with law enforcement and provided absolute immunity from prosecution. See 26 U.S.C. § 4424; see also *United States v. Sahadi*, 555 F.2d 23 (2d Cir. 1977) for a

discussion of the corrective actions taken by Congress to cure the constitutional difficulty in the wagering excise tax laws.

### E.  Section 280E.

Section 280E is very concise:

> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

26 U.S.C. §280E

The elements of Section 280E are: (1) person; (2) in the person's trade or business; (3) "traffics"; (4) in a Schedule I or II controlled substance; (5) prohibited by federal or state law. 26 U.S.C. § 280E. Thus, for Section 280E to apply, the taxpayer must have engaged in unlawful drug trafficking – a nontax crime. Since the sale of marijuana is lawful in Colorado, the unlawfulness would have to be found in federal law, e.g., the Controlled Substances Act, 18 U.S.C. §801, *et seq.*

Historically, the application of Section 280E by the IRS came after a conviction of drug law violations. See, e.g., *Bender v. Comm.,* T.C. Memo 1985-375; *Sundel v. Comm.,* T.C. Memo 1998-78. However, the IRS became more aggressive after states began to make the sale of marijuana legal and the Justice Department declined to enforce federal marijuana laws. See Memorandum by David W. Ogden, Deputy Att'y Gen., U.S. Dep't of Justice to Selected U.S. Att'ys (Oct. 19, 2009), revised by Memorandum from James M. Cole, Deputy Att'y Gen., U.S. Dep't of Justice (Aug. 29, 2013). By the time of *Feinberg v. C.I.R.,* 808 F.3d 813 (10th Cir. 2015), the IRS was in full swing of administratively determining that taxpayers selling state-legal marijuana were criminally culpable under federal law. For example:

The IRS made initial findings that Green Solution trafficked in a controlled substance and is criminally culpable under the CSA.

*Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1113 (10th Cir. 2017).

At this time, the Government took the position that, given the Cole and Ogden memos, the taxpayer did not have to worry about prosecution based upon IRS investigations. Even then, the Court was skeptical:

So it is the government simultaneously urged the court to take seriously its claim that the petitioners are violating federal criminal law and to discount the possibility that it would enforce federal criminal law.

*Feinberg, supra.*

Now, most recently, Attorney General Jeff Sessions has rescinded the Cole and Ogden memos, raising the distinct possibility that the Government will move forward on criminal prosecutions against those in the marijuana industry. See Exhibit 10. So, it cannot be ignored that these summonses come at a time where the threat of criminal prosecution is real and potentially imminent.

Given the Government's assertion that the information summoned can and will be shared with federal law enforcement, the Court should take special care in determining the outcome of these petitions.

## III.   ARGUMENT

### A.  Standard of Review.

To be enforceable, a summons issued by the IRS must satisfy the standard set forth in *United States v. Powell*, 379 U.S. 48 (1964). See, e.g., *United States v. Balanced Fin. Mgmt., Inc.,* 769 F.2d 1440, 1444 (10th Cir. 1985). In *Powell*, the Court held that the IRS need not meet any standard of probable cause if the Commissioner can show that:

1)  The investigation will be conducted pursuant to a legitimate purpose;

2) The inquiry may be relevant to the purpose;

3) The information sought is not already within the Commissioner's possession; and,

4) The administrative steps required by the Code have been followed – in particular, that the IRS, after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.

See *Id.* (quoting *Powell,* 379 U.S. at 57-58).

Once the government makes a sufficient preliminary showing for enforcement under the *Powell* factors, the burden shifts to the taxpayer to disprove one of the four *Powell* criteria, or to demonstrate that judicial enforcement should be denied on the ground that it would be "an abuse of the court's process" or "on any appropriate ground." *United States v. Beacon Federal Sav. & Loan*, 718 F.2d 49, 52 (2d Cir. 1983). See also *United States v. Powell*, 379 U.S. at 58, quoting *Reisman v. Caplin*, 375 U.S. 440, 449. When a taxpayer does so, the court must go above and beyond the *Powell* factors to decide whether to enforce a summons. *United States v. Beacon Federal Sav. & Loan*, 718 F.2d at 52. Potential constitutional violations are issues which should be addressed when considering enforcement of a summons. *Id.* at 53 (noting that the IRS, like all other governmental agencies, must obey the Constitution).

Additionally, the IRS should not be allowed to use its summons power to conduct a "fishing expedition" on the records of third parties only tangentially related to the finding of taxpayer's income and expenses. *United States v. Coopers & Lybrand,* 550 F.2d 615, 619-20 (10th Cir. 1977). A summons should only be issued when: (1) the information required is vital to the investigation; (2) the taxpayer or third-party summonee is unreasonably refusing to cooperate; and (3) the information cannot be easily obtained from other sources. See, G. SUMMONS AND ENFORCEMENT by George Johnson and Marvin Friedlander.

13

https://www.irs.gov/pub/irs-tege/eotopicg93.pdf. Defendants fail to meet these elements and the elements set forth in *Powell.*

**B.  The IRS Has Not Completed the Administrative Steps Necessary for the Issuance of a Summons.**

To comply with the *Powell* requirements, the administrative steps required by the Code must be followed. The Internal Revenue Manual states, "*All* possible efforts should be made to contact taxpayers whose cases are to be examined." *See* IRM 4.22.6.2. In this case, there is nothing in the record to show that the IRS has served the CSW or Carl Wemhoff with a Notice of Audit for 2016. Moreover, there is no evidence that the IRS has opened Herbal Remedies for audit of any of the tax periods listed on the summonses. Thus, the IRS has failed in this step.

**C.  The Summonses Were Not Issued for a Legitimate Purpose Because Congress Did Not Empower the IRS to Investigate Violations of Federal Criminal Drug Laws.**

Section 280E contains no language authorizing the IRS to investigate or administratively determine that a taxpayer is unlawfully trafficking in a controlled substance. Thus, the IRS does not have the power to take those actions. If Congress wants to assign the executive branch discretion to administratively define criminal conduct, it must speak "distinctly." *United States v. Grimaud*, 220 U.S. 506, 519 (1911); *United States v. Eaton*, 144 U.S. 677, 688 (1892). This is because criminal statutes "are for courts, not for the Government, to construe." *Abramski v. United States*, 134 S. Ct. 2259, 2274 (2014).

This clear-statement rule reinforces horizontal separation of powers in the same way that *Gregory v. Ashcroft*, 501 U.S. 452 (1991) reinforces vertical separation of powers. It compels Congress to legislate deliberately and explicitly before departing from the Constitution's traditional distribution of authority.

There has been no specific delegation of authority by Congress to the IRS to determine under what circumstances a taxpayer violates the CSA. It is completely absent in the Tax Code – especially Section 280E. In fact, as discussed above, Congress took away the IRS authority to investigate and find violations of federal criminal drug laws to comply with *Leary.*

To conclude otherwise would seriously question the constitutionality of Section 280E. As discussed above, a tax statute which allows (1) the IRS to investigate and compel incriminating evidence of nontax crimes; (2) share the incriminating evidence with law enforcement; and (3) without a grant of absolute immunity, renders the statute invalid and unconstitutional. *Counselman, supra.; Marchetti, supra.; Leary, supra.* "Where fairly possible, courts should construe a statute to avoid a danger of unconstitutionality". *Ohio v. Akron Center for Reproductive Health,* 497 U.S. 502, 514 (1990). Giving the authority to the IRS to administratively investigate and determine nontax crimes would certainly jeopardize the constitutionality of Section 280E and should not be allowed.

Furthermore, the Government incorrectly asserts that the Court of Appeals in *Green Solution Retail v. United States,* 855 F.3d 1111 (10th Cir. 2017) gave the IRS authority to administratively investigate and determine violations of federal criminal drug laws. As the *Green Solution* court stated:

> To the extent Green Solution argues the IRS exceeded its authority under the Internal Revenue Code, we lack subject matter jurisdiction to consider the merits of the argument. We decide here ***only*** that the IRS's efforts to assess taxes based on the application of § 280E fall within the scope of the AIA. (Emphasis Added)

*Id.,* at n.8.

Allowing the IRS to obtain information in excess of its powers would violate the legitimate purpose requirement of *Powell. United States v. Powell*, 379 U.S. at 57-58. Because the summonses were not issued for a legitimate purpose – i.e., investigations of crimes outside

the tax code – the IRS must satisfy the probable cause standard. See generally *United States v. Powell*, 379 U.S. at 57-58. See also *Camara v. Municipal Court*, 387 U.S. 523 (1967).

Since Congress did not empower the IRS to investigate violations of federal criminal drug laws, the summonses are not issued for a legitimate purpose and should be quashed.

### D. The IRS should not be Allowed to Investigate the Nontax Crimes without a Grant of Immunity.

As discussed above, the Supreme Court has made clear that the Government cannot use the tax power to compel books and records to determine nontax crimes without a grant of absolute immunity if that information can be shared with law enforcement agencies for prosecution purposes. *Counselman, supra.; Marchetti, supra.; Leary, supra.*

In this case, the IRS may share the incriminating evidence of drug trafficking with the Department of Justice in its discretion. See 26 U.S.C. §6013(i)(3). The Government's position is clear – it claims that it not only has the right but the duty to share the incriminating information with the Department of Justice that it obtains through these 280E audits and cannot agree to any limitation on use or immunity:

> [T]he IRS could not agree to such a condition, because I.R.C. § 6103(i) requires the IRS to turn over documents received from taxpayers to other federal agencies in certain circumstances.

Government Response Brief, *High Desert Relief v. United States,* 17-2083, p. 47 (also attached hereto as Exhibit 11).

So, the IRS simultaneously asserts that the investigation of violations of federal criminal drug laws is "strictly civil", but is compelled to share the same incriminating information to law enforcement for prosecution purposes. It is also clear that the government is reserving all rights to use this information in a nontax criminal prosecution. Petitioners requested that absolute immunity be granted. Despite the fact that the IRS has the power to grant Petitioners immunity

under 18 USC §6004, Mr. Hewell confirmed in writing that no immunity will be granted. See Exhibit 7.

Until immunity is granted, the Court should not grant the summonses to allow the IRS to obtain the allegedly incriminating information.

### E. The Summonses Compel Information for Which There is a Reasonable Expectation of Privacy in Violation of the Fourth Amendment.

As discussed above, any information provided to MED by the Petitioners is confidential. It is a state law crime to disclose this information. Thus, the Petitioners have a reasonable expectation of privacy to the information (assuming it does exist), and are privileged. Fed.R.Evid. 501; *Judd v. Cedar St. Venture*, 256 P.3d 687, 691 (Colo. 2011); see also *Jaffee v. Redmond*, 518 U.S. 1 (1996) (A rule that authorizes the recognition of new privileges on a case-by-case basis makes it appropriate to define the details of new privileges in a like manner.) Additionally, seeking information of non-tax crimes requires a warrant and a finding of probable cause. Therefore, the Fourth Amendment prohibits disclosure of the summonsed information.

### 1. The Information Compelled Is Privileged and Private.

Potential Fourth Amendment violations are an issue which should be addressed when considering enforcement of a summons. *United States v. Beacon Federal Sav. & Loan*, 718 F.2d at 53. If granting enforcement of a summons results in an unconstitutional search, the summons should not be enforced. "[T]he court would be furthering the effects of, if not actually encouraging, unconstitutional conduct and that by doing so, the taxpayer may suffer from the unconstitutional conduct in ways that cannot later be remedied." *Id*. at 54.

In the instant case, the government is attempting to obtain control of Petitioners' private data purportedly contained in the MED database. The information allegedly provided by the Petitioners to MED is confidential and statutorily protected from disclosure.

The Fourth Amendment protects people from unreasonable searches and seizures of property, including data[1] of persons and objects, in which they have a subjective expectation of privacy that is deemed reasonable in public norms. *U. S. Const. amend. IV.* Using the two-prong expectation of privacy test developed in *Katz v. United States*, 88 S.Ct. 507 (1967), a person must have exhibited an actual expectation of privacy and the expectation must be one that society in general would recognize as reasonable. If these requirements are both met, then Fourth Amendment procedural protections apply.

A person has a subjective expectation of privacy if the person can show that the information sought was kept in a manner to conceal it from the public. *Id.* In the instant case, the Colorado Revised Statutes compel those who are subject to the regulation to submit plant tracking information to MED, which is placed into the METRC database to allow MED to follow the chain of custody of the plants. C.R.S. 12-43.4.202(1)(h). The licensees do not voluntarily give this information; rather, those subject to the regulations face state criminal penalties for failure to report to the MED. Further, C.R.S. 12-43.4.202(1)(d) provides that the MED must maintain the confidentiality of reports or other information obtained from a licensee. Finally, C.R.S. 12-43.3-210(5) provides: "Any person who discloses confidential records or information in violation of the provisions of this article commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501, C.R.S." Thus, the Petitioners have an expectation of privacy in their data.

The second part of the test asks whether society at large would deem a person's expectation of privacy to be reasonable. *Katz, supra.* Here, the information sought is kept in a manner where one would reasonably expect lack of public access. Moreover, the Colorado

---

[1] Data is considered property for Fourth Amendment purposes. *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2008).

legislature has safeguarded taxpayers' privacy through the above-mentioned statutes. Therefore, Petitioners have a reasonable expectation of privacy.

## 2. Seeking Information of Nontax Crimes Requires a Warrant and a Finding of Probable Cause.

The Fourth Amendment states: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *U. S. Const. amend. IV*. However, the Fourth Amendment protections are relaxed with respect to tax administration in order to ensure compliance with the revenue laws. See generally *Powell, supra*. See also *United States v. Roundtree*, 420 F.2d 845, 850 (5th Cir. 1969).

If the IRS was simply seeking information regarding income, expenses, or even tax fraud, the relaxed standard would apply. However, the IRS is searching for documents supporting nontax crimes – the distribution or sale of marijuana. Therefore, in this context, "a summons submitted to a court for enforcement is at least equivalent to a search warrant." *Id.* Accordingly, the Fourth Amendment protections apply.

Since the IRS is seeking information of nontax crimes, the IRS will need to seek a warrant and not merely a summons to obtain this information.

> "*Powell* did not explicitly consider constitutional limitations on the Commissioner's power. But in our view, *Camara v. Municipal Court*, 1967, 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930, and *See v. City of Seattle*, 1967, 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943, two recent fourth amendment decisions, compel no different result. In those two cases the Court set out to "reexamine whether administrative inspection programs, as presently authorized and conducted, violate Fourth Amendment rights". 387 U.S. at 525, 87 S. Ct. at 1729. The Supreme Court in *Camara* found that the fourth amendment's basic purpose is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials". 387 U.S. at 528, 87 S. Ct. at 1730. The use of a search warrant is necessary, the Court ruled, even in a case where the state court had found that the search was "'part of a regulatory scheme which is essentially civil rather than criminal in nature, * * * [and the] right of inspection *

> * * is limited in scope and may not be exercised under unreasonable conditions'".
> 387 U.S. at 528, 87 S. Ct. at 1730."

*Id.* at 849 (5th Cir. 1969).

Thus, for the IRS to compel the information of inherently criminal nontax activity, it must obtain a warrant.

Given that the Petitioners have a reasonable expectation of privacy and the IRS has not obtained a warrant, the court should not enforce the summons and allow the IRS to access information in a way that will allow the IRS to violate the Petitioners' Fourth Amendment rights.

### F. The Request for "All Associated Licensees Related to the Individuals and Entities Listed" Is Unenforceable Because It Is Overbroad.

It is well established that "[a] summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the ends sought." *United States v. Coopers & Lybrand,* 550 F.2d 615, 621 (10th Cir. 1977), citing *United States v. Harring*ton, 388 F.2d 520, 523 (2d Cir. 1968). The IRS may not use its summons power to conduct a "fishing expedition" on the records of third parties only tangentially related to the finding of taxpayer's income and expenses. *United States v. Coopers & Lybrand,* 550 F.2d at 619-20.

Although the IRS has broad investigatory powers under 26 U.S.C. § 7602, taxpayers are afforded a substantial protection by the requirement in 26 U.S.C. § 7604 that IRS summonses be enforced by the courts. *Id.* at 620, citing *United States v. Bisceglia*, 420 U.S. 141, 143 (1975); see also, *Reisman v. Caplin*, 375 U.S. 440, 445-46 (1964). As the *Harrington* court emphasized, the "judicial protection against the sweeping or irrelevant order is *particularly* appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party who may have some dealings with the person under investigation." *United States v. Coopers & Lybrand*, 550 F.2d at 621 (emphasis added), citing *United States v. Harrington*, 388 F.2d at 523.

In the instant case, the IRS is asking this Court to enforce an overbroad summons. Specifically, the summons issued to the MED requests "all associated licensees related to the individuals and entities listed" for the period of January 1, 2013 through December 31, 2016. Thus, the IRS is requesting the identity of third parties who may have dealt with the Petitioners in the past

Information about third-parties "associated" with the Petitioners goes way beyond information needed to determine Petitioners' income and expenses. The Government does not explain how the identity of these other third parties will help in this audit. However, seeking the identity of other unknown third parties who may have dealt with the Petitioners is not a proper purpose of these summonses.

In order to obtain the identities of these third parties, the IRS must comply with the provisions of 26 USC 7609(f) regarding John Doe summonses. In particular, the IRS must demonstrate:

1) The summons relates to the investigation of a particular person or ascertainable group or class of persons;

2) There is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law; and,

3) The information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

26 U.S.C. § 7609(f)

The IRS has not demonstrated any of the above to be present in this case. Thus, the IRS should not be allowed to obtain the identify of other third parties with which the Petitioners may have dealt.

Given the above, the request to the MED for "all associated licensees related to the individuals and entities listed" is overbroad and accordingly should not be enforced.

### G.  The Investigation into Inherently Criminal Activity is not in Good Faith.

The absence of a Justice Department referral is a statutory requirement for the issuance of a summons or the commencement of an enforcement action. See 26 U.S.C. § 7602(d). However, the requirement that the "Service not [have] abandon[ed] in an institutional sense ... the pursuit of civil tax determination or collection," is a requirement for finding that the IRS is acting in good faith. *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 309 (1978); *United States v. Lamotte,* 2016 U.S. Dist. LEXIS 61704[2]. The Supreme Court has made clear that an improper purpose includes obtaining evidence when the IRS is seeking evidence of nontax crimes which can be used as evidence in a criminal prosecution. *Reisman v. Caplin,* 375 U.S. 440 (1964).

> To encourage the use of administrative subpoenas as a device for compulsory disclosure of testimony to be used in presentments of criminal cases would diminish one of the fundamental guarantees of liberty. Moreover, it would sanction perversion of a statutory power.

*United States v. O'Connor*, 118 F. Supp. 248, 251 (D. Mass. 1953).

The IRS continues to claim, in an institutional sense, that the Petitioners, as well as many others, are violating federal criminal drug laws by selling marijuana – and that Section 280E must therefore be investigated and applied. However, the Government does not explain why the IRS fails to refer the alleged "obvious" crimes to Department of Justice for prosecution, continues investigation, and then asserts that it has the right and duty to turn over the fruits of its investigation to law enforcement for prosecution of nontax crimes.

---

[2] The referral requirement dealt with the referral of tax fraud crimes and the Supreme Court's analysis of the civil and criminal components of tax fraud. See *LaSalle,* at 308. ("With regard to suspected fraud, these duties encompass enforcement of both civil and criminal statutes."). *Reisman, supra,* analyzed the criminal investigatory powers of the IRS with respect to nontax crimes.

It is not in good faith to allege and investigate by way of summons inherently criminal activity but fail to officially refer the matters to the Department of Justice. *Reisman v. Caplin, supra., LaSalle*, *supra.* At that juncture, the IRS improperly becomes an information gathering agency for law enforcement. *Id.* This is especially so given the recent Memorandum by Attorney General Sessions rescinding the Cole and Ogden memos.

Given the lack of good faith by the IRS, the summonses should be quashed or not enforced.

### H. The Court Should Not Use its Power to Compel Individuals to Commit a State Law Crime.

As explained above, the information allegedly provided by the Petitioners to the MED is confidential and statutorily protected from disclosure. C.R.S. 12-43.3-202(d). In fact, the disclosure of the information sought will be a Colorado state-law crime, punishable by both fine and imprisonment. C.R.S. 12-43.3-201(5). Since the state government necessarily operates through individuals, this means that one or more person would have to commit criminal activity if the Court compels disclosure of the data. Thus, the IRS seeks this Court to compel state-employee individuals to commit a state-law crime by disclosing this information.

The Court should be wary of using its powers to compel a state crime. See *Younger v. Harris,* 401 U.S. 37 (1971); *United States v. Barone*, 781 F. Supp. 1072 (E.D. PA 1991) (Under principles of comity, absent exceptional circumstances, the court should refrain from enjoining criminal prosecutions of state law crimes). Thus, the Court should refrain from compelling the disclosure of the MED data.

### I. The IRS's Summons Power Does Not Extend to Forcing a Party to Prepare or Create Documents.

In the summonses at issue, the "reports" the IRS is demanding are not documents that

were created by the Petitioners. See Declaration of Carl Wemhoff, attached hereto. Petitioners do not believe that these documents are created in the normal course of business by the State. Moreover, there is no evidence that these analytical reports were created by the State during the relevant time. The IRS has the burden to prove that the "reports" were in existence on the date the summons was issued. However, the IRS can present no evidence that the reports requested currently exist.  Rather, the reports summoned are analytical reports which the IRS seeks to have the State create.

The IRS's summons power does not extend to forcing the preparation or creation of documents. *United States v. Davey*, 543 F.2d 996, 1000 (2d Cir. 1976) (The IRS's summons power under "§ 7602 does not require preparation or production of records not yet in existence".); see also Internal Revenue Manual, 5.17.6.1.3 ("A summons cannot require a witness to prepare or create documents, including tax returns, that do not currently exist."). "We wish to emphasize that the burdens of production and proof on the questions of the existence, possession, and authenticity of the summoned documents are on the Government, not the taxpayer." *United States v. Rue*, 819 F.2d 1488, 1493 n.4 (8th Cir. 1987). Furthermore, the date of the service of the summons is the date used to determine the existence of the documents for this inquiry. *Id.* at 1493; see also, *United States v. Greenfield*, 831 F.3d 106, 124 (2d Cir. 2016) (quoting *Rue* "The relevant date on which existence and possession of the documents must be shown is the date on which the IRS summons is served, for it is at that time that the rights and obligations of the parties become fixed").

In his order, issued on October 26, 2017, Judge Moore addresses this precise issue:

Petitioner's next argument, again to the extent it is an illegitimate purpose argument, is that the IRS is seeking to force MED to create reports that do not otherwise exist. (See ECF No. 20at 13-14.) In reply, respondent asserts that it is simply summoning MED to print "specific reports" from a database of

information MED already possesses. (ECF No. 21 at 4-5.)

> Put simply, the summons requests what the summons requests. Should the items requested exist and be in MED's possession, then MED should be expected to produce that which has been requested. To take the analogy used by respondent, should MED possess something akin to a bank statement (*see* ECF No. 21 at 4)— i.e., something which is produced by a bank as a matter of course with respect to an account holder—containing the information respondent seeks, then compliance with the summons should be expected. If, however, the summons should require MED to produce a report that it would not ordinarily or otherwise produce from its database of information, then respondent very well may find itself having to process that information itself. In other words, in such a situation, MED may only need to produce the entirety of the database of information because that is the only document or data source that MED has created and possesses. Merely because MED could produce a report from its database does not mean that it has or that respondent can force MED to do so. *See United States v. Euge*, 444 U.S. 707, 717 n.11, 100 S.Ct. 874 (1980) (noting that, although the IRS had authority to seek handwriting exemplars, the Supreme Court expressed "no opinion on the scope of the [IRS'] authority to otherwise order [a] witness to generate previously nonexistent documentation").

*See* Exhibit 9, pg. 4.  *Rifle Remedies, LLC v. USA,* Case No. 1:17-mc-00062-RM, United States District Court for the District of Colorado.

The Government may try to state that the reports are like bank records which can be summonsed even though they may be in electronic form. However, this is not the case. Bank statements, signature cards and the like are documents which are created by the bank in the ordinary course of business and simply stored electronically. These pre-existing documents are simply being transmitted in the event they are summonsed. In his order issued October 26, 2017 Judge Moore again addresses this exact issue:

> Again using respondent's analogy, merely because a bank may produce a bank statement for an account holder does not mean that the bank must perform a search through the data therein to produce a different set of information, at least not when the bank would not ordinarily or otherwise do so. Rather, it would appear to be the IRS' responsibility to sort through the produced bank statement to obtain that which it is looking for.

See Exhibit 9, pg. 5, footnote 2. *Rifle Remedies, LLC v. USA,* Case No. 1:17-mc-00062-RM, United States District Court for the District of Colorado.

In this case, the Government wants analytical reports created from raw data that are not known to be made in the ordinary course of business. Since the reports are not currently in existence (neither now nor on the date of the summons), the Government cannot compel the creation of these "reports".

While it may be helpful to the IRS to have the State create analytical research for the IRS's use and pleasure, it is beyond the power of the IRS to force the creation of these documents. *Id.* This is true, even though the IRS believes, based upon agents' training, that the METRC database engine can create the analytical reports. The power to force the creation of the analytical reports is not there.

## IV.    CONCLUSION

Given the above, the Respondent's Summonses should be Quashed.

<u>**RELIEF REQUESTED**</u>

**WHEREFORE,** Petitioners request the following relief in their favor:

a)  An order quashing the Summonses, attached as Exhibit 2; or,

b)  An order scheduling an evidentiary hearing to determine if the IRS has satisfied the *Powell* standard for enforcement of the Summons; and,

c)  For such other relief as the Court deems just and proper.

**DATED**: February 7, 2018                   Respectfully submitted,


THORBURN WALKER LLC

*/s/ James D. Thorburn*
James D. Thorburn
Attorney for the Petitioners
5460 South Quebec Street, Suite 310
Greenwood Village, CO 80111
(303) 646-3482
jthorburn@thorburnwalker.com

**CERTIFICATE OF SERVICE PURSUANT TO F.R.C.P. 5**

I hereby certify that on February 7, 2018, a true and correct copy of the attached Petition to Quash was deposited into the U.S. Mail Certified Mail Return Receipt Requested to the following:

Attorney General Jeff Sessions        Attorney General Bob Troyer
U.S. Department of Justice            U.S. Attorney General
Attn: Civil Process Clerk             Attn: Civil Process Clerk
950 Pennsylvania Avenue, NW      1801 California Street, Suite 1600
Washington, D.C. 20530-0001       Denver, Colorado 80202

Also, pursuant to 26 U.S.C. §7609, I served the following persons via certified mail, return receipt requested on February 7, 2018.

Colorado Department of Revenue
Marijuana Enforcement Division
1707 Cole Blvd., Suite 300
Lakewood, CO 80401

David Hewell
Internal Revenue Service
12600 West Colfax Ave
Mail Stop 1436DH
Lakewood, CO 80215

U.S. National Bank Association
Attn: Legal Dept. Subpoena Processing
800 Nicollet Mall
Minneapolis, MN 55402

Wells Fargo Bank
MAC S4001-01F
PO Box 29728
Phoenix, AZ. 85038

Charles J. Butler
Trial Attorney
U. S. Department of Justice, Tax Division
P.O. Box 683
Washington, DC 20044
Tel: 202-514-6062
Fax: 202-307-0054

*s/ James D. Thorburn*