# Nos. 17-2083 & 17-2095

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

———————————

**HIGH DESERT RELIEF, INC.,**
**a New Mexico Non-Profit Corporation,**

**Plaintiff-Appellant**

**v.**

**UNITED STATES OF AMERICA,**
**through its agency the Internal Revenue Service,**

**Defendant-Appellee**

———————————

**ORAL ARGUMENT REQUESTED**

———————————

**ON APPEAL FROM THE ORDERS OF THE UNITED STATES**
**DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO**
**Nos. 1:16-CV-469 & 1:16-cv-816**
**JUDGE CHRISTINA ARMIJO**
**No. 1:16-cv-1255**
**JUDGE WILLIAM P. JOHNSON**

———————————

**BRIEF FOR THE APPELLEE**

———————————

DAVID A. HUBBERT
  *Acting Assistant Attorney General*

GILBERT S. ROTHENBERG          **(202) 514-3361**
MICHAEL J. HAUNGS              **(202) 514-4343**
PATRICK J. URDA               **(202) 307-0201**
  *Attorneys, Tax Division*
  *Department of Justice*
  *Post Office Box 502*
*Of Counsel:*          *Washington, D.C. 20044*
ROBERT C. TROYER
*Acting United States Attorney*

**EXHIBIT 11**

# TABLE OF CONTENTS

**Page**

Table of contents..................................................................i
Table of authorities ...........................................................ii
Statement of related cases ...............................................vii
Glossary ...........................................................................viii
Statement of subject matter and appellate jurisdiction ...........1
Statement of the issue.......................................................4
Statement of the case ......................................................4

    A.    Procedural background..................................4

    B.    Factual statement........................................6

        1.    The examination into High Desert and the
issuance of the summonses ...................................7

        2.    Summons proceedings relating to New
Mexico Department of Health, My Bank,
and Public Service Company of New Mexico .....13

            a.    First petition to quash and motion to
dismiss ........................................13

            b.    Second petition to quash and motion
to dismiss ....................................16

            c.    The District Court's denial of the
petitions to quash and enforcement of
the summons..............................19

        3.    Summons proceeding relating to Southwest
Capital Bank.......................................25

Summary of argument .........................................26
Argument ..........................................................30

        The District Court correctly refused to quash the IRS
summons, because the United States established a
*prima facie* case for enforcement and High Desert

**EXHIBIT 11**

Relief did not meet its heavy burden to show an abuse
of process or a lack of institutional good faith ...................... 30

Standard of review ................................................................ 30

A.      The IRS has broad summons authority ...................... 32

B.      The United States established a *prima facie* case
        for denying the petitions to quash and for
        enforcement of the summons ...................................... 37

C.      High Desert's arguments are meritless ...................... 40

Conclusion .............................................................................. 57
Statement regarding oral argument ........................................ 57
Certificate of compliance with Rule 32(a) .............................. 58
Certificate of service and digital submission ......................... 59

## TABLE OF AUTHORITIES

**Cases:**

*Alpenglow Botanicals, LLC v. United States*, No. 16-cv-258,
    2016 WL 7856477 (D. Colo. Dec. 1, 2016), *appeal pending*, No. 17-
    1223 (10th Cir. filed Jun. 28, 2017) ............... 7, 20–21, 43, 44–45, 52
*Alphin v. United States*, 809 F.2d 236 (4th Cir. 1987) ................. 31, 34
*Anaya v. United States*, 815 F.2d 1373 (10th Cir. 1987) .............. 35, 40
*Anderson v. United States*, No. MC-12-12-BLG, 2013 WL 1747796
    (D. Mont. April 23, 2013), *report and recommendation adopted*,
    2013 WL 2181041 (D. Mont. May 20, 2013) .................................... 50
*Baxter v. United States*, No. 15-cv-04764, 2016 WL 468034 & 2016
    WL 1359413 (N.D. Cal. Feb. 2, 2016 & Apr. 8, 2016), *appeals
    pending*, Nos. 16-15999 & 16-16021 (9th Cir. filed Jun. 3, 2016 &
    Jun. 7, 2016) ................................................................................. 51
*Beck v. Commissioner*, 110 T.C.M. (CCH) 141 (2015) .......................... 44
*Boucher v. Commissioner*, 77 T.C. 214 (1981) .................................... 55
*Brown v. Commissioner*, 63 T.C.M. (CCH) 1866 (1991) ...................... 55
*Browning v. Commissioner*, 61 T.C.M. (CCH) 2053 (1991) ................. 52

**EXHIBIT 11**

**Cases (cont'd):** **Page(s)**

*Californians Helping to Alleviate Med. Problems, Inc. v. Commissioner*, 128 T.C. 173 (2007) ..................................... 44

*Canna Care, Inc. v. Commissioner*, 110 T.C.M. (CCH) 408 (2015), *aff'd on other grounds*, 694 F. App'x 570 (9th Cir. 2017) ................ 44

*Church of Scientology v. United States*, 506 U.S. 9 (1992) ................. 33

*Clearwater Consulting Concepts, LLLP v. United States*, Nos. 2007-33 & 2007-34, 2010 WL 2392107 (D. V.I. Mar. 31, 2010) ................................................................. 50

*Codner v. United States*, 17 F.3d 1331 (10th Cir. 1994) ............... 34, 37

*Crystal v. United States*, 172 F.3d 1141 (9th Cir. 1999) ..................... 36

*Gandrup v. United States*, No. 14-123-SLR, 2014 WL 5861719 (D. Del. Nov. 12, 2014) ....................................................... 50

*Gangi v. United States*, 2 F. Supp. 3d 12 (D. Mass. 2014), *aff'd*, 638 F. App'x 16 (1st Cir. 2016) ................................. 50

*Feinberg v. Commissioner*, 808 F.3d 813 (10th Cir. 2015) ............ 24, 56

*Franklin v. Commissioner*, 65 T.C.M. (CCH) 2497 (1993) .................. 51

*Green Solution, LLC, et al. v. United States*, No. 1:16-mc-00167 (D. Colo. filed Aug. 8, 2016) ................................................. 7

*Green Solution Retail, Inc. v. United States*, 855 F.3d 1121 (10th Cir. 2017) ........................................... 7, 28, 42, 44, 52

*Green Solution Retail, Inc., et al. v. United States*, No. 1:16-mc-00137 (D. Colo. filed Jun. 27, 2016) ................................................. 7

*Hernandez v. United States*, No. CV-10-MC-9181, 2010 WL 5292339 (D. Or. Dec. 17, 2010) ....................................................... 50

*Highland Capital Management, L.P. v. United States*, 51 F. Supp. 3d 544 (S.D.N.Y. 2014), *aff'd on other grounds*, 626 F. App'x 324 (2d Cir. 2015) ....................................... 50

*Hopkins v. I.R.S.*, 318 F. App'x 703 (10th Cir. 2009) ........................ 30

*Hunkler v. United States*, No. 1:14 CV 356, 2014 WL 3810390 (N.D. Ohio July 31, 2014) ................................................... 50

*James v. United States*, 366 U.S. 213 (1961) ..................................... 45

*Liberty Financial Services v. United States*, 778 F.2d 1390 (9th Cir. 1985) ............................................. 47–48

*Nutritional Elements, Inc., et al. v. United States*, No. 1:17-MC-00052 (D. Colo. Apr. 18, 2017), *appeal pending*, No. 17-1212 (10th Cir. filed Jun. 19, 2017) ........................................ 7

1110183.1

**EXHIBIT 11**

-iv-

**Cases (cont'd):**                                                    **Page(s)**

*Nutritional Elements, Inc., et al. v. United States*, No. 1:16-mc-00188
   (D. Colo. filed Sept. 20, 2016)............................................................7
*Ponsford v. United States*, 771 F.2d 1305 (9th Cir. 1995)...................36
*Speidell v. United States*, No. 1:16-mc-00162
   (D. Colo. filed Jul. 29, 2016)...............................................................7
*Sterling Distributors v. Patterson*, 236 F. Supp. 479
   (N.D. Ala. 1964) ...............................................................19, 53, 55
*Stoffels v. Hegarty*, 267 F. App'x 814 (10th Cir. 2008) .........................36
*Sugarloaf Funding, LLC v. United States Department of the
   Treasury*, 584 F.2d 615 (1st Cir. 2009)................................30, 31, 36
*Tank Truck Rentals v. Commissioner*, 356 U.S. 30 (1958) ...........19, 53
*Thompson v. United States*, No. H-08-1277, 2008 WL 4279474
   (S.D. Tex. Sept. 11, 2008).............................................................48, 50
*United States v. Arthur Young & Company*, 465 U.S. 805
   (1984) ............................................................................................32–33
*United States v. Balanced Financial Management, Inc.*,
   769 F.2d 1440 (10th Cir. 1985) ...........................33, 34, 35, 37, 40, 42
*United States v. Bisceglia*, 420 U.S. 141 (1975)....................................33
*United States v. Clarke*, — U.S. —, 134 S. Ct. 2361 (2014) ....33, 35, 51
*United States v. Coopers & Lybrand*, 550 F.2d 615
   (10th Cir. 1977)..................................................................................30
*United States v. Gertner*, 65 F.3d 963 (1st Cir. 1995) ...................34–35
*United States v. Jillson*, 84 A.F.T.R.2d 7115 (S.D. Fla. 1999)............48
*United States v. Kis*, 658 F.2d 526 (7th Cir. 1981) ........................31, 34
*United States v. Lanoie*, 403 F. App'x 328 (10th Cir. 2010)................35
*United States v. LaSalle National Bank*, 437 U.S. 298 (1978) .....34, 40
*United States v. Powell*,
   379 U.S. 48 (1964) .....13–16, 18, 21–23, 26–29, 33–36, 37–40, 46–48
*United States v. Stuart*, 489 U.S. 353 (1989)......................................34
*United States v. Sullivan*, 274 U.S. 259 (1927) ...................................45
*Villarreal v. United States*, 524 F. App'x 419 (10th Cir. 2013).....21, 31

**Statutes:**

Controlled Substances Act,
   21 U.S.C. § 801, *et seq.* ...... 7, 11, 17, 21, 23, 29, 40, 42–45, 51– 53, 56

**EXHIBIT 11**

-v-

**Statutes (cont'd):**                                               **Page(s)**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 162 ...................................................................................53

§ 162(c) ..............................................................................46

§ 162(c)(2) ...............................................52–53, 54, 55, 56

§ 165(e) ..............................................................................46

§ 280E .......... 7, 8, 10, 11, 15, 19–21, 24, 29, 40–42, 44, 45, 47, 51–55

§ 6103 ..................................................................................11

§ 6103(i) .............................................................................47

§ 6201(a) ..........................................................32, 37, 43

§ 6301 ..................................................................................32

§ 6663 ..................................................................................46

§ 7601 ..................................................................................32

§ 7602 ..................................................................................32

§ 7602(a) ....................................................................14, 37

§ 7602(c) ...........................................................29, 48, 49

§ 7602(c)(1) .....................................................48, 49, 50

§ 7602(d) ..................................................................28, 39

§ 7609(a) .............................................................................36

§ 7609(b)(2) ..................................................................2, 36

§ 7609(b)(2)(A) ................................................................36

§ 7609(h)(1) ........................................................................2


28 U.S.C.:

§ 1291 ...................................................................................4

§ 2107(b) ..............................................................................4


New Mexico Statutes Annotated (West 2017):

§ 26-2B-2 ..............................................................................8

§ 26-2B-3 ..............................................................................8

§ 26-2B-4 ..............................................................................8

**Rules and Regulations:**

Federal Rules of Appellate Procedure:

Rule 4(a)(1)(B) ...................................................................4

**EXHIBIT 11**

**Rules and Regulations (cont'd):**                                    **Page(s)**

   Federal Rules of Civil Procedure:
     Rule 56....................................................................................31

   Treasury Regulation (26 C.F.R.):
     § 1.162-1(a) (1985)...........................................................54
     § 1.165-8 (2016) ...............................................................46

   Code of New Mexico Rules (West 2017):
     § 7.34.4.1............................................................................8


**Miscellaneous:**

  IRS Publication 1, *Your Rights as a Taxpayer* (Rev. 12-2014),
    *available at* https://www.irs.gov/pub/irs-pdf/p1.pdf...............9, 39, 59

  13 Mertens Law of Fed. Income Taxation § 49B:32
    (perm. ed., rev. 2011).........................................................33

1110183.1

**EXHIBIT 11**

-vii-

## STATEMENT OF RELATED CASES

Pursuant to Tenth Circuit Rule 28.2(C)(1), counsel for the United States state that, to the best of their knowledge, there are no prior or related cases in this Court.

1110183.1

**EXHIBIT 11**

-viii-

## GLOSSARY

| Acronym | Definition |
| --- | --- |
| CSA | Controlled Substances Act, 21 U.S.C. § 801, *et seq.* |
| I.R.C. | Internal Revenue Code of 1986, 26 U.S.C. |

1110183.1

**EXHIBIT 11**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

————————————————

### Nos. 17-2083 & 17-2095

### HIGH DESERT RELIEF, INC.,
**a New Mexico Non-Profit Corporation,**

**Plaintiff-Appellant**

v.

### UNITED STATES OF AMERICA,
**through its agency the Internal Revenue Service,**

**Defendant-Appellee**

————————————————

### ORAL ARGUMENT REQUESTED

————————————————

### ON APPEAL FROM THE ORDERS OF THE UNITED STATES
### DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO
### Nos. 1:16-cv-469 & 1:16-cv-816
### JUDGE CHRISTINA ARMIJO
### No. 1:16-cv-1255
### JUDGE WILLIAM P. JOHNSON

————————————————

### BRIEF FOR THE APPELLEE

————————————————

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

During an investigation into the federal tax liabilities of High

Desert Relief, Inc., a New Mexico medical marijuana dispensary, the

Internal Revenue Service issued summonses for information from four

1110183.1

**EXHIBIT 11**

-2-

third parties: the New Mexico Department of Health – Medical

Cannabis Program (App. 38–45); My Bank (App. 19–27); the Public

Service Company of New Mexico (Supp. App. 17–30); and Southwest

Capital Bank (App. 515–24).[1]  High Desert Relief thereafter filed in the

United States District Court for the District of New Mexico three timely

petitions to quash the summonses pursuant to 26 U.S.C. (I.R.C.)

§ 7609(b)(2).  (App. 3–125, 502–603; Supp. App. 1–97.)  The District

Court had jurisdiction pursuant to I.R.C. § 7609(h)(1).

In the District Court, the cases arising out of the petitions

challenging the summonses to the New Mexico Department of Health,

My Bank, and the Public Service Company of New Mexico were

consolidated before Chief Judge Armijo.  (App. 156–57.)  The United

States subsequently filed a notice informing the court that it did not

seek to enforce the summons issued to the New Mexico Department of

Health, after it obtained the summoned documents in response to a

---

[1] "App." references are to the documents contained in appellant's appendix, filed with its brief.  "Supp. App." References are to the documents contained in the appendix to this brief.  "Br." references are to appellant's brief.  "Section" or "§" references are to the Internal Revenue Code of 1986, unless otherwise provided.

1110183.1

**EXHIBIT 11**

-3-

public records request.  (App. 248–50.)  The court thereafter denied the

petitions challenging the summonses to My Bank and the Public

Service Company of New Mexico (App. 424–45) and entered an order

enforcing the summons that had been issued to My Bank (App. 446–

49).[2]  After denying a motion for stay filed by High Desert (App. 488–

91), the court granted judgment to the United States (App. 492).

High Desert's petition challenging the summons to Southwest

Capital Bank was filed while the other summons proceedings were

already pending in the District Court.  This case was not consolidated

with the other summons proceedings and was assigned to Judge

William Johnson, rather than Chief Judge Armijo.  After learning of the

other pending summons proceedings, the court ordered the parties to

show cause why the case should not be consolidated with the other

proceedings.  (App. 677–79).  During the pendency of this motion, Chief

Judge Armijo entered the order denying the petitions to quash as to My

Bank and the Public Service Company of New Mexico.  Relying on

---

[2]  As noted at pp. 22–23 n.5 and 25 n.6, the Government is not at this time seeking an enforcement order regarding the summons to the Public Service Company of New Mexico.

**EXHIBIT 11**

-4-

Judge Armijo's order, Judge Johnson dismissed the petition to quash

the summons to Southwest Capital Bank (App. 711–14) and entered an

order enforcing that summons (App. 730).

High Desert filed timely notices of appeal from the District Court's

orders in each case.  (App. 493–94; 731–32, 877–78.)  *See* 28 U.S.C.

§ 2107(b); Fed. R. App. P. 4(a)(1)(B).  This Court's jurisdiction rests

upon 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the District Court abused its discretion in denying the

petitions to quash the summonses, or clearly erred in ordering

enforcement of the summonses, where the United States established a

*prima facie* case in support of each of the summonses and High Desert

failed to meet its heavy burden of establishing bad faith or any

improper purpose.

## STATEMENT OF THE CASE

### A.   Procedural background

High Desert Relief filed three petitions to quash four summonses

that the IRS issued in connection with its investigation into High

Desert's federal tax liabilities for its fiscal years ending June 30, 2014

and June 30, 2015.  (App. 3–125, 502–603; Supp. App. 1–97.)  High

1110183.1

**EXHIBIT 11**

Desert first petitioned to quash summonses issued to (1) the New

Mexico Department of Health – Medical Cannabis Program and (2) My

Bank (App. 3–125), and the United States moved to dismiss (App. 131–

45).  Thereafter, High Desert filed a second petition, which sought to

quash a summons issued to the Public Service Company of New Mexico,

the local electric company.  (Supp. App. 1–97.)  The District Court

consolidated that case with the previously-filed summons proceeding

(App. 156–57), and the United States filed a second motion to dismiss

directed to the newly filed petition (App. 165–245).  The Government

also moved for enforcement of the summonses.  (*Id*.)  After the filing of

the second motion to dismiss, the United States informed the court that

it would not seek to enforce the summons to the New Mexico

Department of Health, because it had received the summoned material

through a public records request.  (App. 248–50.)  Because the United

States relied upon matters outside the pleadings, the District Court

converted the motions to dismiss to motions for summary judgment.

(App. 309–11.)  The court subsequently denied the petitions to quash

(App. 424–45) and granted judgment to the United States (App. 492).

**EXHIBIT 11**

The court also ordered enforcement of the summons to My Bank.

(App. 446–47.)

High Desert Relief filed a final petition to quash, which challenged a summons issued to Southwest Capital Bank, during the pendency of the motion to dismiss in the consolidated cases. (App. 502 – 603.) After the court entered its order denying the petitions to quash relating to My Bank and the Public Service Company of New Mexico, it entered an order denying the petition to quash relating to Southwest Capital Bank. (App. 711–14). The court thereafter issued an order enforcing the summons to Southwest Capital Bank. (App. 730.)

High Desert timely appealed to this Court, which consolidated the cases.

## B.  Factual statement

This appeal arises out of an IRS examination into the federal income tax liabilities of High Desert Relief, Inc., a New Mexico medical marijuana dispensary, for its fiscal years ending June 30, 2014 and June 30, 2015. (App. 186–87, 193–94, 237.) It is one of the latest in a string of challenges to the IRS's authority to conduct examinations into

**EXHIBIT 11**

the federal tax liabilities of state-sanctioned marijuana businesses.[3]  In particular, these and similar cases dispute the IRS's authority to investigate the applicability of I.R.C. § 280E, which provides:

> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

### 1.   The examination into High Desert and the issuance of the summonses

High Desert Relief, Inc., is currently being audited by the Internal Revenue Service relating to its fiscal years ending June 30, 2014 and June 30, 2015.  (App. 236–37.)  This entity is involved in the New

---

[3] *See, e.g., Green Solution Retail, Inc. v United States*, 855 F.3d 1121 (10th Cir. 2017); *Alpenglow Botanicals, LLC v. United States*, No. 16-cv-258, 2016 WL 7856477 (D. Colo. Dec. 1, 2016), *appeal pending*, No. 17-1223 (10th Cir. filed Jun. 28, 2017); *Nutritional Elements, Inc., et al. v. United States*, No. 1:17-MC-00052 (D. Colo. Apr. 18, 2017), *appeal pending*, No. 17-1212 (10th Cir. filed Jun. 19, 2017); *Nutritional Elements, Inc., et al. v. United States*, No. 1:16-mc-00188 (D. Colo. filed Sept. 20, 2016); *Green Solution, LLC, et al. v. United States*, No. 1:16-mc-00167 (D. Colo. filed Aug. 8, 2016); *Speidell v. United States*, No. 1:16-mc-00162 (D. Colo. filed Jul. 29, 2016); *Green Solution Retail, Inc., et al. v. United States*, No. 1:16-mc-00137 (D. Colo. filed Jun. 27, 2016).

**EXHIBIT 11**

Mexico medical marijuana industry (App. 237), and a principal focus of the examination has been whether its business activities implicate Section 280E.

New Mexico law allows the "use of medical cannabis in a regulated system for alleviating symptoms caused by debilitating medical conditions and their medical treatments." N.M. Stat. Ann. § 26-2B-2 (West 2017). Consistent with this mandate, medical marijuana practitioners and licensed producers are exempt from state criminal and civil penalties related to their respective roles in the medical marijuana industry. *Id.* §§ 26-2B-3–26-2B-4.[4] Such businesses, however, are subject to a variety of licensing and application requirements administered by the New Mexico Department of Health, Medical Cannabis Program. N.M. Code R. § 7.34.4.1, *et seq.* (West 2017).

---

[4] Under New Mexico law, a practitioner is defined to mean a person "licensed to prescribe and administer drugs that are subject to the [New Mexico] Controlled Substances Act," while the term licensed producer refers to those persons and entities "determine[d] to be qualified to produce, possess, distribute and dispense cannabis." N.M. Stat. Ann. § 26-2B-3 D., E. (West 2017).

The examination into High Desert began in February 2016, when IRS Revenue Agent Lisa Turk provided written notice that its 2014 tax return had been selected for examination.   (App. 186–87.)  In this initial notice, the revenue agent identified cost of goods sold, gross receipts, and total deductions as preliminary issues of inquiry. (App. 186–87.)  Along with the notice, the IRS provided High Desert with a copy of IRS Publication 1, *Your Rights as a Taxpayer* (Rev. 12-2014), *available at* https://www.irs.gov/pub/irs-pdf/p1.pdf.  (*Id*.)  This publication generally outlines the IRS's examination procedures, specifying (*inter alia*) that, during an examination, the IRS will "sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received." *Id*.

After failing to receive a response from High Desert by the date specified on the notice, Revenue Agent Turk telephoned one of High Desert's shareholders and "proceeded to explain taxpayer's rights as outlined in Publication 1." (App. 340.)  Consistent with the information set forth in the notice, she also informed the shareholder that the audit would begin with a focus on gross receipts, cost of goods sold, and all

**EXHIBIT 11**

other business expenses. (*Id*.) During this conversation, the shareholder informed the revenue agent that High Desert was a medical marijuana dispensary that only sells medical marijuana and marijuana-related products to qualified patients. (*Id*.)

Revenue Agent Turk attempted to obtain further information directly from High Desert, but without success. (App. 237–39.) At the beginning of the examination, she sent an information document request relating to its 2014 tax year, in which she sought a variety of corporate records and tax-return materials, including inventory valuations, bank statements, work papers reconciling the corporate books to the tax returns, and information supporting deductions. (App. 190–92.) After the examination expanded to include High Desert's fiscal year ending June 30, 2015 (App. 237), she both sent an information document request for that year, and re-sent the previously issued request for the fiscal year ending June 30, 2014 (App. 195–206). High Desert did not respond to either request. (App. 239.)

In addition to issuing document requests, Revenue Agent Turk attempted to schedule an interview with a High Desert representative to discuss the tax years at issue and to tour the company facilities, but

1110183.1

**EXHIBIT 11**

without avail.  (App. 237–39, 340–41.)  High Desert objected to this investigation because of concerns surrounding Section 280E.  (App. 60, 63–64, 66–68, 70, 78 –80.)  In particular, the company took the position that a determination that Section 280E applied would be tantamount to a finding of a criminal violation of the Controlled Substances Act (CSA), 21 U.S.C. § 801, *et seq.*  (*Id.*)  High Desert stated that it would provide information only if the IRS agreed "to stipulate that all information gathered will be specifically for the examination of taxable objects under U.S. Code: Title 26 Internal Revenue Code, and that no information gathered can be applied to U.S. Code: Title 21 Controlled Substances Act, or any other federal title."  (App. 68.)  In subsequent correspondence, High Desert repeated that it would only "furnish documentation . . . provided that we are given assurance from the IRS, that the IRS will use the information furnished for this civil audit, and not to support the IRS's determination that the Taxpayer's business consists of illegal activities."  (App. 79.)  The IRS refused such a limitation, explaining that the IRS had authority to investigate whether Section 280E applied, and that it could not agree to High Desert's proposed restrictions because of I.R.C. § 6103, which governs the

1110183.1

**EXHIBIT 11**

circumstances under which taxpayer material can be disclosed.

(App. 82–85.)  High Desert thereafter informed Revenue Agent Turk

that it "would not answer any questions, provide any records, or provide

. . . a tour of the business."  (App. 239.)

In addition to its efforts to obtain information directly from High

Desert, the IRS issued four summons to third parties for information

bearing on the company's 2014 and 2015 tax liabilities:

- First, the IRS issued a summons to My Bank on May 3,
  2016, requesting "all books, papers, records, and other data
  concerning all accounts in which" High Desert "is identified
  as having any ownership interests . . . or for which [it] is
  shown as the trustee, co-signer, guardian, custodian, or
  beneficiary."  (App. 19–27.)

- Second, on May 18, 2016, the IRS issued a summons to the
  New Mexico Department of Health – Medical Cannabis
  Program, seeking records relating to High Desert, including
  financial records, sales records, applications, ownership
  lists, product descriptions (both as to medical marijuana
  offerings, and non-medical marijuana products), and a
  description of the facilities.  (App. 39–45.)

- Third, on June 24, 2016, the IRS issued a summons to the
  Public Service Company of New Mexico, the local electric
  company, requesting various information relating to High
  Desert, including applications for service and credit data,
  records showing the location of services provided, records
  showing installation dates or dates of operation, and billing
  statements.  (App. 222–23.)

- Fourth, on October 27, 2016, the IRS issued a summons to
  Southwest Capital Bank, seeking the same types of bank

1110183.1

**EXHIBIT 11**

account information as requested from My Bank.  (App. 626.)

On the same day that the IRS served each of the summonses, it provided to High Desert and its designated power of attorney a notice of the summons, a copy of the applicable summons, and an explanation of High Desert's right to bring a proceeding to quash the summons. (App. 224, 228, 232, 240–242, 623, 628.)

### 2. Summons proceedings relating to New Mexico Department of Health, My Bank, and Public Service Company of New Mexico

#### a. First petition to quash and motion to dismiss

High Desert filed a petition to quash the summonses to the New Mexico Department of Health and My Bank, asserting that neither satisfied *United States v. Powell*, 379 U.S. 48 (1964), which sets forth the requirements for the enforcement of an IRS summons.  (App. 3–17.) In this regard, High Desert claimed that the summonses had not been issued for a legitimate purpose, but rather as part of a "pseudo-criminal investigation[ ] into the source of taxpayer income to . . . convict taxpayers of violating federal criminal drug laws and strangle an entire industry . . . ."  (App. 10.)  The company further contended that the IRS lacked authority "to determine whether taxpayers have violated federal

**EXHIBIT 11**

drug laws." (App. 13.) High Desert also suggested that the summonses were a fishing expedition, noting that it had previously offered the summoned documents to the IRS. (App. 14.) Finally, High Desert contended that the IRS had provided insufficient notice under *Powell*, and that an evidentiary hearing was required to assess the IRS's good faith. (App. 14–15.)

The Government moved to dismiss this petition, arguing that the summonses satisfy the *Powell* test and "are a valid exercise of the government's summons authority." (App. 139.) The United States explained that, for a summons to be enforceable under *Powell*, it must show: (i) that the summons was issued for a legitimate purpose, (ii) that the information sought in the summons is relevant to that purpose, (iii) that the information sought is not already in the IRS's possession, and (iv) that the administrative steps required by the Internal Revenue Code have been followed. (*Id.*) The United States argued that each of these requirements had been met. First, it asserted that the summons had been issued for a valid purpose – to determine the correctness of High Desert's tax returns in accordance with I.R.C. § 7602(a). (*Id.*) The Government explained that the material summoned from My Bank was

1110183.1

**EXHIBIT 11**

-15-

relevant to ascertaining High Desert's taxable income, while the material summoned from the New Mexico Department of Health was relevant to determine whether High Desert was involved in a business consisting of the trafficking of controlled substances within the meaning of I.R.C. § 280E. (App. 139–40.) The Government also noted that the summoned documents were not in its possession and that all administrative steps, including proper notice to taxpayer, had been followed. (App. 140.) Although the Government acknowledged that High Desert had offered bank records to Revenue Agent Turk subject to certain conditions, it contended that the IRS lacked authority to accept the documents subject to High Desert's conditions. (App. 144.)

In addition to arguing that the *Powell* requirements had been satisfied, the United States also rejected High Desert's contentions that the IRS lacked authority to enforce Section 280E and that it was pursuing a pseudo-criminal investigation. (App. 141–42.) To the contrary, the Government explained that the "examination is being undertaken to determine the correctness of [High Desert's] return" and that "the application of Section 280E is relevant" to this inquiry. (App. 143.)

**EXHIBIT 11**

### b.   Second petition to quash and motion to dismiss

On the same date as the Government filed its motion to dismiss the petition to quash the first two summonses, High Desert filed a petition to quash the third summons, the one issued to the Public Service Company of New Mexico.  (Supp. App. 1–97.)  High Desert premised this second petition on the same legal arguments as in the first (Supp. App. 1–14), and the cases were subsequently consolidated (App. 156–57).  After consolidation, the United States moved to dismiss the new petition and to enforce the summons, supporting those motions with a declaration by Revenue Agent Lisa Turk.  (App. 165–245.)  As in its motion to dismiss High Desert's first petition to quash, the Government maintained that the summons to the Public Service Company met the *Powell* requirements: (i) it was issued for the proper purpose to gather information on High Desert's gross receipts for the years at issue (App. 173–74); (ii) the information sought – High Desert's electricity bills and location information – was relevant to determine the number of High Desert's facilities and the size of its marijuana crop, as would help to verify inventory and gross receipts (App. 179); (iii) the information sought was not in the Government's possession (App. 180);

1110183.1

**EXHIBIT 11**

-17-

and (iv) Revenue Agent Turk's declaration established that all administrative steps had been followed (App. 181).

The Government's second motion to dismiss also expanded on a few points addressed in its earlier motion.  In particular, the United States explained that the IRS had authority to apply Section 280E, "which is not a criminal statute, but rather a provision of the Internal Revenue Code."  (App. 175.)  The Government countered High Desert's suggestion that the IRS was conducting a clandestine investigation into Controlled Substances Act violations, noting that High Desert offered no evidence for such a claim and that the claim had been refuted by Revenue Agent Turk's declaration.  (App. 177.)  In connection with the relevance of the summons, the Government further pointed out that independently verifying inventory information for goods sold was critical in the marijuana industry, given that Section 280E eliminates credits or deductions for such businesses, but does not implicate a taxpayer's recognition of its cost of goods sold.  (App. 179.)

In addition to seeking the dismissal of the petition to quash, the Government sought an order enforcing the summons.  (App. 182–83.) The United States took the position that no hearing was required before

**EXHIBIT 11**

-18-

enforcement because High Desert had not adduced specific facts or circumstances plausibly raising an inference of bad faith.  (App. 183.)

High Desert thereafter filed a combined response to the Government's motions to dismiss the petitions, in which it by-and-large repeated the legal arguments set forth in its petitions to quash. (App. 251–75.)[5]  In addition, High Desert asserted that the United States had failed to satisfy the requirement under *Powell* that it not have the summoned material in its possession, contending that the IRS either had the summoned records itself, or could have obtained them from High Desert.  (App. 272.)  High Desert also claimed that the Government did not satisfy the requirement under *Powell* that it satisfied all administrative steps, asserting that the IRS failed to provide adequate notice to High Desert before issuing a third party summons.  (*Id.*)  Finally, High Desert argued that an evidentiary hearing was required to sort through these matters.  (App. 273–74.)

---

[5] Prior to the filing of this response, the Government filed a notice informing the Court that it would not seek to enforce the summons as to the New Mexico Department of Health because it had obtained the summoned documents by means of a public records request.  (App. 248–50.)

1110183.1

**EXHIBIT 11**

-19-

The District Court subsequently entered an order stating that it would treat the Government's motions to dismiss as motions for summary judgment, because each party had submitted evidentiary documents for the court's consideration.  (App. 309–11.)  Given the nature of this ruling, the court gave the parties an opportunity to present additional material.  (*Id.*)  The Government did not file further material, but High Desert did.  In particular, the company filed a supplemental pleading (App. 414–23), arguing, *inter alia*, that "the federal drug laws which the IRS seeks to enforce through Section 280E are a 'dead letter'" (App. 419).  Relying on *Tank Truck Rentals v. Commissioner*, 356 U.S. 30 (1958), and *Sterling Distributors v. Patterson*, 236 F. Supp. 479 (N.D. Ala. 1964), High Desert asserted that "the IRS cannot use the law to deny deductions" when "there is a public policy of non-enforcement of the law."  (App. 418.)

### c. The District Court's denial of the petitions to quash and enforcement of the summons

The District Court granted summary judgment to the Government and denied the petitions to quash.  (App. 424–45.)  As an initial matter, in the context of finding that the Government had waived its sovereign

**EXHIBIT 11**

immunity to allow this suit, the court rejected High Desert's twin contentions that the summonses were beyond the scope of a civil examination and that Section 280E requires a finding of illegality under the Controlled Substances Act. (App. 431.) The court pointed out that Section 280E was not a criminal provision, but one that addressed allowable deductions. (*Id.*) The court further noted that this provision "does not first require a determination by a non-IRS government official conducting a criminal investigation that the party claiming a deduction is trafficking in controlled substances." (*Id.*) The court accordingly concluded that the IRS could seek to apply Section 280E without conducting a criminal investigation, which was consistent with the holding of the District Court for the District of Colorado in *Alpenglow Botanicals, LLC v. United States*, No. 16-cv-00258, 2016 WL 7856477, at *3–4 (D. Colo. Dec. 1, 2016), *appeal docketed*, No. 17-1223 (10th Cir. Jun. 28, 2017) The District Court proceeded to quote at length from the court's decision in *Alpenglow*, which observed that "[i]t certainly would be strange if the Internal Revenue Service was not charged with enforcing [§ 280E,]" given its location in the Internal Revenue Code, and that "Section 280E does not require that a criminal investigation be

-21-

pursued against a taxpayer, or even that § 280E only applies if a criminal conviction under the CSA has been obtained." (App. 433, *quoting Alpenglow*, 2016 WL 7856477, at *3–4.)

As the District Court put it (App. 433), "Section 280E is a civil statute, and an investigation into a suspected violation . . . requires no "outside," "criminal," or "pseudo-criminal" . . . determination or investigation of violations of the CSA." The court further pointed out that, despite its characterization of the IRS's investigation as criminal, High Desert "alleges no *facts* by which this Court could conclude that the IRS was investigating a purported violation of the CSA for purposes of a criminal investigation." (App. 434.)

The District Court then concluded that the Government had met its *prima facie* showing that it satisfied the factors set forth in *Powell*, 379 U.S. at 57–58. (App. 435–44.) The court began its analysis by noting this Court's observation that "the traditional summary judgment standards such as viewing the facts in [the non-movant's] favor, do not apply" in the context of summons enforcement proceedings. (App. 435, *quoting Villarreal v. United States*, 524 F. App'x 419, 423 (10th Cir. 2013).) To the contrary, once the Government establishes its *prima*

1110183.1

**EXHIBIT 11**

*facie* case that it acted in good faith in issuing the summons, the burden of proof rests squarely with the petitioner.  (App. 435.)  And the court explained that a petitioner is only entitled to a hearing where it points to specific facts plausibly raising an inference of bad faith.  (App. 436.)

The court held that the Government had established each of the *Powell* factors.  The court first held that Revenue Agent Turk's declaration demonstrated that the examination had a legitimate purpose, *viz.*, to examine High Desert's 2014 and 2015 federal tax liabilities.  (App. 437.)  The court also held that the declaration established the relevance of each of the documents to this legitimate purpose.  (*Id.*)  In particular, the court explained that the documents summoned from the New Mexico Department of Health would be used to determine whether High Desert was growing or selling marijuana, the records from the electric company would help to determine how much marijuana High Desert grew so as to substantiate gross receipts, and the documents from My Bank would be used to substantiate gross receipts.  (*Id.*)  The court further explained that Revenue Agent Turk's declaration showed that the IRS did not have the documents in its

1110183.1

**EXHIBIT 11**

possession. (*Id*.)[6] Finally, the court held that the declaration demonstrated that the IRS had given sufficient notice to High Desert, as it provided IRS Publication 1 at the start of the examination and notices of the summonses when they were served on the third parties. (App. 438.) The court also noted that the declaration established that no criminal referral was in effect, as required by *Powell*. (*Id*.)

The court rejected High Desert's arguments that the Government had failed to meet its burden under *Powell*. (App. 438–44.) As an initial matter, the court noted that most of High Desert's arguments were directed to the legitimacy of the IRS's purpose in issuing the summons, and "are premised on its position that the IRS may not investigate or determinate whether [High Desert] violated the CSA." (App. 438.) The court explained that it had explicitly rejected that position earlier in its opinion, and thus "need not revisit this issue here." (*Id*.) The court also rejected High Desert's argument that its offer to provide some of the summoned documents to the IRS under

---

[6] The court noted that the Government had received a package in response to the summons from the Public Service Company of New Mexico, which the Government had not opened pending resolution of the petition to quash. (App. 437.)

certain conditions undermined the IRS's position that it did not have possession of the documents it sought.  (App. 438–39.)  The court concluded that High Desert's response was insufficient to rebut the United States' showing, given that it "only offered to produce documents (and not necessarily the specific documents summoned) upon conditions with which the IRS could not lawfully comply."  (App. 439.)  The court further rejected High Desert's argument that it failed to receive proper notice before the IRS initiated the summons, explaining that IRS Publication 1 provided the notice required.  (App. 439–41.)

Finally, the District Court rejected High Desert's argument that the enforcement of Section 280E would be improper because federal criminal drug laws governing marijuana have become a "dead letter," particularly in light of state action in the area.  (App. 441–44.)  The court explained that High Desert relied on cases addressing a wholly different Code provision, and that the language in Section 280E did not permit the same conclusion in the instant case.  (App. 443.)  The court also observed that, in *Feinberg v. Commissioner*, 808 F.3d 813, 816 (10th Cir. 2015), this Court recently had suggested that the federal criminal drug laws were not a dead letter.  (App. 444.)

1110183.1

**EXHIBIT 11**

The District Court accordingly denied the petitions to quash (App. 444), entered a separate order enforcing the summons to My Bank (App. 446), and granted judgment to the United States (App. 492).[7]

### 3.  Summons proceeding relating to Southwest Capital Bank

High Desert filed a third petition to quash in the District Court, challenging the IRS's summons to Southwest Capital Bank.  (App. 502–603.)  This case was assigned to Judge Johnson of the District Court, rather than Chief Judge Armijo, who heard the other summons proceedings.  The United States filed a motion to dismiss (App. 605–21) supported by a declaration from Revenue Agent Turk (App. 622–24), in which she indicated that she sought information from the bank to substantiate the gross receipts and income information reported on High Desert's returns for the years at issue (App. 623).  In their pleadings relating to this motion, the parties reprised the same arguments previously made in the other summons proceeding.

---

[7] In its opinion, the court also stated that, if the documents previously sent by Public Service Company of New Mexico to Revenue Agent Turk (which she had not opened given the pending petition to quash) are not responsive, the Government could also seek an order enforcing that summons.  (App. 444.)

**EXHIBIT 11**

Subsequently, the court entered a *sua sponte* order, requiring the parties to show cause why the case should not be consolidated with the other summons proceeding. (App. 677–79.) While this show-cause order was still pending, Chief Judge Armijo issued her opinion denying the petition to quash the summonses to the New Mexico Department of Health, My Bank, and the Public Service Company of New Mexico. (App. 680–703.) After reviewing this opinion, Judge Johnson found that "Chief Judge Armijo addressed all of the arguments [High Desert] makes in the petition to quash in this case" and that, for reasons of judicial economy, he would adopt that analysis as the court's in the summons proceeding before him. (App. 713.) The court accordingly denied High Desert's petition to quash (App. 711–14) and entered an order enforcing the summons (App. 730).

## SUMMARY OF ARGUMENT

The IRS issued four administrative summonses seeking information concerning High Desert's tax liabilities for its fiscal years ending June 30, 2014 and June 30, 2015. The petitions to quash, and the United States' motions to enforce the summonses are governed by the factors set forth by the Supreme Court in *United States v. Powell*,

1110183.1

**EXHIBIT 11**

379 U.S. 48 (1964).  More specifically, *Powell* requires the United States to make a *prima facie* showing that (i) the summons was issued for a legitimate purpose, (ii) the summoned records may be relevant to that purpose, (iii) the records are not already in the IRS's possession, and (iv) the administrative steps required by the Internal Revenue Code have been followed.

As the District Court found here, the United States satisfied the *Powell* requirements.  The United States first demonstrated that the summonses were issued for the legitimate purpose of determining High Desert's federal tax liabilities for its fiscal years ending June 30, 2014 and June 30, 2015.  The Government next showed that the information sought from each of the third parties was relevant to determining the tax liabilities, in particular by substantiating gross receipts and income information.  The United States also established that it did not have the documents in its possession.  And the United States demonstrated that High Desert had been given proper notice that the IRS might contact third parties during the course of the examination.  In addition to satisfying its *prima facie* burden under *Powell*, the Government further established that no referral to the Department of Justice was in effect

1110183.1

**EXHIBIT 11**

with respect to High Desert or either of its shareholders for the tax periods being examined – a showing required by I.R.C. § 7602(d).

As the Government made its *prima facie* showing under *Powell*, High Desert bore a heavy burden to rebut the presumption of good faith. High Desert failed to carry this burden, as the District Court correctly held. On appeal, High Desert argues that the IRS's investigation was illegitimate because the IRS purportedly does not have the authority to enforce or investigate under Section 280E. This Court previously has rejected this argument in the Anti-Injunction Act context, *Green Solution Retail, Inc. v. United States*, 855 F.3d 1111, 1121 (10th Cir. 2017), and the Court's ruling on that point applies just as strongly in the summons context.

High Desert raises two other challenges to the District Court's finding that the *Powell* factors had been satisfied, but neither is persuasive. Specifically, High Desert contends that the IRS failed to show that it did not have the information sought already in its possession. High Desert asserts that the Government had access to the information sought, based on its offer to provide some information, with multiple strings attached. As an initial matter, there is no dispute that

**EXHIBIT 11**

the IRS did not have the documents sought at the time the summonses were issued.  This is dispositive.  Further, the IRS's decision not to accept High Desert's offer did not suggest bad faith, as the conditions High Desert sought to impose conflicted with the disclosure regime governing the IRS and were a clear attempt to thwart any investigation into the applicability I.R.C. § 280E.  High Desert also claims that the IRS failed to comply with all required administrative steps, the fourth factor in *Powell*.  The IRS, however, provided sufficient advance notice to satisfy I.R.C. § 7602(c) by transmitting IRS Publication 1, which explains that, during an examination, the IRS will "sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received."

Finally, High Desert concocts a rule that purportedly limits provisions disallowing deduction for violations of laws to apply only where the law being violated is actively enforced.  High Desert pulls this "dead letter" rule from thin air.  It has no support in the text of Section 280E, and High Desert cannot limit an investigation into that provision.  Furthermore, Section 280E is not conditioned on a criminal conviction or a violation of the Controlled Substances Act, and a

**EXHIBIT 11**

purported rule that depended on the degree of enforcement of that Act thus would be irrelevant.  Finally, there is no such thing as the "dead letter" rule.  The single district court case on which High Desert relies for its purported rule was a fact-specific interpretation of a common-law exception to the business expense deduction, and has no broader relevance.

The orders of the District Court should be affirmed.

## ARGUMENT

**The District Court correctly refused to quash the IRS summons, because the United States established a *prima facie* case for enforcement and High Desert Relief did not meet its heavy burden to show an abuse of process or a lack of institutional good faith**

### Standard of review

This Court reviews a district court's refusal to quash an IRS summons for abuse of discretion.  *Hopkins v. I.R.S.*, 318 F. App'x 703, 705 (10th Cir. 2009); *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 346 (1st Cir. 2009).  It will reverse the decision to enforce an IRS summons only for clear error.  *United States v. Coopers & Lybrand*, 550 F.2d 615, 620 (10th Cir. 1977); *Hopkins*, 318 F. App'x at 705.

**EXHIBIT 11**

High Desert's discussion of the standard for review of a summary judgment motion ignores authority governing summary judgment in the summons context. (Br. 12–13, 29–30.)  As this Court has held, "the traditional summary judgment standards such as viewing the facts in . . . favor [of the party opposing summary judgment], do not apply" in a summons case and the "burden [on a summons opponent once the Government makes its *prima facie* case through a *Powell* affidavit] 'is significantly more stringent than that of a party opposing a motion for summary judgment.'"  *Villarreal v. United States*, 524 F. App'x 419, 423 (10th Cir. 2013) (quoting *United States v. Kis*, 658 F.2d 526, 543 (7th Cir. 1981)); *see also Sugarloaf Funding*, 584 F.3d at 350 (rejecting argument seeking to quash a summons based on Fed. R. Civ. P. 56); *Alphin v. United States*, 809 F.2d 236, 239 (4th Cir. 1987) (the "application of [Fed. R. Civ. P. 56 governing summary judgment] has reasonably been limited by cases holding that an affidavit averring the *Powell* good faith elements is sufficient to establish the government's prima facie case.").

1110183.1

**EXHIBIT 11**

### A.    The IRS has broad summons authority

Congress has conferred upon the Secretary of the Treasury the responsibility to make accurate determinations of tax liability and has given him broad authority to conduct investigations for that purpose. The Commissioner of Internal Revenue, as the Secretary's delegate, is charged with the duty "to make the inquiries, determinations, and assessments of all taxes" imposed by the Internal Revenue Code.  I.R.C. § 6201(a).  *See also* I.R.C. §§ 6301, 7601.

The summons power provided by Congress enables the Commissioner to discharge this investigative responsibility.  Section 7602 of the Code authorizes the Commissioner, "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, [or] determining the liability of any person for any internal revenue tax, . . . [t]o examine any books, papers, records, or other data which may be relevant or material to such inquiry" and to summon any person to appear and produce such documents and to give relevant testimony. The courts have consistently held that Section 7602 endows the IRS with expansive information-gathering authority in order to encourage effective tax investigations.  *See United States v.*

**EXHIBIT 11**

-33-

*Arthur Young & Co.*, 465 U.S. 805, 813–15 (1984); *Church of Scientology v. United States*, 506 U.S. 9, 15 n.8 (1992); *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1446 (10th Cir. 1985).  *See also* 13 Mertens Law of Fed. Income Taxation § 49B:32 (perm. ed., rev. 2011) (IRS has "wide latitude to summon information necessary for investigative purposes.").  This investigative authority "is not limited to situations in which there is probable cause, in the traditional sense, to believe that a violation of the tax laws exists." *United States v. Bisceglia*, 420 U.S. 141, 146 (1975); *United States v. Powell*, 379 U.S. 48, 51, 57 (1964). After all, "[t]he purpose of the statutes is not to accuse, but to inquire." *Bisceglia*, 420 U.S. at 146.  *Accord United States v. Clarke*, — U.S. —, 134 S. Ct. 2361, 2367 (2014).

When a summoned party fails to comply with a summons, the IRS can bring an enforcement proceeding in a district court.  I.R.C § 7604. Summons enforcement suits are "summary in nature." *Clarke*, 134 S. Ct. at 2367.  The United States need only make a "minimal" showing that the summons was issued in good faith, *i.e.*, that (1) the investigation will be conducted pursuant to a legitimate purpose; (2) the information sought may be relevant to that purpose; (3) the information

1110183.1

**EXHIBIT 11**

sought is not already within the Commissioner's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed. *Powell*, 379 U.S. at 57–58; *Codner v. United States*, 17 F.3d 1331, 1332 (10th Cir. 1994); *Balanced Fin. Mgmt.*, 769 F.2d at 1443. The burden on the United States "is a slight one," *Balanced Fin. Mgmt.*, 769 F.2d at 1443 (*citing Kis*, 658 F.2d at 536), "because this is a summary proceeding," *Alphin*, 809 F.2d at 238. *Accord United States v. Stuart*, 489 U.S. 353, 369 (1989). The United States generally makes this *prima facie* showing by an IRS affidavit. *Codner*, 17 F.3d at 1332-33; *Balanced Fin. Mgmt.*, 769 F.2d at 1443.

Once the United States has made this minimal showing, the burden shifts to the party opposing enforcement to rebut the good-faith presumption that arises in consequence of the United States' *prima facie* case. *Balanced Fin. Mgmt.*, 769 F.2d at 1444. This burden is a "heavy" one. *Id. See also United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978). The party opposing the summons "must do more than just produce evidence that would call into question the Government's prima facie case." *Balanced Fin. Mgmt.*, 769 F.2d at 1444 (citation omitted). *See also United States v. Gertner*, 65 F.3d 963, 967 (1st

**EXHIBIT 11**

Cir. 1995) (summons opponent must "create a substantial question in the court's mind regarding the validity of the government's purpose") (quotation and citation omitted).  The burden of proof rests "squarely" on the summons opponent, whose allegations are "insufficient if conclusionary." *Balanced Fin. Mgmt.*, 769 F.2d at 1444 (citations omitted).  Unless the party challenging a summons can show that enforcement would "constitute an abuse of the court's process, or that in issuing the summons the IRS lack[ed] institutional good faith," the United States is entitled to enforcement of the summons.  *Anaya v. United States*, 815 F.2d 1373, 1377 (10th Cir. 1987) (citations and internal marks omitted).  *See also United States v. Lanoie*, 403 F. App'x 328, 332 (10th Cir. 2010).  Although the reviewing court must consider whether the summons was issued in good faith, it must "eschew any broader role of 'oversee[ing] the [IRS's] determinations to investigate.'" *Clarke*, 134 S. Ct. at 2367 (quoting *Powell*, 379 U.S. at 56) (alterations in original).

Summonses issued to third parties concerning the tax liability of a taxpayer present the problem (from the taxpayer's perspective) that the third party might not be sufficiently motivated to resist even an

1110183.1

**EXHIBIT 11**

improper summons.  Accordingly, Congress has required that persons identified in the summons (usually including the taxpayer) be given notice of a third-party summons (I.R.C. § 7609(a)) and has given such persons ("noticees") the right to petition the district courts to quash the summons (I.R.C. § 7609(b)(2)).  In such a proceeding, the IRS can counterclaim for enforcement, or it can simply move to dismiss the petition to quash and rely on the summoned third party to comply with the summons. I.R.C. § 7609(b)(2)(A).  Where the person seeking to quash the summons pleads a facially valid claim in a petition to quash, "the court is guided by the four-part test first enunciated" in *Powell*. *Ponsford v. United States*, 771 F.2d 1305, 1307 (9th Cir. 1985).  *See also Sugarloaf Funding*, 584 F.3d at 345.  If the United States makes its *Powell* showing, the person seeking to quash the summons must meet the same heavy burden that a summons opponent faces in an enforcement proceeding.  *Stoffels v. Hegarty*, 267 F. App'x 814, 815 (10th Cir. 2008); *Crystal v. United States*, 172 F.3d 1141, 1144 (9th Cir. 1999); *Sugarloaf Funding*, 584 F.3d at 345–46.

**EXHIBIT 11**

### B.    The United States established a *prima facie* case for denying the petitions to quash and for enforcement of the summons

The District Court correctly held that the United States had established a *prima facie* case that the summonses were issued in good faith.  As noted above, the United States generally satisfies this "minimal" burden by an affidavit from an IRS representative.  *Codner*, 17 F.3d at 1332-33; *Balanced Fin. Mgmt.*, 769 F.2d at 1443.

Revenue Agent Turk's declarations plainly demonstrate that the summonses satisfy the factors set forth in *Powell*, 379 U.S. at 57–58, as the District Court held (App. 437–38).  The declarations first demonstrate that the summonses were issued for a legitimate purpose, *viz.*, as part of an examination to determine High Desert's 2014 and 2015 federal tax liabilities (App. 237, 623).  *See* I.R.C. §§ 6201(a), 7602(a).

Moreover, each of the four summonses was relevant to the examination, as explained by Revenue Agent Turk.  (App. 239–40, 623.) Specifically, she stated that the information sought from the New Mexico Department of Health would be used to determine whether High Desert is growing or selling marijuana and to substantiate gross

1110183.1

**EXHIBIT 11**

receipts and income information.  (App. 240.)  Revenue Agent Turk

further stated the information sought from the Public Service Company

of New Mexico about electricity use would help to determine the

amount of marijuana grown during the years at issue, which, in turn,

would substantiate gross receipts.  (App. 239.)  Revenue Agent Turk

also stated that the bank account information sought from My Bank

and Southwest Capital Bank would be used to substantiate gross

receipts and income information.  (App. 240, 623.)

As to the third *Powell* factor, the declarations state that the IRS

did not already possess the information sought, and had not received

the documents from High Desert.  (App. 237–38.)[8]

Finally, as to the fourth *Powell* factor (that required

administrative steps have been followed), Revenue Agent Turk's

declarations establish that proper notice was provided to High Desert.

---

[8] As the court explained, the United States ultimately obtained
the information sought from the New Mexico Department of Health
through a public records request, and therefore no longer sought to
enforce that summons.  (App. 437.)  Moreover, Revenue Agent Turk
stated in her declaration that she had received a package in response to
her summons from the Public Service Company of New Mexico, which
she would not open while the petition to quash remained pending.
(App. 242.)

1110183.1

**EXHIBIT 11**

According to her declarations (App. 237, 238), she twice sent to High Desert a copy of IRS Publication 1, which outlines the examination process and specifies that the IRS will "sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received." IRS Publication 1, *Your Rights as a Taxpayer* (Rev. 12-2014), *available at* https://www.irs.gov/pub/irs-pdf/p1.pdf.  Revenue Agent Turk further stated in her declaration that she mailed notices of each summons to High Desert via certified mail. (App. 240, 241–42, 623.)

In addition to the requirements under *Powell*, I.R.C. § 7602(d) provides that no summons may issue if a Department of Justice referral is in effect.  Both declarations also satisfy this requirement, stating that there was no "Department of Justice referral, as defined by 26 U.S.C. § 7602(d)" with respect to High Desert or either of its shareholders for the tax periods being examined.  (App. 243, 624.)

As the court correctly held, therefore, "the United States demonstrated a *prima facie* case that it acted in good faith as required by *Powell*."  (App. 438.)

1110183.1

**EXHIBIT 11**

### C.   High Desert's arguments are meritless

Once the United States established its *prima facie* case, the burden then shifted to High Desert to refute that showing or set forth specific facts and evidence that the summonses were issued in bad faith or for an improper purpose. *See Anaya*, 815 F.2d at 1377; *Balanced Fin. Mgmt.*, 769 F.2d at 1444. This burden is a "heavy" one. *Id.*; *LaSalle Nat'l Bank*, 437 U.S. at 316.

On appeal, High Desert raises assorted challenges related to the *Powell* factors. High Desert claims that the IRS lacks authority to investigate and make a determination whether a taxpayer comes within the scope of Section 280E, *i.e.*, whether its business consists of trafficking in controlled substances in violation of the Controlled Substances Act. (Br. 15–20.) High Desert next argues that it offered the IRS the summoned documents and that such documents should be considered "constructively in control" of the IRS. (Br. 11, 20–22.) High Desert further contends that the IRS failed to give proper advance notice of its third-party contacts, and thus did not satisfy all administrative steps, as required by *Powell*. (Br. 22 – 23.) Finally, High Desert argues that the federal criminal drug laws governing

1110183.1

**EXHIBIT 11**

marijuana sales are a "dead letter," which, according to High Desert, "preclude[s] enforcement of the summons." (Br. 23–29.) As discussed below, none of these arguments has merit, and none demonstrates any error by the District Court erred in denying the petitions to quash and enforcing the summonses.

1.    High Desert argues at length "that the IRS may not investigate or make findings that [High Desert] violated federal drug laws" because "[s]uch an investigation is not part of the IRS's tax administration authority." (Br. 17. *See also* Br. 15–20.) According to High Desert, the "IRS has expertise only in the Tax Code, and has neither the knowledge [nor] the expertise to determine a violation of law outside of its jurisdiction." (Br. 17.) High Desert further contends "there must be a threshold determination of a crime being committed" for Section 280E to apply (Br. 18), suggesting that the IRS's examination here was merely a façade for a criminal investigation.

As an initial matter, High Desert offers nothing but conjecture to support its view that the IRS is cloaking a criminal investigation under the mantle of a normal tax examination. As the District Court explained, High Desert "alleges no *facts* by which this Court could

1110183.1

**EXHIBIT 11**

-42-

conclude that the IRS was investigating a purported violation of the CSA for purposes of a criminal investigation." (App. 434) (emphasis in original). High Desert has not corrected this factual vacuum at the center of its argument on appeal. High Desert's unsupported suppositions are insufficient to show that the District Court erred in concluding that the IRS had a legitimate purpose. *Balanced Fin. Mgmt.*, 769 F.2d at 1444 (allegations are "insufficient if conclusionary") (citations omitted).

As this Court has explained (albeit in a different context), "the IRS's obligation to determine whether and when to deny deductions under § 280E falls squarely within its authority under the Tax Code." *Green Solution Retail, Inc. v. United States*, 855 F.3d 1111, 1121 (10th Cir. 2017).[9] The IRS has the authority to determine, in connection with its audit of plaintiffs' tax returns, whether plaintiffs' business consists of trafficking in controlled substances in violation of the Controlled

---

[9] Although this Court held that it lacked subject matter jurisdiction to rule on the argument that "the IRS exceeded its authority under the Internal Revenue Code" when investigating whether a marijuana dispensary came within the scope of Section 280E, *see Green Solution*, 855 F.3d at 1121 n.8, the statutory analysis set forth in that case is fatal to High Desert's contentions here.

1110183.1

**EXHIBIT 11**

Substances Act.  *See Alpenglow*, 2016 WL 7856477, at *3-4 ("the real issue here is whether the IRS has authority to determine if, in the course of plaintiffs' business, they regularly bought or sold marijuana. The Court cannot understand why not.").  The IRS has the authority "to make the inquiries, determinations, and assessments of all taxes . . . imposed by this title."  I.R.C. § 6201(a).  Moreover, it is specifically authorized to require testimony and the production of documents for the purpose of determining the liability of any person for any internal revenue tax.  *See* I.R.C. § 7602(a).

Congress has placed Section 280E in the Internal Revenue Code, and, therefore, the IRS is authorized to determine in a particular case whether this provision applies.  *See Alpenglow*, 2016 WL 7856477, at *4 ("Section 280E is placed in the *Internal Revenue* Code . . . [and it] would certainly be strange if the *Internal Revenue* Service was not charged with enforcing that provision.") (emphasis in original).  Since the applicability of I.R.C. § 280E turns on whether the taxpayer's business consists of illegal trafficking in controlled substances, the IRS, as part of its authority to enforce the provisions of the Internal Revenue Code, necessarily has the authority to investigate whether the taxpayer's

**EXHIBIT 11**

business implicates Section 280E.  *See Green Solution*, 855 F.3d at 1121; *Olive v. Commissioner*, 792 F.3d 1146, 1150 (9th Cir. 2015) (upholding tax deficiency for medical marijuana dispensary based upon the application of I.R.C. § 280E); *Alpenglow*, 2016 WL 7856477, at *3-4; *Canna Care, Inc. v. Commissioner*, 110 T.C.M. (CCH) 408 (2015), *aff'd on other grounds*, 694 F. App'x 570 (9th Cir. 2017); *Beck v. Commissioner*, 110 T.C.M. (CCH) 141 (2015); *Californians Helping to Alleviate Med. Problems, Inc. v. Commissioner*, 128 T.C. 173, 182–83 (2007).

Moreover, an investigation under Section 280E is not criminal in nature.  As this Court has observed, "§ 280E has no requirement that the Department of Justice conduct a criminal investigation or obtain a conviction before § 280E applies."  *Green Solution*, 855 F.3d at 1121.  As the District Court explained in this case (App. 433), "Section 280E is a civil statute, and an investigation into a suspected violation of Section 280E . . . requires no 'outside,' 'criminal,' or 'pseudo-criminal' determination or investigation of a violation of the CSA."  The *Alpenglow* court similarly observed that the "fact that selling marijuana may also constitute a violation of the CSA is simply a byproduct of

§ 280E using the CSA's definition of 'controlled substances.'" 2016 WL 7856477, at *4. Even assuming that "§ 280E requires the IRS to find that a crime has been committed . . ., this does not transform the IRS's determination that § 280E applies into a criminal investigation, a criminal prosecution, or somehow the rendering of a criminal verdict." *Id.*

High Desert thus badly misses the mark when it claims that a tax examination involving the applicability of Section 280E is a criminal investigation and lacks a legitimate purpose that could justify enforcement of a summons. On a more general level, High Desert errs in asserting that an IRS examination must shy away from determining whether an individual or business is engaged in illegal conduct, even where that conduct has tax implications. The Supreme Court long ago held that income from illegal sources is just as taxable as income from legitimate sources. *See United States v. Sullivan*, 274 U.S. 259 (1927); *James v. United States*, 366 U.S. 213 (1961). Thus, the notion that the IRS has no authority to investigate illegal conduct for the purpose of determining the correct tax liability of the persons involved in such conduct is absurd. Further, multiple provisions of the Code require

1110183.1

**EXHIBIT 11**

precisely such predicate determinations.  *See, e.g.,* I.R.C. § 162(c) (denial of deductions for "[i]llegal bribes, kickbacks, and other payments"); I.R.C. § 165(e) (permitting a deduction for theft loss, which has been interpreted by 26 C.F.R. (Treas. Reg.) § 1.165-8 (2016) to include losses arising out of "larceny, embezzlement, and robbery"); I.R.C. § 6663 (imposing a civil tax penalty for fraud).

2.     High Desert fares no better as to its assertion that the information sought is already in the possession of the IRS.  (Br. 20–22.) High Desert principally argues that the IRS's refusal to agree to its offer to provide such information – subject to restrictions on its use – demonstrates bad faith that requires an evidentiary hearing.  (Br. 20–21.)  But there is no dispute that the IRS did not have the documents sought at the time the summonses were issued.  This is dispositive for purposes of the relevant *Powell* factor, which merely asks whether the information sought is already within the Commissioner's possession.

In any event, High Desert is incorrect that the IRS's decision not to accept its offer shows bad faith.  As the District Court noted, High Desert offered to provide certain documents, but only if "we are given the assurance from the IRS, that the IRS will use the information

**EXHIBIT 11**

furnished for this civil audit, and not to support the IRS's determination

that the Taxpayer's business consists of illegal activities." (App. 438–

39, *quoting* App. 79.) This condition was neither lawful nor practicable.

First, as the District Court explained (App. 439), the IRS could not

agree to such a condition, because I.R.C. § 6103(i) requires the IRS to

turn over documents received from taxpayers to other federal agencies

in certain circumstances. Moreover, High Desert's condition was a

plain attempt to preclude the IRS's investigation as to Section 280E,

which bars deductions and credits from businesses that consist of

trafficking in a controlled substances "prohibited by Federal law or the

law of any State in which such trade or business is conducted." If the

IRS had agreed to High Desert's proposal, it ostensibly would not have

been able to use any of the documents it obtained to determine the

applicability of Section 280E. The IRS was under no obligation to

circumscribe its examination – or to ignore statutory complications – in

order to obtain relevant documents.[10]

---

[10] It should be further noted that even if High Desert had provided its own copies of summoned records, the Government would still be entitled to summon those same documents from the original sources in order to compare them and ensure their accuracy. *E.g., Liberty Fin.*

(continued…)

1110183.1

**EXHIBIT 11**

3.     High Desert next claims that the IRS failed to comply with all required administrative steps, the fourth factor in *Powell*, asserting that Revenue Agent Turk failed to provide proper notice under I.R.C. § 7602(c)(1) before contacting any third parties.  (Br. 23.) Section 7602(c)(1) states that during an IRS examination, the IRS "may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made."  "The purpose of the advance notice Congress required in Section 7602(c) is to give the taxpayer an opportunity to volunteer information and resolve issues with the IRS before third parties are contacted." *Thompson v. United States*, No. H-08-1277, 2008 WL 4279474, at *6 (S.D. Tex. Sept. 11, 2008) (*citing United States v. Jillson*, 84 A.F.T.R.2d 7115 (S.D. Fla. 1999)).

---

(…continued)
*Svcs. v. United States*, 778 F.2d 1390, 1393 (9th Cir. 1985) (IRS is "entitled to compare for accuracy" the same records held by different parties).

1110183.1

**EXHIBIT 11**

As the District Court held (App. 439–40), the IRS provided sufficient advance notice to satisfy I.R.C. § 7602(c).  When Revenue Agent Turk initiated the examination into High Desert in February 2016, she provided a copy of IRS Publication 1, *Your Rights as a Taxpayer* (Rev. 12-2014), *available at* https://www.irs.gov/pub/irs-pdf/p1.pdf.  (*Id.*)  This publication specifies that, during an examination, the IRS will "sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received." *Id.*  In a subsequent telephone conference with one of High Desert's shareholders, Revenue Agent Turk also "explain[ed] taxpayer's rights as outlined in Publication 1."  (App. 340.)  And, as the District Court further noted, Revenue Agent Turk again transmitted a copy of Publication 1 to High Desert in May 2016.  (App. 440.)

Although High Desert contends that the "use of Publication 1 . . . is insufficient," it fails to cite any support for that argument.  (Br. 23.)  Section 7602(c)(1) requires only that a taxpayer receive "reasonable notice in advance . . . that contacts with persons other than the taxpayer may be made," and that is exactly what Publication 1 provides.  The District Court therefore correctly concluded (App. 440)

1110183.1

**EXHIBIT 11**

-50-

that "the IRS complied with the requirement of Section 7602(c)(1), and

*Powell's* fourth factor, to provide reasonable notice in advance that it

may contact persons other than [High Desert.]"  *See also Gandrup v.*

*United States*, No. 14-123-SLR, 2014 WL 5861719, at *2 (D. Del.

Nov. 12, 2014); *Gangi v. United States*, 2 F. Supp. 3d 12, 21-22 (D.

Mass. 2014), *aff'd*, 638 F. App'x 16 (1st Cir. 2016); *Highland Capital*

*Mgmt.*, 51 F. Supp. 3d 544, 551 (S.D.N.Y. 2014), *aff'd on other grounds*,

626 F. App'x 324 (2d Cir. 2015); *Hunkler v. United States*, No. 1:14 CV

356, 2014 WL 3810390, at *2 (N.D. Ohio Jul. 31, 2014); *Anderson v.*

*United States*, No. MC-12-12-BLG, 2013 WL 1747796, at *1, *5 (D.

Mont. Apr. 23, 2013), *report and recommendation adopted*, 2013 WL

2181041 (D. Mont. May 20, 2013); *Hernandez v. United States*, No. CV-

10-MC-9181, 2010 WL 5292339, at *2 (D. Or. Dec. 17, 2010); *Clearwater*

*Consulting Concepts, LLLP v. United States*, Nos. 2007-33 & 2007-34,

2010 WL 2392107, at *4–5 (D. V.I. Mar. 31, 2010); *Thompson*, 2008 WL

4279474, at *5–6.[11]

---

[11]  As indicated above, the district courts repeatedly have
concluded that transmission of Publication 1 satisfies the notice
requirement of I.R.C. § 7602(c)(1).  Recently, however, the Northern
District of California quashed an IRS summons on the ground that

(continued…)

**EXHIBIT 11**

4.      Finally, High Desert argues that the CSA has become a "dead letter," no longer enforced by the federal government, and that "the IRS cannot deny deductions for violations of laws for which there is an official policy of non-enforcement."  (Br. 24.)  High Desert contends that "any technical violation of the CSA by a dispensary operating in conformance with state law is a 'dead letter'" (*id*.), such that the IRS cannot deny deductions pursuant to Section 280E, or apparently even investigate to see whether that provision applies.  *Cf. Clarke*, 134 S. Ct. at 2367 ("The purpose of a summons is not to accuse, much less to adjudicate, but only to inquire.").  High Desert is wrong on multiple levels.[12]

_____

(…continued)
Publication 1 did not satisfy this requirement.  That ruling is devoid of textual or historical support, and the United States is challenging it on appeal.  *See Baxter v. United States*, No. 15-cv-04764, 2016 WL 468034 & 2016 WL 1359413 (N.D. Cal. Feb. 2, 2016 & Apr. 8, 2016), *appeals pending*, Nos. 16-15999 & 16-16021 (9th Cir. filed Jun. 3, 2016 & Jun. 7, 2016).

[12] At the beginning of this argument (Br. 23), High Desert asserts that the IRS had a practice of "wait[ing] to investigate tax liability relating to a criminal activity until a conviction on the underlying criminal activity occurred."  In support of this position, High Desert cites to a case involving an addition to tax for fraud, *Franklin v. Commissioner*, 65 T.C.M. (CCH) 2497 (1993), and a case involving

(continued…)

**EXHIBIT 11**

-52-

As an initial matter, High Desert seeks to add a limitation to Section 280E that Congress did not provide, ignoring the plain statutory text. As explained above, Section 280E is not contingent on a criminal conviction for a violation of the Controlled Substances Act. *See Green Solution*, 855 F.3d at 1121. To the contrary, Section 280E merely disallows a deduction for businesses that consist of trafficking in controlled substances, as defined (and prohibited) by the Controlled Substances Act. The enforcement, or non-enforcement, of the Controlled Substances Act itself thus is irrelevant to whether Section 280E applies. Of course, Congress could have conditioned the validity of Section 280E on enforcement efforts relating to the Controlled Substances Act. Section 162(c)(2), for example, disallows

---

(…continued)
unreported income from drug smuggling, *Browning v. Commissioner*, 61 T.C.M. (CCH) 2053 (1991). Although the Commissioner in both cases used previous criminal proceedings to establish the predicates for certain Code provisions, neither case suggests that the Commissioner was required to wait, as a matter of practice or law, on the conclusion of criminal proceedings to conduct a civil investigation into the taxpayer's tax liabilities. In any event, as this Court observed in *Green Solution*, 855 F.3d at 1121, and as the District Court noted in *Alpenglow*, 2016 WL 7856477, at *4, a criminal conviction plainly is not required for Section 280E to apply, a fact that wholly undermines the relevance of High Desert's contention.

**EXHIBIT 11**

deductions for illegal payments "under any law of a State (but only if such State law is generally enforced) . . . ." Section 280E, however, contains no such exception for any lack of enforcement of the Controlled Substances Act, rendering High Desert's argument wholly irrelevant.

Nor is High Desert correct that there is a general "dead letter" rule to the effect that the IRS cannot deny deductions for businesses that violate laws as to which there is a policy of non-enforcement. High Desert concocts this proposition from a single district court case from 1964, which merely applied the "public policy exception" to the then-current version of the deduction for ordinary and necessary business expenses. *See Sterling Distribs. v. Patterson*, 236 F. Supp. 479 (N.D. Ala. 1964).

The "public policy exception" was a common-law limitation to the business-expense deduction where "allowance of the deduction would frustrate sharply defined national or state policies proscribing particular types of conduct, evidenced by some governmental declaration thereof." *Tank Truck Rentals, Inc. v. Commissioner*, 356 U.S. 30, 33-34 (1958). The exception has effectively been superseded by the enactment of Section 162 and its regulations, which more precisely

1110183.1

**EXHIBIT 11**

define when deductions relating to illegal activities will be disallowed.
*See, e.g.*, I.R.C. § 162(c)(2) ("No deduction shall be allowed under subsection (a) for any payment (other than a payment described in paragraph (1)) made, directly or indirectly, to any person, if the payment constitutes an illegal bribe, illegal kickback, or other illegal payment under any law of the United States, or under any law of a State (but only if such State law is generally enforced), which subjects the payor to a criminal penalty or the loss of license or privilege to engage in a trade or business.")  Treas. Reg. § 1.162-1(a) (1985) (a "deduction for an expense paid or incurred after December 30, 1969, which would otherwise be allowable under section 162 shall not be denied on the grounds that allowance of such deduction would frustrate a sharply defined public policy.").

Even to the extent that the common-law exception continues to be invoked in a few narrow cases (Br. 28), such cases have no bearing on Section 280E, where Congress has staked out the metes and bounds of the disallowance on deductions and credits.  While Congress made a policy decision not to grant the benefit of deductions or credits to businesses that consist of trafficking in controlled substances, this does

**EXHIBIT 11**

not support High Desert's attempt to import interpretations of the common law public-policy exception into the analysis of Section 280E.

The single case on which High Desert builds its rule, moreover, is merely a fact-specific application of the pre-162(c)(2) public policy exception, and does not have any broader scope.  In *Sterling Distributors*, a wholesale beer distributor claimed business expense deductions relating to the gifting of beer to retail outlets to encourage purchase of its products.  236 F. Supp. at 481–82.  The practice was not allowed under state law, and the IRS claimed that the deductions should be disallowed as frustrating a sharply defined state policy.  *Id.* at 482.  Based upon the testimony of witnesses at trial, the district court concluded that the state law was not enforced and, in fact, had become a dead letter, and permitted the deduction.  *Id.* at 483–84. *Sterling Distributors* has no relevance to Section 280E.

High Desert fares no better with its assertion that the "rule announced by the *Sterling Distributors* court has been generally accepted." (Br. 24).  In particular, High Desert relies on *Brown v. Commissioner*, 63 T.C.M. (CCH) 1866 (1992), and *Boucher v. Commissioner*, 77 T.C. 214, 217–18 (1981).  Both of those cases involve

**EXHIBIT 11**

I.R.C. 162(c)(2), which, as discussed above, explicitly requires that a state law be generally enforced for disallowance of a deduction.  In other words, those cases merely involve the analysis required by the particular statutory provision at issue there.  Section 280E does not contain the same requirement.

Furthermore, High Desert is wrong that the Controlled Substances Act is a dead letter.  (Br. 23–24, 25–26.)  As this Court has observed, although "two consecutive Deputy Attorneys General have issued memoranda encouraging federal prosecutors to decline prosecutions of state-regulated marijuana dispensaries in most circumstances," "in our constitutional order it's Congress that passes the law, Congress that saw fit to enact 21 U.S.C. § 841, and Congress that in § 841 made the distribution of marijuana a crime." *Feinberg v. Commissioner*, 808 F.3d 813, 816 (10th Cir. 2015).  Absent Congressional action to the contrary, the Controlled Substances Act remains the law.

**EXHIBIT 11**

-57-

## CONCLUSION

The orders of the District Court should be affirmed.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for the Government respectfully inform the Court that

oral argument is not essential but may be helpful to this Court in

resolving this appeal.

DAVID A. HUBBERT
  *Acting Assistant Attorney General*

/s/ Patrick J. Urda

GILBERT S. ROTHENBERG          (202) 514-3361
MICHAEL J. HAUNGS             (202) 514-4343
PATRICK J. URDA              (202) 307-0201
Appellate.TaxCivil@usdoj.gov
Patrick.Urda@usdoj.gov
*Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
ROBERT C. TROYER
*United States Attorney*

OCTOBER 2017

1110183.1

**EXHIBIT 11**

-58-

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> [X] this brief contains 10,479 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

> [ ] this brief uses a monospaced typeface and contains <state the number of> lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [X] this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook, or

> [ ] this brief has been prepared in a monospaced typeface using <state name and version of word processing program> with <state number of characters per inch and name of type style>.

Date: October 25, 2017          /s/ Patrick J. Urda
                                _____
                                Patrick J. Urda
                                Attorney for Government Appellees
                                Tax Division, Department of Justice
                                P.O. Box 502
                                Washington, D.C. 20044
                                Appellate.TaxCivil@usdoj.gov
                                Patrick.Urda@usdoj.gov
                                (202) 307-0201

1110183.1

## EXHIBIT 11

-59-

## CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION

I hereby certify that on October 25, 2017, I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following:

Mr. James D. Thorburn: jdt@thorburnlaw.com;
Mr. Richard Walker: rwalker@thorburnwalker.com.

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, System Center Endpoint Protection 2012 (updated daily), and according to the program are free of viruses.


Date: October 25, 2017        /s/ Patrick J. Urda
                              _____
                              Patrick J. Urda
                              Attorney for Government Appellees
                              Tax Division, Department of Justice
                              P.O. Box 502
                              Washington, D.C. 20044
                              Appellate.TaxCivil@usdoj.gov
                              Patrick.Urda@usdoj.gov
                              (202) 307-0201

1110183.1

**EXHIBIT 11**