IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:18-mc-00030-PAB

CSW CONSULTING, Inc., a Colorado corporation;
COLORADO COLITAS, LLC, d/b/a HERBAL
REMEDIES, a Colorado limited liability company;
and CARL S. WEMHOFF,

        Petitioners,

        v.

UNITED STATES OF AMERICA,

        Respondent.

---

### UNITED STATES' MOTION TO DISMISS PETITION AND ENFORCE SUMMONSES

---

The United States moves the Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an Order dismissing or denying the Petition to Quash Summonses. The United States also requests that the Court issue an Order under 26 U.S.C. §§ 7604(a) and 7609(b)(2)(A) enforcing the summonses. As explained below, because the Petition fails to overcome the United States' showing of the summonses' *prima facie* validity, it fails to state a legitimate claim for relief.

### INTRODUCTION

This action is part of an ongoing campaign to prevent the IRS from enforcing 26 U.S.C. § 280E in audits of marijuana businesses. Section 280E denies deductions associated with trafficking in controlled substances. Marijuana remains a federally controlled substance, despite its legalization under state law in various jurisdictions. Without question, therefore, § 280E applies to marijuana businesses.

Petitioner CSW Consulting, Inc., and its owner, Petitioner Carl Wemhoff, operate a

marijuana business through CSW's related entity, Petitioner Colorado Colitas, LLC.  To

determine whether CSW and Mr. Wemhoff have sought deductions that § 280E denies, and to

complete audits of their tax returns, the IRS has issued summonses to third parties requesting

information relevant to those audits.  Petitioners seek to prevent the IRS from obtaining this

information, asserting several disjointed arguments, which can be distilled to the following: (1)

through the summonses, the IRS is conducting a criminal investigation for which it lacks

authority and must grant Petitioners immunity; (2) the summons issued to Colorado's Marijuana

Enforcement Division ("MED") violates Petitioners' Fourth Amendment and related rights; (3)

MED cannot produce the information sought without violating law and improperly creating

documents; and (4) in issuing the summonses, the IRS failed to follow required steps.

      This Court has rejected several of these arguments in similar cases that marijuana

businesses have brought.  *See*, *e.g.*, *The Green Solution Retail, Inc., et al., v. United States*, No.

1:16-mc-00137-PAB (D. Colo. Feb. 12, 2018); *Rifle Remedies, LLC v. United States*, No. 1:17-

mc-00062-RM (D. Colo. Oct. 26, 2017).  As in those cases, Petitioners' arguments here lack

merit.  Moreover, Petitioners' arguments fail to sustain their burden.  As explained below,

through the declaration of Revenue Agent David Hewell, who issued the summonses, the United

States has made a *prima facie* showing of the summonses' validity based on the factors

articulated in *United States v. Powell*, 379 U.S. 48 (1964).  Petitioners' arguments fail to

overcome that *prima facie* showing.  The United States thus requests that, based on the papers

before it, the Court dismiss the Petition and enter an Order enforcing the summonses.

## STATEMENT CONCERNING DUTY TO CONFER

      D.C.COLO. LCivR 7.1(b) makes an exception to the duty to confer for motions brought

under Fed. R. Civ. P. 12.  Given that the United States brings this motion pursuant to Rule

12(b)(6), the parties need not have conferred in connection with this motion.

## FACTUAL BACKGROUND

As reflected in Mr. Wemhoff's tax returns, public information, and CSW's document production to the IRS, CSW and Colorado Colitas appear to be the same business or closely related businesses.  *See* Declaration of Revenue Agent David Hewell ("Hewell Dec.") ¶ 5.[1] Through Colorado Colitas, CSW and Mr. Wemhoff operate a marijuana dispensary called "Herbal Remedies."  *Id.* ¶ 6.

Like other businesses, CSW has federal tax obligations.  To enforce those obligations, the IRS, in July of 2017, began an audit of CSW for the 2013, 2014, and 2015 tax years.  *Id.* ¶ 8. The IRS subsequently expanded this audit to include the 2016 tax year.  *See id.* ¶ 12.  Because CSW elected to be treated as a pass-through entity for tax purposes, the results of an audit could affect its owner's income taxes.  In August of 2017, therefore, the IRS opened an audit of the personal tax returns of CSW's owner, Mr. Wemhoff, for 2013, 2014, and 2015, *id.* ¶¶ 4, 10, and then expanded the audit to include 2016, *see id.* ¶ 13.  Through these audits, the IRS seeks to determine the correctness of CSW's and Mr. Wemhoff's federal tax returns and to ascertain their correct federal tax liabilities.  *Id.* ¶¶ 7, 18.

In connection with these audits, RA Hewell sought information directly from CSW and from Mr. Wemhoff.  *See id.* ¶¶ 9, 11, 12, 13.  To date, CSW and Mr. Wemhoff have failed to provide information sufficient to substantiate their tax returns.  *See id*. ¶ 15.  Without further information, the IRS cannot verify their accounting records, reconstruct their income, or

---

[1] Carl Wemhoff is the sole shareholder of CSW, the key licensee for Colorado Colitas, and the registered agent for both Colorado Colitas and CSW.  Colorado Colitas's mailing address is the same as CSW's address.  And in response to an IRS request for CSW's state sales tax information, CSW produced a state sales tax return for Colorado Colitas.  Also, Colorado Colitas has not filed a federal tax return since 2012.  *See* Hewel Dec. ¶ 5.

otherwise confirm the accuracy of the tax returns at issue.  *See id.*

Third-party information, particularly information that CSW or Colorado Colitas reported to Colorado's Marijuana Enforcement Division ("MED"), would assist the IRS in making these determinations.  Under Colorado law, marijuana businesses must report business, accounting, and financial information to MED.  *See* Colo. Rev. Stat. §§ 12-43.3-701, 12-43.4-701; 1 Code of Colo. Reg. §§ 212-1 M309, M901-904 and §§ 212-1 R309, R901-904.  As part of this requirement, these businesses must account for their inventory using MED's Marijuana Inventory Tracking Reporting and Compliance ("METRC") system.  *See id.*  Information from the METRC system is useful in an audit.  Such information can establish whether a marijuana business properly reported its gross receipts and allowed deductions for cost of goods sold.  *See* Hewel Dec. ¶ 17.  In turn, this information, as well as that held by a business's bank, can assist in verifying the business's books and records and otherwise substantiate information stated on its federal income tax returns.  *See id.* ¶ 18, 27.

As part of the audits of CSW's and Mr. Wemhoff's 2013-2016 returns, therefore, the IRS, on January 18, 2018, issued to MED an administrative summons seeking information contained on MED's METRC system.  Specifically, the summons seeks METRC annual gross sales reports, transfer reports, annual harvest reports, and monthly plants inventory reports, for 2013 through 2016, for all licensees related to Colorado Colitas, CSW Consulting, d/b/a Herbal Remedies, and Carl Wemhoff.  Hewell Dec. ¶ 19.  Likewise, on January 18, 2018, the IRS issued administrative summonses to U.S. Bank National Association and to Wells Fargo Bank N.A.  The summonses seek records, from 2013 through 2016, for accounts related to Colorado Colitas, CSW Consulting, d/b/a Herbal Remedies, and Carl Wemhoff.  *Id.* ¶ 22.

The IRS properly served these summonses and gave notice to CSW and Mr. Wemhoff.

*Id.* ¶¶ 20, 21, 23, 24.  The IRS followed all other administrative requirements in issuing the summonses.  *Id.* ¶ 28.  In addition, the IRS does not already possess the information sought.  *Id.* ¶ 26.  MED, U.S. Bank, and Wells Fargo have not yet produced information in response to the summonses.  *See id.* ¶ 25.  As stated above, this information may be relevant to evaluating CSW's and Mr. Wemhoff's tax returns and determining their correct federal tax liabilities.  *Id.* ¶ 27.  Finally, no Department of Justice referral, as defined by 26 U.S.C. § 7602(c), is in effect with respect to CSW, Colorado Colitas, or Mr. Wemhoff for the relevant tax periods.  *Id.* at ¶ 29.

## DISCUSSION

The summonses at issue here plainly fall within the IRS's broad information-gathering authority.  *See* 26 U.S.C. § 7602; *see also United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984) (the IRS's investigative power under § 7602 extends to documents only potentially relevant to an examination).  Pursuant to that authority, the summonses seek information for the legitimate purpose, under the statue, of determining Petitioners' correct federal tax liability.  The United States thus seeks to dismiss Petitioners' challenge to the summonses and to enforce them.

On a motion to dismiss such as this, which also seeks to enforce an IRS summons, the United States bears the initial burden of showing the summons' *prima facie* validity.  *See Anaya v. United States*, 815 F.2d 1373, 1377 (10th Cir. 1987).  This burden is a "slight one," given the IRS's broad enforcement powers.  *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985).  The United States can satisfy this burden through "affidavit of the agent who issued the summons and who is seeking enforcement."  *Id.; see also Stoffels v. Hegarty*, 267 Fed. Appx. 814, 815 (10th Cir. 2008) (Revenue Agent's declaration "was sufficient to establish a prima facie case" for enforcement of summons).

Through such an affidavit or otherwise, the United States must establish that the IRS has

not referred the taxpayer's case to the Justice Department for criminal prosecution. *See United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 312-13 (1978); *Anaya*, 815 F.2d at 1377. To demonstrate the summons' *prima facie* validity, the United States also must establish the four factors articulated in *United States v. Powell*, 379 U.S. 48, 57-58 (1964), discussed below. *See Anaya*, 815 F.2d at 1377.

Once the United States has made this *prima facie* showing, the burden shifts to the party resisting enforcement. That burden "is a heavy one." *Balanced Fin. Mgmt.*, 769 F.2d at 1444. The petitioner must show that enforcement would "constitute an abuse of the court's process" or that, in issuing the summons, the IRS lacked "institutional good faith." *Anaya*, 815 F.2d at 1373. If the petitioner cannot refute the United States' *prima facie Powell* showing through specific factual allegations, or cannot factually support a proper affirmative defense, "the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." *Balanced Fin. Mgmt.*, 769 F.2d at 1444.

As explained below, in this case, based on the *Powell* factors, the United States has met its burden of making a *prima facie* showing of the summonses' validity. Petitioners, in contrast, make meritless arguments insufficient to refute the *Powell* factors or otherwise undermine the summonses' validity. The Court, therefore, should dismiss the Petition and enforce the summonses without an evidentiary hearing.

A.   **The United States Has Made a *Prima Facie* Showing of the Summonses' Validity.**

Through RA Hewell's declaration, the United States has met its burden of showing the summonses' validity. First, the declaration states that the IRS has not referred CSW, Colorado Colitas, or Mr. Wemhoff to the Justice Department for criminal prosecution. *See* Howell Dec. ¶ 29. Second, the declaration makes clear that, with respect to the summonses at issue, the IRS has

satisfied the four factors articulated in *Powell*, 379 U.S. at 57-58: (1) the IRS issued the summons for a legitimate purpose; (2) the information the summons seeks is relevant to that purpose; (3) the IRS does not already possess that information; and (4) in issuing the summons, the IRS followed the required administrative steps.

**1.     The IRS issued the summonses for a legitimate purpose.**

The Internal Revenue Code authorizes the IRS to issue summonses for the purpose of "determining the liability of any person for any internal revenue tax."  26 U.S.C. § 7602(a).  In this case, the IRS issued summonses to MED, U.S. Bank, and Wells Fargo to obtain information concerning CSW's and Mr. Wemhoff's income and expenses from 2013 through 2016.  *See* Hewell Dec. ¶¶ 19, 22.  The IRS sought this information to determine the correct income tax liability for CSW and its owner for those years.  *See id.* ¶¶ 18, 27.  The summonses' purpose thus falls squarely within the IRS's statutory authority.

**2.     The information the summonses seek is relevant to their purpose.**

The summonses seek financial and inventory information that CSW, Colorado Colitas, and Mr. Wemhoff have reported to MED and to their banks.  For this information to meet the *Powell* relevance requirement, it need only be *potentially* relevant to the audits at issue.  *See Arthur Young & Co.*, 465 U.S. at 814 (stating that the "language 'may be' [in § 7602] reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation") (emphasis in original).  Information meets this standard where it "might throw light upon" the correctness of a tax return.  *Id.* at 813.

The information the summonses here seek – financial and inventory data – plainly meets this standard.  Such information will shed light on CSW's and its owner's correct income by

substantiating, or contradicting, sales and inventory figures.[2]

### 3.    The IRS does not already possess the information sought in the summonses.

RA Hewell's declaration affirmatively states that the IRS does not already possess the information the summonses seek.  Hewell ¶ 26.  In addition, neither MED, U.S. Bank, nor Wells Fargo have produced this information.  *Id.* ¶ 25.

### 4.    The IRS has followed the required administrative steps.

RA Hewell's declaration also affirmatively states that, in issuing the summonses, he followed the administrative steps the Internal Revenue Code requires.  Hewell Dec. ¶ 28.  The declaration goes further than necessary by also outlining the steps RA Hewell took to issue the summonses and serve notice in accordance with 26 U.S.C. §§ 7603 and 7609.  Hewell Dec. ¶¶ 20, 21, 23, 24.

Through RA Hewell's declaration, therefore, the United States has met each of the four *Powell* factors and has made a *prima facie* showing of the summonses' validity.

## B.    Petitioners' Arguments Fail to Overcome the United States' *Prima Facie* Showing.

The Petition, on the other hand, makes no specific factual allegations sufficient to refute the United States' *prima facie Powell* showing.  Rather, it makes several arguments that lack merit for the following reasons, discussed below:  (1) under relevant case law, the summonses represent a legitimate use of the IRS's investigatory power; (2) because Petitioners do not have a reasonable expectation of privacy in information submitted to MED, and because the MED summons is sufficiently narrow, the MED summons does not violate the Fourth Amendment or

---

[2] Inventory figures in particular play a critical role in audits of marijuana businesses.  Given the provisions of § 280E, marijuana businesses may offset gross receipts only with the cost of goods sold.  *See*, *e.g.*, *Olive v. Commissioner*, 139 T.C. 19, 32-36 (2012), *aff'd*, 792 F.3d 1146 (9th Cir. 2015); I.R.S. Chief Couns. Advice 201504011 (Jan. 23, 2015).

related protections; (3) the MED summons does not require MED to violate law or to create documents; and (4) in this case, the IRS followed the required administrative steps.

1.       **The summonses represent a legitimate use of the IRS's investigatory power.**

Petitioners claim that the IRS's true purpose in issuing the summonses is to investigate violations of the Controlled Substances Act, 21 U.S.C. § 801, et seq. ("CSA").  They claim that this purported purpose is improper because the IRS lacks authority to conduct such an investigation.  In his declaration, however, RA Hewell states that the IRS issued the summonses to determine Petitioners' correct federal tax liabilities.  Hewell Dec. ¶¶ 7, 18, 27.  Moreover, as explained above, through Colorado Colitas, CSW and Mr. Wemhoff operate a marijuana business; marijuana remains a federally controlled substance notwithstanding its legal status under Colorado law; and 26 U.S.C. § 280E prohibits tax deductions associated with trafficking in controlled substances.  The IRS thus issued the summonses as a legitimate means to examine Petitioners' federal tax liability and to enforce § 280E, which is a civil, not criminal, statute.

The issue, therefore, is not whether the IRS has authority to investigate violations of the CSA; it is whether the IRS has the authority to enforce § 280E with respect to marijuana businesses.  Relevant case law makes clear the IRS possesses this authority.  Moreover, contrary to Petitioners' assertion, courts have affirmed that authority in the absence of a corresponding conviction for violating the CSA.  *See, e.g., Olive v. Commissioner*, 792 F.3d 1146, 1151 (9th Cir. 2015) (holding, in absence of CSA conviction, that § 280E precluded marijuana business from deducting business expenses); *Canna Care Inc. v. Commissioner*, 110 T.C.M. (CCH) 408, 2015 WL 6389130, at *5 (2015) (upholding IRS's application of § 280E, in absence of CSA conviction, which disallowed medical marijuana dispensary's deduction of business expenses).

The Tenth Circuit, in fact, affirmed the IRS's § 280E authority in *Green Solution Retail,*

*Inc. v. United States*, 855 F.3d 1111 (10th Cir. 2017).  Yet Petitioners repeatedly mischaracterize

the decision in that case in an attempt to demonstrate the "true" purpose of the IRS summonses,

focusing on this statement from the decision:  "The IRS made initial findings that Green Solution

trafficked in a controlled substance and is criminally culpable under the CSA."  *Id*. at 1113.

Though inartfully phrased, this quote, taken in context, simply refers to the IRS's preliminary

determination that the plaintiff in that case, like Petitioners here, was a marijuana dispensary and

thus subject to § 280E.  The Tenth Circuit went on to make clear that the IRS possesses the

authority to enforce § 280E against such businesses, even in the absence of a criminal

investigation or conviction:  "[Section] 280E has no requirement that the Department of Justice

conduct a criminal investigation or obtain a conviction before § 280E applies.  Instead, the IRS's

obligation to determine whether and when to deny deductions under § 280E falls squarely within

its authority under the Tax Code."  *Id*. at 1121 (internal citation omitted).[3]

In a similar though somewhat contradictory vein, Petitioners also argue that because the

information the IRS summonses seek could be used by the Department of Justice to convict

Petitioners of violating federal drug laws – particularly in light of the Department's rescission of

memoranda regarding its policy on enforcing those laws – the IRS must grant Petitioners

immunity from prosecution before investigating them for § 280E violations.  This argument is

baseless as well.

First, Petitioners cite no authority even suggesting that the IRS must grant immunity to a

taxpayer before enforcing the provisions of § 280E with respect to that taxpayer.  Petitioners rely

on *Counselman v. Hitchcock*, 142 U.S. 547 (1892), mischaracterizing its holding as, in their

---

[3] This Court already has stated that it "is bound by [the Tenth Circuit's] decision" on this point.
*The Green Solution Retail, Inc. v. United States*, No. 16-mc-00137-PAB, 2018 WL 1305449, at
*2 (Feb. 12, 2018).

words, "if Congress wishes to use its tax power to compel books and records, Congress must afford absolute immunity against future prosecution for the offence to which the question relates."  Pet. at 10.  *Counselman*, however, had nothing to do with Congress's use of "its tax power to compel books and records."  Rather, it held that the Fifth Amendment's protection against self-incrimination extends to testimony before a grand jury.  *Counselman*, 142 U.S. at 563.  Petitioners also rely on *Marchetti v. United States*, 390 U.S. 39 (1968), which held that the privilege against self-incrimination applied in a prosecution for evasion of taxes on gambling income.  *Marchetti*, however, involved specialized excise tax forms required only of certain individuals and concerning activities that were almost universally illegal under state law.  Such forms are not the same as the income tax returns at issue here.  All businesses and individuals must file such returns, which require information on all income-producing activities.  *See Higginbotham v. United States*, 491 F.2d 432, 435-36 (4th Cir. 1974) (distinguishing gambling cases from tax laws that "cover the broad mass of the taxpaying public").

Petitioners otherwise assert no legitimate basis for a grant of immunity in this case.  They emphasize that the IRS has an obligation, under 26 U.S.C. § 6103(i), to disclose taxpayer information to other federal agencies for use in criminal investigations.  But they ignore that, under the statute, the IRS can make such disclosures only in limited circumstances.  First, before the IRS can do so, the Department of Justice must seek an order from a federal court allowing the disclosure.  *See* § 6103(i)(1)(B).  Second, the court may grant such an order only if, among other requirements, the information sought to be disclosed cannot be obtained from another source.  *See* § 6103(i)(1)(B)(iii).  In this case, any information pertaining to Petitioners' trafficking in a controlled substance can be obtained from several other sources.  Herbal Remedies' website, for instance, plainly states that it sells marijuana, which remains a federally

controlled substance.  In addition, its dispensary presumably has shelves or displays stocked full of marijuana.  Any law enforcement authority most likely would not need the information the IRS summonses seek to prove that Petitioners are violating federal drug laws.

Petitioners also emphasize that the Justice Department has rescinded memoranda regarding its policy on enforcement of those laws with respect to marijuana.  The Department's action, however, does not mean that Petitioners now face an elevated danger of self-incrimination by cooperating with the IRS audits.  As the Tenth Circuit stated in *Feinberg v. Commissioner*, 808 F.3d 813 (10th Cir. 2015), Congress, not the Justice Department, sets policy directives, and in any event, the Justice Department "could displace these memoranda at any time." *Id*. at 816.  Given the IRS's obligation to enforce the laws Congress has passed, the court in *Feinberg* thus refused to block the Tax Court from compelling a marijuana dispensary to produce information to the IRS regarding the nature of the dispensary's business and demonstrating that it sold marijuana.  The court did so without requiring that the IRS grant the dispensary immunity from prosecution.  *See id*. at 816-18.

No question exists that the IRS possesses the authority to audit Petitioners and enforce the provisions of § 280E without a grant of immunity.[4]  By issuing the summonses in question, the IRS was simply complying with Congress's directives in § 280E.  Complying with statutory directives does not constitute an improper purpose or bad faith, as Petitioners assert.  Rather, the summonses stand as a legitimate use of the IRS's investigatory power.

---

[4] The Petition also states that Mr. Wemhoff asserts his Fifth Amendment right against self-incrimination.  There can be no Fifth Amendment issue, however, where, as here, a third party holds the relevant records. *See In re First Nat'l Bank, Englewood, Colo.*, 701 F.2d 115, 117 (10th Cir. 1983).

2.      **The summons issued to MED does not violate Petitioners' Fourth Amendment or related rights.**

Petitioners also argue that the summons issued to MED violates their Fourth Amendment and related rights because the summons seeks confidential information and because, in seeking information pertaining to all licensees related to Petitioners, it requests the identities of third parties and is therefore overbroad.  As explained below, these arguments also lack merit.

(a)      **Petitioners do not have a reasonable expectation of privacy in information submitted to MED.**

Petitioners point out that the information they provided to MED, which the summons seeks, is confidential under Colorado Law.  Petitioners apparently mean to cite C.R.S. § 12-43.3-202(1)(d), which states that MED shall "[m]aintain the confidentiality of reports or other information obtained from a medical or retail [marijuana] licensee."  Petitioners thus claim they have a reasonable expectation of privacy in this information.  According to Petitioners, therefore, in seeking this information, the summons violates their Fourth Amendment rights.

Petitioners are incorrect.  The Supreme Court made clear in *United States v. Miller*, 425 U.S. 435 (1976), that in these precise circumstances, where a person provides information to a third party that commits to protecting its confidentiality, the person has no reasonable expectation of privacy in that information.  The Government thus may obtain that information from the third party without violating the Fourth Amendment:  "This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed."  *Id.* at 443 (1976); *see also Pleasant v. Lovell*, 974 F.2d 1222, 1230 (10th Cir. 1992) (tax protester had no reasonable expectation of privacy in information given to

third party; the IRS's acquisition of that information from the third party thus did not violate the Fourth Amendment) (citing *Miller*).

Courts have followed this established law specifically with respect to IRS summonses. *See*, *e.g.*, *Reimer v. United States*, 43 F. Supp. 2d 232, 237 (N.D.N.Y. 1999) (holding that taxpayer had no reasonable expectation of privacy with respect to confidential financial documents in his insurer's possession, and thus enforcement of IRS summons to insurer would not violate taxpayer's Fourth Amendment rights); *Four Corners Exch. v. United States*, No. 85-F-1820, 1985 WL 5972, at *2 (D. Colo. Nov. 18, 1985) (stating that "there is simply no Fourth Amendment interest" in bank records held by third party to preclude enforcement of IRS summons); *see also United States v. McAnlis*, 721 F.2d 334, 337 (11th Cir. 1983) ("As long as the IRS complies with the *Powell* requirements, it will not violate the summoned party's Fourth Amendment rights."), *cert. denied*, 467 U.S. 1227 (1984).

In this case, because Petitioners provided the information the summons seeks to MED, which is a third party, Petitioners have no legitimate expectation of privacy in that information. Enforcing the summonses to MED thus would not violate the Fourth Amendment.[5]

  **(b)**  **The summons properly seeks information from relevant licensees.**

Petitioners also argue that the MED summons is impermissibly overbroad, and thus unenforceable, because in seeking information regarding all licensees related to Petitioners, the summons seeks the identities of "third parties who may have dealt with the Petitioners in the

---

[5] Petitioners also argue that the IRS should have obtained a warrant before issuing the summonses. A warrant's purpose, however, is to ensure court review to protect a subject's rights. As the 1969 case on which Petitioners rely states, "[s]o long as [an IRS] summons is subjected to court review, it certainly meets the requirements of a search warrant regardless of whether it is criminally oriented." *United States v. Roundtree*, 420 F.2d 845, 849 n.8 (5th Cir. 1969). Obviously the IRS summonses at issue here are subject to court review.

past." Pet. at 21. According to Petitioners, therefore, the summons actually constitutes a "John Doe" summons subject to the additional requirements in 26 U.S.C. § 7609(f). Petitioners are incorrect on this point as well.

First, the MED summons simply seeks information pertaining to whichever party actually provided the information to MED, whether that party is CSW, Colorado Colitas, Mr. Wemhoff, or some unknown entity or individual. Petitioners have not made clear what the precise relationship is between CSW and Colorado Colitas. Yet by providing Colorado Colitas's information in response to requests pertaining to CSW, and based on Mr. Wemhoff's return information, they have indicated that, at the least, both CSW and Colorado Colitas conduct business as "Herbal Remedies," which is a marijuana dispensary. In seeking METRC information "for all associated licensees related to" Colorado Colitas, CSW, and Mr. Wemhoff, therefore, the MED summons seeks to obtain information from the correct party, known or unknown, that submitted the information on Herbal Remedies' behalf.

Second, even if the IRS were seeking to identify Petitioners' business associates, that would not make the summons unenforceable or make it a "John Doe" summons. The IRS may serve a summons on a known taxpayer with the dual purpose of investigating that taxpayer's liabilities and unnamed parties' liabilities without having to comply with the requirements for a "John Doe" summons. *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 324 (1985). Moreover, by its own terms, § 7609(f) applies only to summonses that do "not identify the person with respect to whose liability the summons is issued." In this case, the summons makes clear whose tax liability is at issue – that of CSW (and Colorado Colitas) and Mr. Wemhoff. Accordingly, the summons cannot be a "John Doe" summons to which the provisions of § 7609(f) apply. *See Rifle Remedies*, 2017 WL 6021421, at *3 (section 7609(f) "only applies when

the summons does not identify the person with respect to whose liability the summons is issued").

Enforcing the MED summons thus will not violate Petitioners' Fourth Amendment or related rights.

      **3.**     **The summons issued to Med does not require MED to violate law or to create documents.**

Petitioners additionally argue that the summons issued to MED should not be enforced because MED cannot produce the information sought without violating the law and without improperly creating documents.  As an initial matter, this argument does not relate to the summons' validity.  Rather, it pertains to whether MED is able or willing to produce the information the summons requests.  Accordingly, only MED, not Petitioners, has standing to raise these issues.

In any event, like their other arguments, Petitioners' argument here lacks merit.  First, in this and similar cases, MED has made no objection to producing the information requested in the summons.  Apparently, therefore, MED does not view complying with the summons as violating any law or as being forced to create information.

Moreover, to the extent state law would prohibit MED from producing information in response to an IRS summons, that law would conflict with 26 U.S.C. § 7602, which grants the IRS summons authority.  Under the Supremacy Clause, therefore, § 7602 would preempt the state law.  Several cases illustrate this principle.  In *United States v. Martin*, 542 F. Supp. 22 (D. Kan. 1982), for instance, the United States sought to enforce an IRS summons issued to the Kansas Director of Property Valuation.  The Director had refused to comply with the summons because Kansas law prohibited him from disclosing the information sought.  The court found that the Kansas law conflicted with the IRS summons power in § 7602, and therefore, under the

Supremacy Clause, was preempted by § 7602.  *Id*. at 23.  In reaching this conclusion, the court noted that "[s]tate laws impeding the enforcement of IRS summons have not been excepted from operation of the Supremacy Clause."  *Id.  See also Holling v. United States*, No. 95-x-72263, 1996 WL 200731, at *7 (E.D. Mich. Feb. 6, 1996) ("To the extent [state] law conflicts with the summons power of 26 U.S.C. § 7602, it is preempted."); *United States v. Honolulu*, No. 84-0039, 1984 WL 21837, at *3 (D. Haw. Apr. 12, 1984) ("Even if state law prohibited the disclosure [pursuant to an IRS summons] of the records in question, state law must yield to Federal law under the Supremacy Clause.").

Petitioners' assertion that complying with the summons would force MED to violate law is therefore unfounded.  The same holds true regarding their related assertion, which this Court already has rejected, that complying with the summons would force MED to create documents. The summons to MED seeks information from MED's METRC database that Petitioners provided to MED.  To produce this information, MED simply needs to print that existing information.  Doing so would be similar to an insurance company or bank printing specific customer records maintained on its database.  The information exists in electronic form and must simply be reduced to tangible form.

Section 7602(a) explicitly permits the IRS to seek such information.  The statute authorizes the IRS "[t]o examine any books, papers, records, or *other data* which may be relevant or material to [its] inquiry."  26 U.S.C. § 7602(a)(1) (emphasis added); *see also United States v. Euge*, 444 U.S. 707, 717 n.11 (1980) ("[Section 7602] obviously contemplates the transformation of some evidence not formerly tangible, since it obligates the summoned individual to provide testimony.").

Petitioners rely extensively on this Court's decision in *Rifle Remedies* to support their

argument on this point.  That decision, however, plainly rejects Petitioners' argument.
Specifically, this Court stated in *Rifle Remedies* that if MED possesses the requested information
in a form, such as a report, that it could produce from its database, then MED should comply
with the summons.  But even if MED does not possess the requested information in such a form,
it still should comply by producing "the entirety of the database of information," which the IRS
would then have to sort through to obtain the information it seeks.  *Rifle Remedies*, 2017 WL
6021421, at *2 & n.2.

As this Court recognized in *Rifle Remedies*, Petitioners' argument on this point thus fails
to demonstrate that the summons to MED has an illegitimate purpose.  No reason exists that
MED could not, or would not, comply with the IRS summons.

> **4.      The IRS followed the required administrative steps.**

Finally, Petitioners also contend that the IRS did not follow the required administrative
steps in issuing the summonses because, according to Petitioners, the "record" lacks anything
showing that the IRS "served" CSW or Mr. Wemhoff with a "Notice of Audit for 2016" or
showing that the IRS initiated any audit for Herbal Remedies.  Pet. at 14.  This contention is
disingenuous, at best.

First, Petitioners have not cited any Code provision that requires the IRS to notify a
taxpayer about an audit, much less "serve" a taxpayer with notice of an audit, before the IRS
issues a summons to a third party in connection with that audit.  In any event, as RA Hewell's
declaration makes clear, both CSW and Mr. Wemhoff received notice of, and participated in,
audits of their returns for all the years at issue, including 2016, before the IRS issued the
summonses in question.  *See* Hewell Dec. ¶¶ 8-14.  Moreover, as discussed above, by providing
Colorado Colitas's information in response to requests pertaining to CSW, and based on Mr.

Wemhoff's return information, CSW and Mr. Wemhoff have indicated that CSW and Colorado Colitas are essentially the same entity and that both conduct business as "Herbal Remedies."  To the extent Herbal Remedies and CSW are separate entities, information pertaining to Herbal Remedies is relevant to the CSW audit.

Accordingly, none of Petitioners' arguments refutes the United States' *prima facie* showing of the summonses' validity based on each of the four *Powell* factors.

**C.    The Court Should thus Dismiss the Petition and Enforce the Summonses Without an Evidentiary Hearing.**

Because Petitioners have failed to state any allegation sufficient to overcome the United States' *prima facie* showing, the Court should dismiss the Petition and enforce the summonses based on the papers before it, without an evidentiary hearing.  *See Balanced Fin. Mgmt.*, 769 F.2d at 1444 (if the petitioner cannot refute the United States' *prima facie Powell* showing through specific factual allegations, "the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing").

In the Petition's claim for relief, Petitioners seek an order scheduling an evidentiary hearing "to determine if the IRS has satisfied the *Powell* standard for enforcement of the Summons."  Pet. at 26.  Given their failure to state specific allegations sufficient to sustain their burden, however, no evidentiary hearing is necessary.  As the Supreme Court has made clear, a taxpayer may examine an IRS agent in an evidentiary hearing only where he can "point to specific facts or circumstances plausibly raising an inference of bad faith.  Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge."  *United States v. Clarke*, 134 S. Ct. 2361, 2367 (2014).  In fact, after the Supreme Court in *Clarke* overruled the Eleventh Circuit's decision that the taxpayers in that case were entitled to an evidentiary hearing, the case ultimately was remanded to the District Court, which

enforced the contested summonses without a hearing. *See United States v. Clarke*, 2015 WL 1324372, at *3 (S.D. Fla. Feb. 18, 2015), *aff'd* 816 F.3d 1310 (11th Cir. 2016), *cert. denied sub nom. Dynamo Holdings Ltd P'ship*, 137 S. Ct. 625 (2017).

Likewise, the Court should enforce the summonses in this case without a hearing. Under *Clarke*, Petitioners' allegations cannot justify an evidentiary hearing because they do not plausibly raise an inference of bad faith. They have not stated allegations sufficient to overcome the United States' *prima facie* showing of the summonses' validity. In these circumstances, apart from the authority in *Clarke*, the Tenth Circuit has made clear that the Court should rule without an evidentiary hearing. *See Balanced Fin. Mgmt.*, 769 F.2d at 1444.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court dismiss the Petition and enter an Order enforcing the summonses at issue.

Dated:  March 20, 2018

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Charles J. Butler*
CHARLES J. BUTLER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-514-6062
Charles.J.Butler@usdoj.gov

*Of Counsel:*
ROBERT C. TROYER
United States Attorney

*Attorneys for United States of America*

CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2018, I filed the foregoing with the Clerk of the Court

using the CM/ECF system, which will provide electronic notice to the following:

James David Thorburn (jthorburn@thorburnwalker.com)
Richard Allan Walker (rwalker@thorburnwalker.com)
Thorburn Walker LLC
5460 South Quebec Street, Suite 330
Greenwood Village, Colorado 80111

*Counsel for Petitioners*

*/s/ Charles J. Butler*
CHARLES J. BUTLER
Trial Attorney, Tax Division
U.S. Department of Justice
