IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:18-mc-00030-PAB

CSW CONSULTING, Inc., a Colorado corporation;
COLORADO COLITAS, LLC, d/b/a HERBAL
REMEDIES, a Colorado limited liability company;
and CARL S. WEMHOFF,

       Petitioners,

       v.

UNITED STATES OF AMERICA,

       Respondent.

---

**UNITED STATES' MOTION TO DISMISS AMENDED PETITION
AND ENFORCE SUMMONSES**

---

The United States moves, pursuant to Fed. R. Civ. P. 12(b)(6), for an Order dismissing or

denying the Amended Petition to Quash Summonses.  The United States also requests that the

Court issue an Order under 26 U.S.C. §§ 7604(a) and 7609(b)(2)(A) enforcing the summonses.

As explained below, because the Amended Petition fails to overcome the United States' showing

of the summonses' *prima facie* validity, it fails to state a legitimate claim for relief.

## INTRODUCTION

This action is part of an ongoing campaign to prevent the IRS from enforcing 26 U.S.C.

§ 280E in audits of marijuana businesses.  Section 280E denies tax deductions associated with

trafficking in controlled substances.  Marijuana remains a federally controlled substance, despite

its legalization under state law in various jurisdictions.  Without question, therefore, § 280E

applies to marijuana businesses.

Petitioner CSW Consulting, Inc., and its owner, Petitioner Carl Wemhoff, operate a

1

marijuana business through CSW's related entity, Petitioner Colorado Colitas, LLC.  To determine whether CSW and Mr. Wemhoff have sought deductions that § 280E denies, and to complete audits of their tax returns, the IRS has issued summonses to third parties requesting information relevant to those audits.  Petitioners seek to prevent the IRS from obtaining this information, asserting the following arguments: (1) through the summonses, the IRS is conducting a criminal investigation for which it lacks authority; (2) absent a grant of immunity, any investigation for the purpose of enforcing § 280E violates Petitioners' Fifth Amendment rights; (3) the summons issued to Colorado's Marijuana Enforcement Division ("MED") violates Petitioners' Fourth Amendment and related rights; (4) MED cannot produce the information sought without violating law and improperly creating documents; (5) in issuing the summonses, the IRS failed to follow required steps; and (6) an IRS lead sheet that Petitioners recently obtained purportedly indicates that the IRS has changed its position regarding the relevance of the material the summonses seek.

This Court has rejected several of these arguments in similar cases that marijuana businesses have brought.  *See, e.g.*, *The Green Solution Retail, Inc., et al., v. United States*, No. 1:16-mc-00137-PAB (D. Colo. Feb. 12, 2018); *Rifle Remedies, LLC v. United States*, No. 1:17-mc-00062-RM (D. Colo. Oct. 26, 2017).  As in those cases, Petitioners' arguments here lack merit.  Moreover, Petitioners' arguments fail to sustain their burden.  As explained below, through the declaration of Revenue Agent David Hewell, who issued the summonses, the United States has made a *prima facie* showing of the summonses' validity based on the factors articulated in *United States v. Powell*, 379 U.S. 48 (1964).  Petitioners' arguments fail to overcome that *prima facie* showing.  The United States thus requests that, based on the papers before it, the Court dismiss the Petition and enter an Order enforcing the summonses.

## STATEMENT CONCERNING DUTY TO CONFER

D.C.COLO. LCivR 7.1(b) makes an exception to the duty to confer for motions brought under Fed. R. Civ. P. 12.  Because the United States brings this motion pursuant to Rule 12(b)(6), the parties need not have conferred in connection with this motion.

## FACTUAL BACKGROUND

As reflected in Mr. Wemhoff's tax returns, public information, and CSW's document production to the IRS, CSW and Colorado Colitas appear to be the same business or closely related businesses.  *See* Declaration of Revenue Agent David Hewell ("Hewell Dec.") ¶ 5.[1] Through Colorado Colitas, CSW and Mr. Wemhoff operate a marijuana dispensary called "Herbal Remedies."  *Id.* ¶ 6.

Like other businesses, CSW has federal tax obligations.  To enforce those obligations, the IRS, in July of 2017, began an audit of CSW for the 2013, 2014, and 2015 tax years.  *Id.* ¶ 8. The IRS subsequently expanded this audit to include the 2016 tax year.  *See id.* ¶ 12.  Because CSW elected to be treated as a pass-through entity for tax purposes, the results of an audit could affect its owner's income taxes.  In August of 2017, therefore, the IRS opened an audit of the personal tax returns of CSW's owner, Mr. Wemhoff, for 2013, 2014, and 2015, *id.* ¶¶ 4, 10, and then expanded the audit to include 2016, *see id.* ¶ 13.  Through these audits, the IRS seeks to determine the correctness of CSW's and Mr. Wemhoff's federal tax returns and to ascertain their correct federal tax liabilities.  *Id.* ¶¶ 7, 18.

In connection with these audits, RA Hewell sought information directly from CSW and

---

[1] Carl Wemhoff is the sole shareholder of CSW, the key licensee for Colorado Colitas, and the registered agent for both Colorado Colitas and CSW.  Colorado Colitas's mailing address is the same as CSW's address.  And in response to an IRS request for CSW's state sales tax information, CSW produced a state sales tax return for Colorado Colitas.  Also, Colorado Colitas has not filed a federal tax return since 2012.  *See* Hewel Dec. ¶ 5.

3

from Mr. Wemhoff.  *See id.* ¶¶ 9, 11, 12, 13.  To date, CSW and Mr. Wemhoff have failed to provide information sufficient to substantiate their tax returns.  *See id*. ¶ 15.  Without further information, the IRS cannot verify their accounting records, reconstruct their income, or otherwise confirm the accuracy of the tax returns at issue.  *See id.*

Third-party information, particularly information that CSW or Colorado Colitas reported to MED, would assist the IRS in making these determinations.  Under Colorado law, marijuana businesses must report business, accounting, and financial information to MED.  *See* Colo. Rev. Stat. §§ 12-43.3-701, 12-43.4-701; 1 Code of Colo. Reg. §§ 212-1 M309, M901-904 and §§ 212-1 R309, R901-904.  As part of this requirement, these businesses must account for their inventory using MED's Marijuana Inventory Tracking Reporting and Compliance ("METRC") system.  *See id.*  Information from the METRC system is useful in an audit.  Such information can establish whether a marijuana business properly reported its gross receipts and allowed deductions for cost of goods sold.  *See* Hewel Dec. ¶ 17.  In turn, this information, as well as that held by a business's bank, can assist in verifying the business's books and records and otherwise substantiate information stated on its federal income tax returns.  *See id.* ¶ 18, 27.

As part of the audits of CSW's and Mr. Wemhoff's 2013-2016 returns, therefore, the IRS, on January 18, 2018, issued to MED an administrative summons seeking information contained on MED's METRC system.  Specifically, the summons seeks METRC annual gross sales reports, transfer reports, annual harvest reports, and monthly plants inventory reports, for 2013 through 2016, for all licensees related to Colorado Colitas, CSW Consulting, d/b/a Herbal Remedies, and Carl Wemhoff.  Hewell Dec. ¶ 19.  Likewise, on January 18, 2018, the IRS issued administrative summonses to U.S. Bank National Association and to Wells Fargo Bank N.A. The summonses seek records, from 2013 through 2016, for accounts related to Colorado Colitas,

CSW Consulting, d/b/a Herbal Remedies, and Carl Wemhoff.  *Id.* ¶ 22.

The IRS properly served these summonses and gave notice to CSW and Mr. Wemhoff. *Id.* ¶¶ 20, 21, 23, 24.  The IRS followed all other administrative requirements in issuing the summonses.  *Id.* ¶ 28.  In addition, the IRS does not already possess the information sought.  *Id.* ¶ 26.  MED, U.S. Bank, and Wells Fargo have not produced information in response to the summonses.  *See id.* ¶ 25.  As stated above, this information may be relevant to evaluating CSW's and Mr. Wemhoff's tax returns and determining their correct federal tax liabilities.  *Id.* ¶ 27.  Finally, no Department of Justice referral, as defined by 26 U.S.C. § 7602(c), is in effect with respect to CSW, Colorado Colitas, or Mr. Wemhoff for the relevant tax periods.  *Id.* at ¶ 29.

## DISCUSSION

The summonses at issue here plainly fall within the IRS's broad information-gathering authority.  *See* 26 U.S.C. § 7602; *see also United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984) (the IRS's investigative power under § 7602 extends to documents only potentially relevant to an examination).  Pursuant to that authority, the summonses seek information for the legitimate purpose, under § 7602, of determining Petitioners' correct federal tax liability.  The United States thus seeks to dismiss Petitioners' challenge to the summonses and to enforce them.

On a motion to dismiss such as this, which also seeks to enforce an IRS summons, the United States bears the initial burden of showing the summons' *prima facie* validity.  *See Anaya v. United States*, 815 F.2d 1373, 1377 (10th Cir. 1987).  This burden is a "slight one," given the IRS's broad enforcement powers.  *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985).  The United States can satisfy this burden through "affidavit of the agent who issued the summons and who is seeking enforcement."  *Id.; see also Stoffels v. Hegarty*, 267 Fed. Appx. 814, 815 (10th Cir. 2008) (Revenue Agent's declaration "was sufficient to establish a

prima facie case" for enforcement of summons).

Through such an affidavit or otherwise, the United States must establish that the IRS has not referred the taxpayer's case to the Justice Department for criminal prosecution. *See United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 312-13 (1978); *Anaya*, 815 F.2d at 1377. To demonstrate the summons' *prima facie* validity, the United States also must establish the four factors articulated in *United States v. Powell*, 379 U.S. 48, 57-58 (1964), discussed below. *See Anaya*, 815 F.2d at 1377.

Once the United States has made this *prima facie* showing, the burden shifts to the party resisting enforcement. That burden "is a heavy one." *Balanced Fin. Mgmt.*, 769 F.2d at 1444. The petitioner must show that enforcement would "constitute an abuse of the court's process" or that, in issuing the summons, the IRS lacked "institutional good faith." *Anaya*, 815 F.2d at 1373. If the petitioner cannot refute the United States' *prima facie Powell* showing through specific factual allegations, or cannot factually support a proper affirmative defense, "the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." *Balanced Fin. Mgmt.*, 769 F.2d at 1444.

As explained below, in this case, based on the *Powell* factors, the United States has met its burden of making a *prima facie* showing of the summonses' validity. Petitioners, in contrast, make arguments insufficient to refute the *Powell* factors or otherwise undermine the summonses' validity. The Court, therefore, should dismiss the Petition and enforce the summonses without an evidentiary hearing.

## A.     The United States Has Made a *Prima Facie* Showing of the Summonses' Validity.

Through RA Hewell's declaration, the United States has met its burden of showing the summonses' validity. First, the declaration states that the IRS has not referred CSW, Colorado

Colitas, or Mr. Wemhoff to the Justice Department for criminal prosecution.  *See* Howell Dec. ¶ 29.  Second, the declaration makes clear that, with respect to the summonses at issue, the IRS has satisfied the four factors articulated in *Powell*, 379 U.S. at 57-58: (1) the IRS issued the summonses for a legitimate purpose; (2) the information the summonses seek is relevant to that purpose; (3) the IRS does not already possess that information; and (4) in issuing the summonses, the IRS followed the required administrative steps.

### 1. The IRS issued the summonses for a legitimate purpose.

The Internal Revenue Code authorizes the IRS to issue summonses for the purpose of "determining the liability of any person for any internal revenue tax."  26 U.S.C. § 7602(a).  In this case, the IRS issued summonses to MED, U.S. Bank, and Wells Fargo to obtain information concerning CSW's and Mr. Wemhoff's income and expenses from 2013 through 2016.  *See* Hewell Dec. ¶¶ 19, 22.  The IRS sought this information to determine the correct income tax liability for CSW and its owner for those years.  *See id.* ¶¶ 18, 27.  The summonses' purpose thus falls squarely within the IRS's statutory authority.

### 2. The information the summonses seek is relevant to their purpose.

The summonses seek financial and inventory information that CSW, Colorado Colitas, and Mr. Wemhoff have reported to MED and to their banks.  For this information to meet the *Powell* relevance requirement, it need only be *potentially* relevant to the audits at issue.  *See* *Arthur Young & Co.*, 465 U.S. at 814 (stating that the "language 'may be' [in § 7602] reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation") (emphasis in original).  Information meets this standard where it "might throw light upon" the correctness of a tax return.  *Id.* at 813.

The information the summonses here seek – financial and inventory data – plainly meets

this standard.  Such information will shed light on CSW's and its owner's correct income by substantiating, or contradicting, sales and inventory figures.

>  **3.      The IRS does not already possess the information sought in the summonses.**

RA Hewell's declaration affirmatively states that the IRS does not already possess the information the summonses seek.  Hewell ¶ 26.  In addition, neither MED, U.S. Bank, nor Wells Fargo have produced this information.  *Id.* ¶ 25.

>  **4.      The IRS has followed the required administrative steps.**

RA Hewell's declaration also affirmatively states that, in issuing the summonses, he followed the administrative steps the Internal Revenue Code requires.  Hewell Dec. ¶ 28.  The declaration goes further than necessary by also outlining the steps RA Hewell took to issue the summonses and serve notice in accordance with 26 U.S.C. §§ 7603 and 7609.  Hewell Dec. ¶¶ 20, 21, 23, 24.

Through RA Hewell's declaration, therefore, the United States has met each of the four *Powell* factors and has made a *prima facie* showing of the summonses' validity.

>  **B.      Petitioners' Arguments Fail to Overcome the United States' *Prima Facie* Showing.**

The Amended Petition, on the other hand, fails to make specific factual allegations sufficient to refute the United States' *prima facie Powell* showing.  Rather, it makes several arguments that lack merit for the following reasons, discussed below:  (1) under relevant case law, the summonses represent a legitimate use of the IRS's investigatory power; (2) neither § 280E's provisions nor the summonses at issue implicate a Fifth Amendment interest; (3) because Petitioners do not have a reasonable expectation of privacy in information submitted to MED, and because the MED summons is sufficiently narrow, the MED summons does not violate Fourth Amendment or related protections; (4) the MED summons does not require MED

to violate law or to create documents; (5) the IRS followed the required administrative steps in issuing the summonses; and (6) IRS issue lead sheets do not articulate the United States' or the IRS's positions, and, in any event, Petitioners' reading of the lead sheet at issue is inaccurate.

1.      **The summonses represent a legitimate use of the IRS's investigatory power.**

Petitioners claim that the IRS's true purpose in issuing the summonses is to investigate violations of the Controlled Substances Act, 21 U.S.C. § 801, et seq. ("CSA").  They claim that this purported purpose is improper because the IRS lacks authority to conduct such an investigation.  In his declaration, however, RA Hewell states that the IRS issued the summonses to determine Petitioners' correct federal tax liabilities.  Hewell Dec. ¶¶ 7, 18, 27.  Moreover, as explained above, CSW and Mr. Wemhoff, through Colorado Colitas, operate a marijuana business; marijuana remains a federally controlled substance notwithstanding its legal status under Colorado law; and 26 U.S.C. § 280E prohibits tax deductions associated with trafficking in controlled substances.  The IRS thus issued the summonses as a legitimate means to examine Petitioners' federal tax liability and to enforce § 280E, which is a civil, not criminal, statute.

The issue, therefore, is not whether the IRS has authority to investigate violations of the CSA; it is whether the IRS has the authority to enforce § 280E with respect to marijuana businesses.  Relevant case law makes clear the IRS possesses this authority.  Moreover, contrary to Petitioners' assertion, courts have affirmed that authority in the absence of a corresponding conviction for violating the CSA.  *See, e.g., Olive v. Commissioner*, 792 F.3d 1146, 1151 (9th Cir. 2015) (holding, in absence of CSA conviction, that § 280E precluded marijuana business from deducting business expenses); *Canna Care Inc. v. Commissioner*, 110 T.C.M. (CCH) 408, 2015 WL 6389130, at *5 (2015) (upholding IRS's application of § 280E, which disallowed medical marijuana dispensary's deduction of business expenses, in absence of CSA conviction).

The Tenth Circuit, in fact, affirmed the IRS's § 280E authority in *Green Solution Retail, Inc. v. United States*, 855 F.3d 1111 (10th Cir. 2017). Yet Petitioners repeatedly mischaracterize the decision in that case in an attempt to demonstrate the "true" purpose of the IRS summonses, focusing on this statement from the decision: "The IRS made initial findings that Green Solution trafficked in a controlled substance and is criminally culpable under the CSA." *Id*. at 1113. Though inartfully phrased, this quote, taken in context, simply refers to the IRS's preliminary determination that the plaintiff in that case, like Petitioners here, was a marijuana dispensary and thus subject to § 280E. The Tenth Circuit went on to make clear that the IRS possesses the authority to enforce § 280E against such businesses, even in the absence of a criminal investigation or conviction: "[Section] 280E has no requirement that the Department of Justice conduct a criminal investigation or obtain a conviction before § 280E applies. Instead, the IRS's obligation to determine whether and when to deny deductions under § 280E falls squarely within its authority under the Tax Code." *Id*. at 1121 (internal citation omitted).[2]

No question exists that the IRS possesses the authority to audit Petitioners and enforce the provisions of § 280E. By issuing the summonses in question, the IRS was simply complying with Congress's directives in § 280E.

> **2.  Neither § 280E's provisions nor the summonses at issue implicate a Fifth Amendment interest.**

In a similar vein, Petitioners apparently argue that, absent a grant of immunity, any aspect of an audit that could involve applying the provisions of § 280E against them, including summoning information from third parties, violates their Fifth Amendment privilege against self-

---

[2] This Court has stated that it "is bound by [the Tenth Circuit's] decision" on this point. *The Green Solution Retail, Inc. v. United States*, No. 16-mc-00137-PAB, 2018 WL 1305449, at *2 (Feb. 12, 2018).

incrimination.  As an initial matter, as corporate entities, Petitioners CSW and Colorado Colitas have no Fifth Amendment privilege.  *See United States v. Natco Petroleum, Inc.*, 166 F.3d 1222, 1999 WL 44064, at *3 (10th Cir. 1999) ("It is black-letter law that . . . a corporation has no Fifth Amendment privilege.") (citing *Braswell v. United States*, 487 U.S. 99, 102 (1988)).  Any possible Fifth Amendment issue thus pertains only to Petitioner Carl Wemhoff.

In any event, as explained below, the provisions of § 280E do not compel Petitioners, or any other taxpayer, to produce information or otherwise incriminate themselves.  In addition, the information sought through the summonses at issue already exists in the hands of third parties, to whom Petitioners voluntarily provided that information.  Like § 280E, therefore, the summonses do not compel Petitioners to disclose anything.  Accordingly, neither § 280E nor a summons issued in connection with a § 280E audit implicates a Fifth Amendment interest.  And in any event, Petitioners have not articulated any genuine hazard of self-incrimination in relation to the summonses or § 280E in general.

In support of their argument that any effort to enforce § 280E violates their Fifth Amendment privilege, Petitioners cite the following cases:  *Leary v. United States*, 395 U.S. 6 (1969); *Marchetti v. United States*, 390 U.S. 39 (1968); *Grosso v. United States*, 390 U.S. 62 (1968); and *Haynes v. United States*, 390 U.S. 85 (1968).  In *Leary*, *Marchetti*, and *Grosso*, the Supreme Court held that the Fifth Amendment privilege constitutes a valid defense to violations of federal tax laws pertaining to income from marijuana trafficking or illicit gambling.  Each of the statutes at issue in these cases, however, required the taxpayer to submit to the IRS registration and other forms that would inculpate the taxpayer in an activity that was illegal, at the time, in virtually every jurisdiction in the country.  *See Leary*, 395 U.S. at 14 (statute obligated those employed in illegal marijuana trade to register with IRS); *Marchetti*, 390 U.S. at

48 (statute required those engaged in illegal gambling to register with IRS); *Grosso*, 390 U.S. at

65 (statute required those engaged in illegal gambling to file monthly form with IRS).  Likewise,

in *Haynes*, the Supreme Court held that the Fifth Amendment privilege constituted a valid

defense to violations of a federal statute requiring the registration of illegal firearms.  *Haynes*,

390 U.S. at 100.[3]

In each of these cases, the Court took issue with statutory provisions establishing

registration requirements that forced those engaging in universally illegal activities to provide

incriminating information.  In contrast, unlike the statutes at issue in these cases, § 280E does not

impose any registration or other similar reporting requirement.  Nor does it even impose a tax.

Rather, § 280E simply denies deductions associated with trafficking in controlled substances.

Contrary to Petitioners' implication in their discussion of "below the line" deductions, nothing

compels taxpayers, including Petitioners, to claim deductions on their tax returns.  As the Tenth

Circuit has made clear, tax deductions "are not a matter of right.  Neither do they turn upon

equitable considerations.  They are a matter of legislative grace."  *Green Solution Retail, Inc. v.*

*United States*, 855 F.3d 1111, 1121 (10th Cir. 2017) (also rejecting the assertion that the

disallowance of a deduction constitutes a penalty).  Accordingly, § 280E does not compel

taxpayers, including Petitioners, to disclose any information, incriminating or otherwise.[4]

---

[3] Petitioners also rely on *Florida Dep't of Revenue v. Herre*, 634 So. 2d 618 (Fla. 1994), in which the Florida court held that a state statute providing for a special sales tax on transactions involving marijuana violated the Fifth Amendment.  In that case as well, however, the statute at issue required those engaged in an activity illegal under state and federal law to submit to the government a specific form that called for incriminating information.

[4] In addition, contrary to Petitioners' assertion, § 280E does not involve an area "permeated with criminal statutes."  Am. Pet. at 7 (quoting *Marchetti*, 390 U.S. at 46).  In *Marchetti*, the Court made that observation because the underlying activity was illegal in the defendant's home state and in most jurisdictions throughout the country.  In addition, the statute at issue required the (continued...)

Likewise, summonses issued to third parties in connection with an audit involving § 280E, or any other tax provision, do not compel the audited taxpayer to disclose information. As the Tenth Circuit has stated, "There can be no violation of one's Fifth Amendment right not to testify against oneself where the records are in the hands of a third party; hence, one cannot complain on this ground about a subpoena directed to third parties to produce records." *In re First Nat'l Bank, Englewood, Colo.*, 701 F.2d 115, 117 (10th Cir. 1983). The summonses at issue here, for instance, are directed to MED, U.S. Bank, and Wells Fargo. The summonses seek information that Petitioners voluntarily provided to these third parties. Enforcing the summonses would not compel Petitioners to disclose any information, incriminating or otherwise.

Given that neither § 280E nor a summons issued in connection with an audit involving § 280E implicates a Fifth Amendment interest, no need exists for any grant of immunity to the taxpayer to proceed with such an audit, as Petitioners claim. And in any event, Petitioners have not articulated any genuine hazard of self-incrimination in relation to the summonses at issue or § 280E in general. Petitioners assert, for instance, that the information the IRS summonses seek from MED can lead to a criminal proceeding, pointing to the disclosure permitted under 26 U.S.C. § 6103(i)(3)(A)(i). That section states, in relevant part, the following:

> [T]he Secretary [of Treasury] may disclose in writing return information (other than taxpayer return information) which may constitute evidence of a violation of any Federal criminal law (not involving tax administration) to the extent necessary to apprise the head of the appropriate Federal agency charged with the responsibility of enforcing such law.

This provision allows the Secretary to disclose "return information," which encompasses all

---

(… continued)

IRS to share with federal and state law enforcement officials information obtained through IRS investigations. By contrast, in this case the underlying activity is legal in Petitioners' state, as well as several others. And neither § 280E nor any other statute requires the IRS to share information obtained in § 280E investigations with law enforcement.

information the IRS gathers with respect to a taxpayer.  *See* § 6103(b)(2).  The provision,

however, explicitly excludes "*taxpayer* return information" from the information the Secretary

may disclose.  The statute defines "taxpayer return information" as information obtained directly

from the taxpayer or its representative.  *See* § 6103(b)(3).  Under § 6103(i)(3)(A)(i), therefore,

the Secretary may disclose only that information obtained from third parties, not from the

taxpayer itself.  As explained above, any such disclosure would not implicate the taxpayer's Fifth

Amendment privilege.  Congress thus crafted this limited disclosure provision to permit

taxpayers to provide information on tax returns and in audits without any infringement on their

Fifth Amendment privilege.

Petitioners also emphasize that the Justice Department has rescinded memoranda

regarding its policy on enforcement of criminal laws with respect to marijuana.  The

Department's action, however, does not mean that Petitioners now face an elevated danger of

self-incrimination by cooperating with IRS audits.  As the Tenth Circuit stated in *Feinberg v.

Commissioner*, 808 F.3d 813 (10th Cir. 2015), Congress, not the Justice Department, sets policy

directives, and in any event, the Justice Department "could displace these memoranda at any

time."  *Id*. at 816.  Given the IRS's obligation to enforce the laws Congress has passed, the court

in *Feinberg* thus refused to block the Tax Court from compelling a marijuana dispensary to

produce information to the IRS regarding the nature of the dispensary's business and

demonstrating that it sold marijuana.  The court did so without requiring that the IRS grant the

dispensary immunity from prosecution.  *See id*. at 816-18.[5]

Petitioners thus have pointed to no concrete hazard of self-incrimination in this case that

---

[5] The Court in *Feinberg* also pointed out that the time to assert any Fifth Amendment privilege
would be *after* any involuntary disclosure results in criminal charges, not when any such charges
are purely hypothetical, as they are in this case.  *See Feinberg*, 808 F.3d at 818.

would justify any grant of immunity or quashing the summonses at issue.  They cannot do so given that, without question, the audit and summonses do not implicate Petitioners' Fifth Amendment privilege against self-incrimination.

### 3. The summons issued to MED does not violate Petitioners' Fourth Amendment or related rights.

Petitioners also argue that the summons issued to MED violates their Fourth Amendment and related rights because the summons seeks confidential information and because, in seeking information pertaining to all licensees related to Petitioners, it requests the identities of third parties and is therefore overbroad.  As explained below, these arguments also lack merit.

#### (a) Petitioners do not have a reasonable expectation of privacy in information submitted to MED.

Petitioners point out that the information they provided to MED, which the summons seeks, is confidential under Colorado Law.  Petitioners apparently mean to cite C.R.S. § 12-43.3-202(1)(d), which states that MED shall "[m]aintain the confidentiality of reports or other information obtained from a medical or retail [marijuana] licensee."  Petitioners thus claim they have a reasonable expectation of privacy in this information.  According to Petitioners, therefore, in seeking this information, the summons violates their Fourth Amendment rights.

Petitioners are incorrect.  The Supreme Court made clear in *United States v. Miller*, 425 U.S. 435 (1976), that in these precise circumstances, where a person provides information to a third party that commits to protecting its confidentiality, the person has no reasonable expectation of privacy in that information.  The Government thus may obtain that information from the third party without violating the Fourth Amendment:  "This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the

assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Id.* at 443 (1976); *see also Pleasant v. Lovell*, 974 F.2d 1222, 1230 (10th Cir. 1992) (tax protester had no reasonable expectation of privacy in information given to third party; the IRS's acquisition of that information from the third party thus did not violate the Fourth Amendment) (citing *Miller*).

Courts have followed this established law specifically with respect to IRS summonses. *See*, *e.g.*, *Reimer v. United States*, 43 F. Supp. 2d 232, 237 (N.D.N.Y. 1999) (holding that taxpayer had no reasonable expectation of privacy in confidential financial documents within his insurer's possession; enforcement of IRS summons to insurer thus would not violate taxpayer's Fourth Amendment rights); *Four Corners Exch. v. United States*, No. 85-F-1820, 1985 WL 5972, at *2 (D. Colo. Nov. 18, 1985) (stating that "there is simply no Fourth Amendment interest" in bank records held by third party to preclude enforcement of IRS summons); *see also United States v. McAnlis*, 721 F.2d 334, 337 (11th Cir. 1983) ("As long as the IRS complies with the *Powell* requirements, it will not violate the summoned party's Fourth Amendment rights."), *cert. denied*, 467 U.S. 1227 (1984).

In this case, because Petitioners provided the information the summons seeks to MED, which is a third party, Petitioners have no legitimate expectation of privacy in that information. Enforcing the summons to MED thus would not violate the Fourth Amendment.[6]

---

[6] Petitioners also argue that the IRS should have obtained a warrant before issuing the summonses. A warrant's purpose, however, is to ensure court review to protect a subject's rights. As the 1969 case on which Petitioners rely states, "[s]o long as [an IRS] summons is subjected to court review, it certainly meets the requirements of a search warrant regardless of whether it is criminally oriented." *United States v. Roundtree*, 420 F.2d 845, 849 n.8 (5th Cir. 1969). Obviously the IRS summonses at issue here are subject to court review.

**(b)** **The summons properly seeks information from relevant licensees.**

Petitioners also argue that the MED summons is impermissibly overbroad, and thus unenforceable, because in seeking information regarding all licensees related to Petitioners, the summons seeks the identities of "third parties who may have dealt with the Petitioners in the past." Am. Pet. at 30. According to Petitioners, therefore, the summons actually constitutes a "John Doe" summons subject to the additional requirements in 26 U.S.C. § 7609(f). Petitioners are incorrect on this point as well.

First, the MED summons simply seeks information pertaining to whichever party actually provided the information to MED, whether that party is CSW, Colorado Colitas, Mr. Wemhoff, or some unknown entity or individual. Petitioners have not made clear what the precise relationship is between CSW and Colorado Colitas. Yet by providing Colorado Colitas's information in response to requests pertaining to CSW, and based on Mr. Wemhoff's return information, Petitioners have indicated that, at the least, both CSW and Colorado Colitas conduct business as "Herbal Remedies," which is a marijuana dispensary. In seeking METRC information "for all associated licensees related to" Colorado Colitas, CSW, and Mr. Wemhoff, therefore, the MED summons seeks to obtain information from the correct party, known or unknown, that submitted the information on Herbal Remedies' behalf.

Second, even if the IRS were seeking to identify Petitioners' business associates, that would not make the summons unenforceable or make it a "John Doe" summons. The IRS may serve a summons in the audit of a known taxpayer with the dual purpose of investigating that taxpayer's liabilities and unnamed parties' liabilities without having to comply with the requirements for a "John Doe" summons. *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 324 (1985). Moreover, by its own terms, § 7609(f) applies only to summonses that do "not

identify the person with respect to whose liability the summons is issued." In this case, the summons makes clear whose tax liability is at issue – that of CSW (and Colorado Colitas) and Mr. Wemhoff. Accordingly, the summons cannot be a "John Doe" summons to which the provisions of § 7609(f) apply. *See Rifle Remedies*, 2017 WL 6021421, at *3 (section 7609(f) "only applies when the summons does not identify the person with respect to whose liability the summons is issued").

Enforcing the MED summons thus will not violate Petitioners' Fourth Amendment or related rights.

### 4.   The summons issued to MED does not require MED to violate law or to create documents.

Petitioners additionally argue that the summons issued to MED should not be enforced because MED cannot produce the information sought without violating the law and without improperly creating documents. As an initial matter, this argument does not relate to the summons' validity. Rather, it pertains to whether MED is able or willing to produce the information the summons requests. Accordingly, only MED, not Petitioners, has standing to raise these issues.

In any event, like their other arguments, Petitioners' argument here lacks merit. First, in this and similar cases, MED has made no objection to producing the information requested in the summons. Apparently, therefore, MED does not view complying with the summons as violating any law or as being forced to create information.

Moreover, to the extent state law would prohibit MED from producing information in response to an IRS summons, that law would conflict with 26 U.S.C. § 7602, which grants the IRS summons authority. Under the Supremacy Clause, therefore, § 7602 would preempt the state law. Several cases illustrate this principle. In *United States v. Martin*, 542 F. Supp. 22 (D.

Kan. 1982), for instance, the United States sought to enforce an IRS summons issued to the

Kansas Director of Property Valuation.  The Director had refused to comply with the summons

because Kansas law prohibited him from disclosing the information sought.  The court found that

the Kansas law conflicted with the IRS summons power in § 7602, and therefore, under the

Supremacy Clause, was preempted by § 7602.  *Id.* at 23.  In reaching this conclusion, the court

noted that "[s]tate laws impeding the enforcement of IRS summons have not been excepted from

operation of the Supremacy Clause."  *Id.  See also Holling v. United States*, No. 95-x-72263,

1996 WL 200731, at *7 (E.D. Mich. Feb. 6, 1996) ("To the extent [state] law conflicts with the

summons power of 26 U.S.C. § 7602, it is preempted."); *United States v. Honolulu*, No. 84-0039,

1984 WL 21837, at *3 (D. Haw. Apr. 12, 1984) ("Even if state law prohibited the disclosure

[pursuant to an IRS summons] of the records in question, state law must yield to Federal law

under the Supremacy Clause.").

Petitioners' assertion that complying with the summons would force MED to violate law

is therefore unfounded.  The same holds true regarding their related assertion, which this Court

already has rejected, that complying with the summons would force MED to create documents.

The summons to MED seeks information from MED's METRC database that Petitioners

provided to MED.  To produce this information, MED simply needs to print that existing

information.  Doing so would be similar to an insurance company or bank printing specific

customer records maintained on its database.  The information exists in electronic form and must

simply be reduced to tangible form.

Section 7602(a) explicitly permits the IRS to seek such information.  The statute

authorizes the IRS "[t]o examine any books, papers, records, or *other data* which may be

relevant or material to [its] inquiry."  26 U.S.C. § 7602(a)(1) (emphasis added); *see also United*

*States v. Euge*, 444 U.S. 707, 717 n.11 (1980) ("[Section 7602] obviously contemplates the transformation of some evidence not formerly tangible, since it obligates the summoned individual to provide testimony.").

Petitioners rely extensively on this Court's decision in *Rifle Remedies* to support their argument on this point. That decision, however, plainly rejects Petitioners' argument. Specifically, this Court stated in *Rifle Remedies* that if MED possesses the requested information in a form, such as a report, that it could produce from its database, then MED should comply with the summons. But even if MED does not possess the requested information in such a form, it still should comply by producing "the entirety of the database of information," which the IRS would then have to sort through to obtain the information it seeks. *Rifle Remedies*, 2017 WL 6021421, at *2 & n.2.

As this Court recognized in *Rifle Remedies*, Petitioners' argument on this point thus fails to demonstrate that the summons to MED has an illegitimate purpose. No reason exists that MED could not, or would not, comply with the IRS summons.

### 5. The IRS followed the required administrative steps.

Petitioners also contend that the IRS did not follow the required administrative steps in issuing the summonses because, according to Petitioners, the "record" lacks anything showing that the IRS "served" CSW or Mr. Wemhoff with a "Notice of Audit for 2016" or showing that the IRS initiated any audit for Herbal Remedies. Am. Pet. at 15. This contention is disingenuous, at best.

First, Petitioners have not specified what statutory or other notice requirement the IRS purportedly has not met in this case. Second, in any event, as RA Hewell's declaration makes clear, both CSW and Mr. Wemhoff received notice of, and participated in, audits of their returns

for all the years at issue, including 2016, before the IRS issued the summonses in question.  *See* Hewell Dec. ¶¶ 8-14.  Moreover, as discussed above, by providing Colorado Colitas's information in response to requests pertaining to CSW, and based on Mr. Wemhoff's return information, CSW and Mr. Wemhoff have indicated that CSW and Colorado Colitas are essentially the same entity and that both conduct business as "Herbal Remedies."  To the extent Herbal Remedies and CSW are separate entities, information pertaining to Herbal Remedies is relevant to the CSW audit.

> **6.      IRS issue lead sheets do not articulate the United States' or the IRS's positions, and, in any event, Petitioners' reading of the statement highlighted in the lead sheet is inaccurate.**

Finally, Petitioners claim that an IRS issue lead sheet they recently obtained indicates the IRS has changed its position with respect to the relevance of the information sought through the summons issued to MED.  The lead sheet to which Petitioners ascribe such significance, however, neither articulates the United States' or the IRS's position nor, in any event, states anything that contradicts the United States' position in this case and similar cases.

As explained above, the summons to MED seeks information from MED's METRC system.  The declaration of RA Hewell, who issued the summons, explains the relevance of this information to Petitioners' audits: "Information from the METRC system is particularly valuable during an audit.  In Colorado, marijuana growers and dispensaries must account for all marijuana plants and products through the METRC system.  The METRC system's information thus can establish whether a marijuana business properly reported its gross receipts and allowed deductions for cost of goods sold."  Hewell Dec. ¶ 17.  This information, in turn, helps to verify the business's records and otherwise substantiate information provided on its federal tax returns. *See id.* ¶ 18.

Petitioners claim that the IRS issue lead sheet they have obtained indicates that the United States "has already conceded that METRC information is not relevant to a determination of income and expenses." Am. Pet. at 17. Assuming this lead sheet is genuine, it appears to pertain to an audit of an unknown S corporation, performed by an unknown IRS official, for the 2014 and 2015 years, and is dated September 7, 2017, and February 21, 2018. Petitioners or their counsel have redacted all information from this lead sheet, leaving it blank, with the exception of the dates, tax form at issue, tax years at issue, and the following statement: "METRC data does not track purchases other than tracking the amount of marijuana product transferred in, this report only tracks the amount, not the costs; therefore, there are no verification in METRC's [sic] to support any COGS." Am. Pet. Ex. 12.

Contrary to Petitioners' assertion, this statement does not represent the United States' or the IRS's position on any issue in this case or any other. First, neither the United States nor the IRS articulates official positions through IRS issue lead sheets. IRS Revenue Agents use issue lead sheets in audits to document, with respect to the issue examined, adjustments, audit steps, relevant facts and law, their conclusions, and the taxpayer's position. *See* Internal Revenue Manual § 4.10.9.6.2 (Aug. 11, 2014). Statements that Revenue Agents make in IRS lead sheets, and otherwise, do not bind the IRS. *See Sidell v. Commissioner of Internal Revenue*, 225 F.3d 103, 111 (1st Cir. 2000) ("[S]tatements by individual IRS employees cannot bind the [IRS]."). Rather, the IRS articulates its positions through formal statements of policy, such as regulations or revenue rulings. *See Connecticut Gen. Life Ins. Co. v. Commissioner of Internal Revenue*, 117 F.3d 136, 145 (3d Cir. 1999).

With respect to matters at issue in this litigation, the United States has articulated its positions through its submissions to the Court, which include the declaration of the IRS Revenue

Agent handling the relevant audits.  The IRS lead sheet on which Petitioners rely here does not relate to those audits or any other audit RA Hewell has conducted.

Second, it is not clear if the statement Petitioners have left in the lead sheet reflects a Revenue Agent's opinion or the taxpayer's position that the Revenue Agent has documented. Petitioners obviously have taken this statement out of context, concealing whatever other language appears on this lead sheet that may clarify this somewhat opaque statement.  Counsel for Petitioners, in fact, have refused to provide the United States an unredacted version of the document or even a version redacted only for information identifying the taxpayer.  Counsel have not stated a legitimate basis for this refusal.

In any event, even if this statement represented the United States' or the IRS's position, which it does not, the statement does not indicate that METRC information is not relevant to a determination of income and expenses.  It simply states that the METRC information does not directly reflect cost of goods sold.  Even if that is the case, the information the METRC system possesses, such as inventory figures, can help in verifying gross receipts, claimed expenses, and thus determinations on costs of goods sold.  Given the provisions of § 280E, marijuana businesses may offset gross receipts only with the cost of goods sold.  *See*, *e.g.*, *Olive v. Commissioner*, 139 T.C. 19, 32-36 (2012) (addressing disputes concerning a marijuana business's cost of goods), *aff'd*, 792 F.3d 1146 (9th Cir. 2015); I.R.S. Chief Couns. Advice 201504011 (Jan. 23, 2015).  Inventory figures factor into these computations by illustrating how much product the business sold and when.  In a business where exact sales may be difficult to track due to its cash-based nature, inventory data can be critical in establishing accurate income and costs.

The lead sheet thus neither represents the United States' position nor reflects a change in

position, in any event.  None of Petitioners' arguments in the Amended Petition, therefore, refutes the United States' *prima facie* showing of the summonses' validity based on each of the four *Powell* factors.

**C.      The Court Should thus Dismiss the Amended Petition and Enforce the Summonses Without an Evidentiary Hearing.**

Because Petitioners have failed to state any allegation sufficient to overcome the United States' *prima facie* showing, the Court should dismiss the Petition and enforce the summonses based on the papers before it, without an evidentiary hearing.  *See Balanced Fin. Mgmt.*, 769 F.2d at 1444 (if the petitioner cannot refute the United States' *prima facie Powell* showing through specific factual allegations, "the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing").

In the Amended Petition's claim for relief, Petitioners seek an order scheduling an evidentiary hearing "to determine if the IRS has satisfied the *Powell* standard for enforcement of the Summonses."  Am. Pet. at 34.  Given Petitioenrs' failure to state specific allegations sufficient to sustain their burden, however, no evidentiary hearing is necessary.  As the Supreme Court has made clear, a taxpayer may examine an IRS agent in an evidentiary hearing only where he can "point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge."  *United States v. Clarke*, 134 S. Ct. 2361, 2367 (2014).  In fact, after the Supreme Court in *Clarke* overruled the Eleventh Circuit's decision that the taxpayers in that case were entitled to an evidentiary hearing, the case ultimately was remanded to the District Court, which enforced the contested summonses without a hearing.  *See United States v. Clarke*, 2015 WL 1324372, at *3 (S.D. Fla. Feb. 18, 2015), *aff'd* 816 F.3d 1310 (11th Cir. 2016), *cert. denied sub nom. Dynamo Holdings Ltd P'ship*, 137 S. Ct. 625 (2017).

Likewise, the Court should enforce the summonses in this case without a hearing.  Under *Clarke*, Petitioners' allegations cannot justify an evidentiary hearing because they do not plausibly raise an inference of bad faith.  They have not stated allegations sufficient to overcome the United States' *prima facie* showing of the summonses' validity.  In these circumstances, apart from the authority in *Clarke*, the Tenth Circuit has made clear that the Court should rule without an evidentiary hearing.  *See Balanced Fin. Mgmt.*, 769 F.2d at 1444.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court dismiss the Amended Petition and enter an Order enforcing the summonses at issue.


Dated:  April 24, 2018                                    Respectfully submitted,

                                                         RICHARD E. ZUCKERMAN
                                                         Principal Deputy Assistant Attorney General

                                                         */s/ Charles J. Butler*
                                                         CHARLES J. BUTLER
                                                         Trial Attorney, Tax Division
                                                         U.S. Department of Justice
                                                         P.O. Box 683
                                                         Washington, D.C. 20044
                                                         202-514-6062
                                                         Charles.J.Butler@usdoj.gov

                                                         *Of Counsel:*
                                                         ROBERT C. TROYER
                                                         United States Attorney

                                                         *Attorneys for United States of America*

CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2018, I filed the foregoing with the Clerk of the Court

using the CM/ECF system, which will provide electronic notice to the following:


James David Thorburn (jthorburn@thorburnwalker.com)
Richard Allan Walker (rwalker@thorburnwalker.com)
Thorburn Walker LLC
5460 South Quebec Street, Suite 330
Greenwood Village, Colorado 80111

*Counsel for Petitioners*


/s/ Charles J. Butler
CHARLES J. BUTLER
Trial Attorney, Tax Division
U.S. Department of Justice