IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:18-mc-00030-PAB

CSW CONSULTING, Inc., a Colorado corporation;
COLORADO COLITAS, LLC, d/b/a HERBAL
REMEDIES, a Colorado limited liability company;
and CARL S. WEMHOFF,

      Petitioners,

      v.

UNITED STATES OF AMERICA,

      Respondent.

---

### UNITED STATES' REPLY IN SUPPORT OF
### MOTION TO DISMISS AMENDED PETITION
### AND ENFORCE SUMMONSES

The United States replies to Petitioners' response to the United States' motion. In their response, Petitioners ignore most of the points the United States made to refute the Amended Petition's arguments. Instead, Petitioners focus on a handful of those points, distorting the United States' position, the relevant facts, and the relevant law in making contentions that are contrary to established law or otherwise lack legal support. Specifically, Petitioners contend the following:

> (1) before the Court can enforce the summonses in question in this action, the United States must explain why the IRS has initiated the audits at issue not only in this action but also in the numerous similar actions Petitioners' counsel have brought;
>
> (2) Petitioners would face a "hazard of self-incrimination" if third parties must comply with the summonses;
>
> (3) Petitioners have a legitimate expectation of privacy in information they voluntarily provided to third parties; and

1

>    (4) the summons to Colorado's Marijuana Enforcement Division ("MED") is overly broad because it seeks "non-taxable-transaction information" as well as "the entire MED database."

In addition, Petitioners claim that the proper standard on the United States' motion is that for summary judgment.

Each of these arguments is farcical. First, as this Court has made clear, the proper standard on this motion is that articulated in *United States v. Powell*, 379 U.S. 48 (1964). *See Rifle Remedies, LLC v. United States*, No. 1:17-mc-00062-RM, 2017 WL 6021421, at *1 & n.1 (D. Colo. Oct. 26, 2017) (the proper standard on a motion to dismiss petition and enforce summons is that under "*Powell* and the Tenth Circuit's application of that decision"). Contrary to Petitioners' assertions, "traditional summary judgment standards" do not apply in summons cases. *Villareal v. United States*, 524 Fed Appx. 419, 423 (10th Cir. 2013). Rather, the taxpayer must "make a substantial preliminary showing before even limited discovery need be ordered." *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1445 (10th Cir. 1985).

As stated in its opening brief, the United States, through Revenue Agent David Hewell's declaration, has made a *prima facie* showing of the summonses' validity based on the four *Powell* factors. Petitioners' arguments in their Amended Petition have failed to meet their burden of overcoming this *prima facie* showing. Petitioners' arguments in their response likewise fail to meet their burden for the following reasons, discussed below: (1) Petitioners' baseless speculation does not constitute the specific factual support necessary to justify an evidentiary hearing, much less preclude enforcement of the summonses; (2) Petitioners have stated nothing to indicate that 26 U.S.C. § 280E or any summons at issue implicates a Fifth Amendment interest; (3) Petitioners' claim that they have an expectation of privacy in information they voluntarily provided to a third party runs contrary to law and is otherwise

2

senseless; and (4) the information the summons to MED seeks is relevant to Petitioners' income and expenses and would not require MED to make an unreasonable production.

## DISCUSSION

1. **Petitioners' baseless speculation does not constitute the specific factual support necessary to justify an evidentiary hearing, much less preclude enforcement of the summonses.**

Petitioners' response, like their other submissions to the Court, attempts to turn baseless speculation regarding the "true" purpose of the IRS summonses into grounds for quashing them. Petitioners now go so far as to contend that, before the Court can enforce the summonses in this action, the United States must explain why the IRS has initiated the audits at issue not only in this action but in the numerous similar actions Petitioners' counsel have brought. First, Petitioners cite no authority that requires the United States to explain what triggered IRS audits not at issue in this case. Second, in this and every similar action, the United States has made clear, based on the sworn declaration of the Revenue Agent who issued the relevant summonses, that the summonses' purpose is to obtain information concerning each petitioner's income and expenses to determine that petitioner's correct tax liability. Petitioners' baseless speculation cannot overcome this sworn testimony, justify an evidentiary hearing, or even preclude enforcement of the summonses.

The Supreme Court has made clear that a taxpayer may examine an IRS agent in an evidentiary hearing only where he can "point to specific facts or circumstances plausibly raising an inference of bad faith. *Naked allegations of improper purpose are not enough*: The taxpayer must offer some credible evidence supporting his charge." *United States v. Clarke*, 134 S. Ct. 2361, 2367 (2014) (emphasis added). Likewise, the Tenth Circuit has stated that if a party resisting enforcement of an IRS summons cannot refute the United States' *prima facie Powell*

3

showing through specific factual allegations, "the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing" because holding such a hearing "would be a waste of judicial time and resources." *Balanced Fin. Mgmt.*, 769 F.2d at 1444.

Petitioners offer no factual support for their claims that the summonses' purpose is anything other than what the United States has stated or that the IRS otherwise did not act in good faith in issuing the summonses. The circumstances Petitioners paint as suspicious on the IRS's part – not making "a single alleged referral of the federal drug crimes," issuing numerous summonses for inventory information provided to Colorado's licensing authority, and initiating several audits – are consistent with efforts to apply a unique tax law to a relatively new and largely cash-based industry. These circumstances do not support Petitioners' fanciful speculation that the Drug Enforcement Agency has coopted the IRS to do its work. Such a theory runs counter to common sense when it would be simple for criminal investigators to observe and document Petitioners' conspicuous business activities without resorting to the work of an IRS audit.

Under Supreme Court and Tenth Circuit authority, therefore, the Court should reject Petitioners' claims. In a similar case, in fact, this Court already rejected these same claims regarding the purported "true" purpose of IRS summonses. In doing so, the Court made clear that without factual support for such claims, the petition to quash should be dismissed and the summonses enforced. *See Green Solution Retail, Inc. v. United States*, No. 16-mc-00137-PAB, 2018 WL 1305449, at *3-4 (D. Colo. Feb. 12, 2018) ("Because plaintiffs have not presented factual support for their claims that the IRS is not acting in good faith, the Court finds that plaintiffs have not met their burden and will enforce the summonses."); *see also Alpenglow Botanicals, LLC v. United States*, No. 16-cv-00258-RM-CBS, 2016 WL 7856477, at *4 (D.

Colo. Dec. 1, 2016) (rejecting the petitioners' "attempt to manufacture a criminal prosecution against themselves, [by] asserting that enforcement of § 280E amounts to such a prosecution").

The Court likewise should reject Petitioners' baseless claims in this action.

**2.      Petitioners have stated nothing to indicate that § 280E or any summons at issue implicates a Fifth Amendment interest.**

Petitioners' claims regarding Fifth Amendment protections fail as well.  In their response, Petitioners' provide no authority to contradict that neither § 280E nor any summons at issue implicates a Fifth Amendment interest, even for the individual petitioner in this case.  Instead, Petitioners distort the United States' position and mischaracterize the scant law on which they rely to support their contention that any application of § 280E violates their Fifth Amendment rights.

First, Petitioners patently misrepresent the United States' position.  Petitioners state that "[w]hile the Government makes no argument regarding the constitutionality of Section 280E, it attempts to provide a glancing blow by stating that no hazard of self-incrimination exists because some of the petitioners are entities."  Petitioners then point out that Petitioner Carl Wemhoff is an individual.  Dkt. 13, at 6.  Yet the United States' opening brief clearly acknowledged that "[a]ny possible Fifth Amendment issue . . . pertains only to Petitioner Carl Wemhoff."  Dkt. 10, at 11.  It then went on to explain that neither the provisions of § 280E nor the summonses in question implicate a Fifth Amendment interest *with respect to any taxpayer* for the following reasons:

- Section 280E does not force the taxpayer to disclose any information, incriminating or otherwise.  Rather, it denies tax deductions, which, the Tenth Circuit has made clear, "are not a matter of right."  *Green Solution Retail, Inc. v. United States*, 855 F.3d 1111, 1121 (10th Cir. 2017).

- A summons issued to a third party in connection with a § 280E audit cannot violate the taxpayer's Fifth Amendment rights because the third party possesses the information

5

sought and, therefore, the taxpayer is not forced to divulge anything. *See generally In re First Nat'l Bank, Englewood, Colo.*, 701 F.2d 115, 117 (10th Cir. 1983).

- Contrary to Petitioners' assertion, 26 U.S.C. § 6103(i)(3)(A)(i) does not permit the IRS to disclose Petitioners' return information to other federal agencies. Rather, it authorizes the IRS to disclose, under limited circumstances, only information obtained from third parties. Such information, again, would not implicate the Fifth Amendment.

Petitioners have not addressed any of these points. Rather, in addition to misrepresenting the United States' position and pretending the United States' did not address their Fifth Amendment argument, Petitioners continue to rely on inapposite cases to support that argument. Petitioners, for instance, now cite *United States v. One Coin-Operated Gaming Device*, 648 F.2d 1297 (10th Cir. 1982), to support their contention that § 280E violates their Fifth Amendment rights. In that case, the Tenth Circuit addressed a challenge to the IRS's seizure of slot machines for which the owner had refused to pay the federal gaming machine tax. The court held that the IRS's seizure was not proper because paying the tax would have incriminated the owner. As with Petitioners' reliance on *Leary v. United States*, 395 U.S. 6 (1969), and similar cases, however, in relying on *One Coin-Operated Gaming Device*, Petitioners ignore key facts that distinguish the statute at issue there from § 280E. The statute in that case required slot machine owners to pay a special tax with respect to activity that was illegal at the time in virtually every jurisdiction in the country. *See* 648 F.2d at 1300. In contrast, § 280E does not impose any tax, or other reporting, requirement. It simply disallows certain deductions. Taxpayers are not required to take deductions, which, again, are available as a matter of legislative grace. Moreover, the court in *One Coin-Operated Gaming Device* noted that Congress had repealed the statute at issue there, abandoning that approach to regulating gambling activity. *See id.*

Petitioners also cite *One Coin-Operated Gaming Device* to suggest that the information § 280E would force them to provide would constitute a significant "link in a chain" of evidence to

6

establish their guilt of violating federal criminal drug laws. Apart from the fact that § 280E would not force Petitioners to divulge any information, this argument is silly considering that the website for Petitioners' marijuana dispensary and the dispensary itself make abundantly clear that Petitioners sell marijuana.

Nevertheless, Petitioners likewise cite *Florida Dep't of Revenue v. Herre*, 634 So. 2d 618 (Fla. 1994), to suggest that simply signing a tax return for an entity forms a "link in the chain" of incriminating evidence and thus implicates the Fifth Amendment. Federal case law makes clear, however, that signing a tax return does not implicate the Fifth Amendment.[1] *See, e.g.*, *Betz v. United States*, 753 F.2d 834, 835 (10th Cir. 1983) (stating that "[i]t is well settled that the Fifth Amendment general objection to filing a proper tax return is not a valid claim of the constitutional privilege," which must be asserted as to specific items of information); *United States v. MacLeod*, 436 F.2d 947, 951 (8th Cir.) ("The statutory requirement to file an income tax return does not violate a taxpayer's right against self-incrimination."), *cert. denied*, 402 U.S. 907 (1971). In fact, because courts consistently have rejected the argument that signing and submitting a return implicates the Fifth Amendment, courts of appeals have imposed sanctions for raising it. *See, e.g.*, *Brashier v. Commissioner of Internal Revenue*, 12 Fed. Appx. 698 (10th Cir. 2001); *Gottman v. Commissioner of Internal Revenue*, 230 F.3d 1363 (8th Cir. 2000); *Conklin v. United States*, 36 F.3d 1105 (10th Cir. 1994).[2]

---

[1] To the extent *Herre* states otherwise, federal law preempts it.

[2] In addition, Petitioners have waived any Fifth Amendment argument with respect to information stated on their tax returns (or information provided to third parties) by voluntarily providing that information and not claiming any Fifth Amendment protection, in the first instance, with respect to specific items on the return. The Fifth Amendment protects against only *compelled* self-incriminating testimony. It does not protect those who submit tax returns that voluntarily claim optional deductions.

7

The authority on which Petitioners rely thus fails to support their argument or otherwise counter that neither the provisions of § 280E nor the IRS summonses at issue implicate a Fifth Amendment interest for any taxpayer.

**3.   Petitioners' claim that they have an expectation of privacy in information they voluntarily provided to a third party runs contrary to law and is otherwise senseless.**

Likewise, the authority Petitioners cite to support their argument that they have an expectation of privacy in the information they provided to MED is inapposite and fails to support that argument. To the contrary, under established law, Petitioners have no expectation of privacy in information they provide to a third party, even if that party guarantees its confidentiality.

In their response, Petitioners attempt to take this argument out of the context of the Fourth Amendment, which is how they presented it in the Amended Petition, and transform it into a Fifth Amendment argument. They contend that the purpose of the Colorado statute providing that MED shall "[m]aintain the confidentiality of reports or other information obtained from a medical or retail [marijuana] licensee," C.R.S. § 12-43.3-202(1)(d), is to protect the licensee's Fifth Amendment rights, given the "forced disclosure of drug law crimes." Dkt. 13, at 6. According to Petitioners, therefore, the state statute bestows on the licensee an expectation of privacy, presumably for Fourth Amendment purposes, in the information it provides to MED.

This argument is baseless and makes no sense. First, the Colorado statute on its face simply indicates that MED must maintain the confidentiality of the business information supplied to it. Petitioners have pointed to nothing demonstrating that the statute has some further purpose. Second, the marijuana activity in which Petitioners engage is generally legal under Colorado law. So there appears to be no state criminal violation at issue. Third, regardless of the state statute's purpose, Petitioners have cited no authority indicating that such a statute can

8

establish a reasonable expectation of privacy for Fourth Amendment purposes.[3]  To the contrary, as the United States explained in its opening brief, established law makes clear that where a person provides information to a third party, the person has no reasonable expectation of privacy in that information, even if the third party commits to protecting its confidentiality.  *See United States v. Miller*, 425 U.S. 435, 443 (1976); *Pleasant v. Lovell*, 974 F.2d 1222, 1230 (10th Cir. 1992).  Moreover, courts have applied this established law specifically to IRS summonses.  *See, e.g.*, *Reimer v. United States*, 43 F. Supp. 2d 232, 237 (N.D.N.Y. 1999), and *Four Corners Exch. v. United States*, No. 85-F-1820, 1985 WL 5972, at *2 (D. Colo. Nov. 18, 1985).

In this same vein, Petitioners also assert that the same Colorado statute is an "immunity statute."  According to Petitioners, as an "immunity statute," the state statute provides complete protection from self-incrimination with respect to the information provided to MED, which means, they claim, that the federal government also must provide the same protection with respect to the same information.

Like most of their arguments, this argument is based on a gross mischaracterization of case law and is otherwise meritless.  Petitioners cite *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70 (1965), as support for their assertion that the Colorado statute is an "immunity statute" designed to protect their privilege against self-incrimination.  *Albertson*, however, did not even suggest that a statute such as Colorado's could form the basis for Fifth Amendment protection.  In *Albertson*, the Supreme Court held that the federal Subversive Activities Control Board's requirement that members of the Communist Party register with the federal government violated their privilege against self-incrimination.  *Id.* at 77-78.  In doing so, the Court disagreed

---

[3] The only "authority" Petitioners cite to support this proposition is a law student note from 1996 published in the Saint John's Journal of Legal Commentary.  That note, however, does not assert that a state confidentiality statute can establish a reasonable expectation of privacy or otherwise cite authority that supports this proposition.

with the Board's contention that a provision of the Subversive Activities Control Act obviated the Fifth Amendment issue by providing immunity from prosecution.  The Court stated that the provision did not provide "complete protection from all the perils against which the constitutional prohibition was designed to guard by affording 'absolute immunity against future prosecution for the offence to which the question relates.'"  *Id.* at 80 (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 585-86 (1892)).  The purported "immunity provision," therefore, did not cure the Fifth Amendment issue.  *Id.*

Petitioners assert that this quote from *Albertson* means that the Colorado statute is an "immunity statute" that provides them immunity from prosecution from criminal drug laws.  Not only is this reading of the *Albertson* quote entirely disconnected from the issue the quote actually addresses, it makes no sense given, again, that the activity at issue here is legal under Colorado law.  Yet Petitioners stretch their theory even further, asserting that because the state law provides this purported protection, the United States also "must afford the same protection" to Petitioners.  Dkt. 13, at 7.

To support this claim, Petitioners cite *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52 (1964).  In *Murphy*, the Supreme Court held that the privilege against self-incrimination protects a state witness against incrimination under both federal and state law and a federal witness against incrimination under both state and federal law.  *Id.* at 79.  The Court explained that "[o]nce a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence."  *Id*. n.18.

Contrary to Petitioners' assertion, the *Murphy* holding obviously does not apply here

because, as explained above, the Colorado law does not provide immunity from prosecution for violating state law given that the activity at issue does not violate state law. Accordingly, there exists no state law grant of immunity for any disclosure Petitioners made to the state that would apply to the same disclosure that Petitioners might make to the federal government. Moreover, as explained above, Petitioners are not being forced to disclose anything in this case. Rather, the summonses to MED and to the banks seek information that Petitioners voluntarily provided to these third parties.[4]

Petitioners thus state nothing to support their arguments that either § 280E or the summonses at issue violate any of their constitutional rights.

**4.   The information the summons to MED seeks is relevant to Petitioners' income and expenses and does not require MED to make an unreasonable production.**

Finally, Petitioners contend that the IRS summons to MED is overly broad because it seeks, with respect to all licensees associated with Petitioners, the following: (1) annual gross sales reports, transfer reports, annual harvest reports, and monthly plants inventory reports, which, according to Petitioners, constitute "non-taxable-transaction information"; and (2) what Petitioners characterize as the "entire MED database." Petitioners are incorrect. The summons states the specific information sought, which directly relates to Petitioners' income and expenses, and would not require MED to make an unreasonable production.

As an initial matter, the United States already explained in its opening brief that Petitioners have not made clear the precise relationship between Petitioners CSW and Colorado

---

[4] Even if Petitioners were correct, which they are not, that Colorado's confidentiality statute serves as an "immunity statute," a state law cannot provide immunity for a federal crime. Such a state law would negate, in this case, the federal Controlled Substances Act, which would therefore preempt the state law. *See Butler v. Douglas County*, No. 07-civ-6241, 2010 WL 3220199, at *4 n.3 (D. Or. Aug. 10, 2010) ("State law simply cannot negate federal law. Plaintiffs do not and cannot contend that [the Oregon Medical Marijuana Act] permits medical use of marijuana under federal law or that it provides immunity from federal prosecution."), *aff'd*, 457 Fed. Appx. 674 (9th Cir. 2011).

Colitas, although they appear to function as the same entity. In seeking information "for all associated licensees related to" Colorado Colitas, CSW, and their owner Carl Wemhoff, therefore, the summons to MED simply seeks to obtain information from the correct party, known or unknown, that submitted the information to MED on behalf of Petitioners' marijuana dispensary.

Moreover, the summons to MED states the specific information sought – annual gross sales reports, transfer reports, annual harvest reports, and monthly plant inventory reports for all licensees related to Petitioners. On its face, therefore, the summons does not seek "the entire MED database" for "thousands of licensees," as Petitioners assert. Petitioners also assert that the information sought constitutes "non-taxable-transaction information," which, according to Petitioners, makes the summons overly broad. To support that assertion, they rely on the following quote from *United States v. Coopers & Lybrand*, 413 F. Supp. 942, 950 (D. Colo. 1975):

> When the IRS seeks actual records of potentially taxable transactions from a taxpayer or from a third party, relevancy is implicit and production is usually required; where the data sought are not records of transactions the courts are prone to press the Service to a higher standard of relevance.

What Petitioners fail to point out is that this Court in *Coopers & Lybrand* went on to state that it considered "the data which customarily are maintained in support of company transactions" the same as "potentially taxable transactions" for which "production is usually required." *Id.*

In this case, the summons to MED seeks data customarily maintained in support of Petitioners' company's transactions. Gross sales reports, transfer reports, harvest reports, and plant inventory reports reflect the transactions Petitioners' marijuana dispensary conducted. With respect specifically to Petitioners' federal taxes, this information can assist in verifying gross receipts, claimed expenses, and thus determinations on costs of goods sold. Given the

12

provisions of § 280E, marijuana businesses may offset gross receipts only with the cost of goods sold.  *See*, *e.g.*, *Olive v. Commissioner*, 139 T.C. 19, 32-36 (2012) (addressing disputes concerning a marijuana business's cost of goods), *aff'd*, 792 F.3d 1146 (9th Cir. 2015); I.R.S. Chief Couns. Advice 201504011 (Jan. 23, 2015).  Inventory figures from the reports sought factor into these computations by illustrating how much product the business sold and when.  In a business where exact sales may be difficult to track due to its cash-based nature, inventory data can be critical in establishing accurate income and costs.  Moreover, the Supreme Court has made clear that the IRS's broad information-gathering authority in 26 U.S.C. § 7602 extends to "items of even potential relevance to an ongoing investigation."  *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984).

Contrary to Petitioners' assertions, therefore, the summons to MED plainly seeks specific information that relates directly to Petitioners' income and expenses.  Petitioners have pointed to no reason that MED should not, or could not, produce this information.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court dismiss the Amended Petition and enter an Order enforcing the summonses at issue.

Dated:  June 5, 2018                                  Respectfully submitted,

                                                      RICHARD E. ZUCKERMAN
                                                      Principal Deputy Assistant Attorney General

                                                      */s/ Charles J. Butler*
                                                      CHARLES J. BUTLER
                                                      Trial Attorney, Tax Division
                                                      U.S. Department of Justice
                                                      P.O. Box 683
                                                      Washington, D.C. 20044
                                                      202-514-6062
                                                      Charles.J.Butler@usdoj.gov

*Of Counsel:*
ROBERT C. TROYER
United States Attorney

*Attorneys for United States of America*

CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2018, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to the following:

James David Thorburn (jthorburn@thorburnwalker.com)
Richard Allan Walker (rwalker@thorburnwalker.com)
Thorburn Walker LLC
5460 South Quebec Street, Suite 330
Greenwood Village, Colorado 80111

*Counsel for Petitioners*

                                        */s/ Charles J. Butler*
                                        CHARLES J. BUTLER
                                        Trial Attorney, Tax Division
                                        U.S. Department of Justice