IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Miscellaneous Case No. 18-mc-00030-PAB

CSW CONSULTING, INC., a Colorado corporation,
COLORADO COLITAS, LLC, d/b/a/ HERBAL REMEDIES, a Colorado limited liability
company, and
CARL S. WEMHOFF,

      Petitioners,

v.

UNITED STATES OF AMERICA, through its agency the INTERNAL REVENUE
SERVICE,

      Respondent.
_____

**ORDER**
_____

      This matter is before the Court on petitioners' Amended Petition to Quash

Summonses [Docket No. 7] and the United States' Motion to Dismiss Amended Petition

and Enforce Summonses [Docket No. 10].[1]

## I.  BACKGROUND

      The Internal Revenue Service ("IRS") is conducting a civil audit of petitioner CSW

Consulting, Inc. ("CSW") and its owner, petitioner Carl Wemhoff, for the 2013 through

2016 tax years.  Docket No. 10-1 at 2, ¶ 4.  Through petitioner Colorado Colitas, LLC,

CSW, and Mr. Wemhoff operate a marijuana dispensary.  *Id.* at 2, ¶ 6.  In connection

with the audit, David Hewell, an IRS revenue agent, requested documents from both

_____

[1] Before petitioners filed their amended petition, the government filed a Motion to
Dismiss Petition and Enforce Summonses [Docket No. 4].  As petitioners filed an
amended petition, the Court will deny that motion as moot.

CSW and Mr. Wemhoff.  *Id.* at 3, ¶ 9–13.  In response to Revenue Agent Hewell's requests, petitioners provided only "incomplete and redacted financial and other records."  *Id.* at 4, ¶ 15.  The IRS maintains that without further information it cannot verify petitioners' accounting records, reconstruct petitioners' income, or otherwise confirm the accuracy of the tax returns at issue.  Docket No. 10 at 4.  CSW also refused to produce information it provided to Colorado's Marijuana Enforcement Division ("MED") through the Marijuana Enforcement Tracking Reporting and Compliance ("METRC") system.  Docket No. 10-1. at 4, ¶ 16.  Colorado law requires marijuana businesses to report business, accounting, and financial information to the MED, and part of this requires marijuana businesses to account for their inventory using METRC. Docket No. 10 at 4.

The IRS states that this information from METRC is useful in an audit because it "can establish whether a marijuana business properly reported its gross receipts and allowed deductions for costs of goods sold."  *Id.*  Revenue Agent Hewell issued a summons to the MED seeking "METRC annual gross sales reports, transfer reports, annual harvest reports, and monthly plants inventory reports."  Docket No. 10-1 at 5, ¶ 19.  Revenue Agent Hewell also issued summonses to U.S. Bank National Association ("U.S. Bank")  and Wells Fargo Bank N.A. ("Wells Fargo").  *Id.* at 5, ¶ 22.  The IRS states that the information held by a business's bank "can assist in verifying the business's books and records and otherwise substantiate information stated on its federal income tax returns."  Docket No. 10 at 4.  Petitioners now seek to quash the summonses on the MED, U.S. Bank, and Wells Fargo, Docket No. 7 at 2, and the government seeks to enforce them.  Docket No. 10.  The MED, U.S. Bank, and Wells

Fargo have not produced information in response to the summonses. *Id.* at 5.

## II. DISCUSSION

In order to enforce a summons, the IRS must show that the "investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed—in particular, that the 'Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect." *United States v. Powell*, 379 U.S. 48, 57-58 (1964).[2] "The requisite showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement." *Id.* (internal quotation marks omitted). The IRS's burden "is a slight one because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985) (citation omitted).

If the IRS makes the prima facie showing required under *Powell*, the burden shifts to the party resisting enforcement, whose "burden is a heavy one."[3] *Id.* at 1444

---

[2] The IRS is barred from issuing or enforcing summonses under the Internal Revenue Code "with respect to any person if a Justice Department referral is in effect with respect to such person." 26 U.S.C. § 7602(d)(1) (I.R.C. § 7602(d)(1)). Petitioners do not dispute Revenue Agent Hewell's statement that there is no Justice Department referral in effect in relation to them. *See* Docket No. 10-1 at 6, ¶ 29.

[3] In *Speidell v. United States*, 978 F.3d 731 (10th Cir. 2020), the Tenth Circuit confronted whether the "slight" and "heavy" burdens of *Balanced Fin. Mgmt., Inc.* comport with the summary judgment standard. 978 F.3d at 738. The court concluded that it need not resolve this issue because the taxpayers failed to raise a genuine dispute of material fact under the traditional summary judgment standards. *Id.* Therefore, the Court analyzes this case under the *Powell* framework, but applies the

(citing *United States v. Garden State National Bank*, 607 F.2d 61, 68 (3d Cir. 1979)). The party resisting enforcement must establish a defense, show a lack of good faith on the part of the IRS, or "prove that enforcement would constitute an abuse of the court's process." *Id.* (internal quotation marks omitted).

Because review of the IRS's motion to dismiss requires the Court to consider a declaration outside of the pleadings, the Court must treat the motion as a motion for summary judgment under Fed. R. Civ. P. 56. *Standing Akimbo, LLC v. United States*, 955 F.3d 1146, 1155 (10th Cir. 2020) ("Because we are considering Agent Pringle's declaration, the IRS's motion to dismiss must be treated as one for summary judgment under Rule 56." (internal quotations omitted)). Under this standard, the Court will "view the record in the light most favorable to [the petitioners] and ask whether the IRS has shown that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Id.* at 1156 (citations omitted). Substantive law determines whether facts are material in a case, so the criteria of *Powell* are "of central importance" in determining whether there are genuine disputes of material fact. *Id.* (citing *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1181 (10th Cir. 2019)). The "traditional summary-judgment standard of review precludes the [petitioners] from resting on conclusory statements because such statements do not suffice to create a genuine issue of material fact." *Id.* (internal quotations omitted).

### A.  Legitimate Purpose

The IRS provides a declaration from Revenue Agent Hewell stating that he

---

traditional summary judgment standards.

served the summonses in relation to an "examination of the federal tax liabilities" of petitioners and that petitioners operate at least one marijuana dispensary.  Docket No. 10-1 at 2, ¶¶ 4, 6.  The IRS argues that its investigation of whether petitioners' income derives from sale of marijuana is a legitimate purpose in light of the bar on deductions and credits for businesses trafficking in controlled substances under Internal Revenue Code § 280E.  Docket No. 10 at 9–10.

Petitioners argue that the summonses do not have a legitimate purpose because Congress did not empower the IRS to investigate violations of federal criminal drug laws.  Docket No. 7 at 15.  Petitioners state that

> the purpose of theses summonses is not to determine income or expenses, but to determine whether Petitioners have violated the CSA in order to apply Section 208E.  However, Section 208E contains no language authorizing the IRS to investigate or administratively determine that a taxpayer is unlawfully trafficking in a controlled substance.

*Id.*  Petitioners further argue that the government has read the case law incorrectly to give the IRS authority to administratively investigate and determine violations of federal criminal drug laws.  *Id.* at 16.

Petitioners, however, have not shown that a criminal investigation is pending or that the summonses are connected to a criminal investigation.  *See Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1121 (10th Cir. 2017) ("But § 280E has no requirement that the Department of Justice conduct a criminal investigation or obtain a conviction before § 280E applies." (citing *Alpenglow Botanicals, LLC v. United States*, No. 16-cv-00258-RM-CBS, 2016 WL 7856477, at *4 (D. Colo. Dec. 1, 2016))).  Moreover, the Tenth Circuit has rejected the argument that the IRS lacks authority to determine whether petitioners are trafficking in a controlled substance.  *See Alpenglow*

5

*Botanicals, LLC v. United States*, 894 F.3d 1187, 1197 (10th Cir. 2018) ("[I]t is within the IRS's statutory authority to determine, as a matter of civil tax law, whether taxpayers have trafficked in controlled substances."); *Standing Akimbo*, 955 F.3d at 1157 ("[E]ven if the IRS had in fact issued the summons to investigate federal drug crimes . . . the IRS could still do so as part of determining § 280E's applicability.").  While the IRS may lack authority to criminally prosecute petitioners for trafficking in controlled substances, the IRS has authority to make determinations about whether deductions are allowable under the Internal Revenue Code, including § 280E.  Revenue Agent Hewell's affidavit establishes that the summonses are related to an investigation of petitioners' tax liabilities, something within the IRS's authority.  Docket No. 10-1 at 2, ¶ 4.

Regardless of whether there is an active criminal investigation, petitioners contend that the IRS is required to grant them absolute immunity from criminal prosecution before issuing the summonses.  Docket No. 7 at 19–20.  Petitioners argue that the statutory scheme of § 280E creates "constitutional difficulty" because compelling a taxpayer to turn over the requested information implicates a taxpayer's Fifth Amendment privilege against self-incrimination.  *Id.* at 21.  In response, the government contends that: (1) § 280E, as it governs voluntary deductions, does not compel taxpayers to disclose any information; (2) taxpayers do not have Fifth Amendment rights in records voluntarily provided to a third party; and (3) petitioners do not identify a "genuine hazard" of self-incrimination.  Docket No. 10 at 11–14.

"The Fifth Amendment protects against compelled self-incrimination, not the disclosure of private information."  *Fisher v. United States*, 425 U.S. 391, 401 (1976) (quoting *United States v. Nobles*, 422 U.S. 225, 233 n.7 (1975)) (internal quotation

marks omitted).  Relying on this understanding of the Fifth Amendment, the Tenth

Circuit in *In re First Nat'l Bank, Englewood, Colo.*, 701 F.2d 115 (10th Cir. 1983),

concluded that an individual could not assert a Fifth Amendment privilege to quash a

subpoena directed at a third party.  The Tenth Circuit found that "[t]here can be no

violation of one's Fifth Amendment right not to testify against oneself where the records

are in the hands of a third party; hence, one cannot complain on this ground about a

subpoena directed to third parties to produce records."  *Id.* at 117.  Plaintiffs seek to

quash summonses, which, like subpoenas, direct that information be produced by a

witness.  *Compare* Summons, Black's Law Dictionary (11th ed. 2019) ("[a] notice

requiring a person to appear in court as a juror or witness") *with* Subpoena, Black's Law

Dictionary (11th ed. 2019) ("[a] writ or order commanding a person to appear before a

court or other tribunal").

     More recently, in *Standing Akimbo,* the Tenth Circuit rejected a marijuana

dispensary's attempt to claim a Fifth Amendment privilege by arguing that state laws

prohibiting the disclosure of METRC data protected the dispensary against forced

disclosure of federal drug crimes.  955 F.3d at 1167.  The court rejected this argument,

noting that "because the Enforcement Division – a third party – holds the information, []

the Taxpayers have no Fifth Amendment interests in it."  *Id.* at 1168.  The Tenth Circuit

reaffirmed this principle in *Speidell v. United States*, 978 F.3d at 744-45, citing *Standing

Akimbo* for the proposition that, because a third party holds the information sought, any

Fifth Amendment interest of the taxpayer was removed.

     The summonses request information held by U.S. Bank, Wells Fargo, and the

MED.  *See* Docket No. 10-1 at 4, ¶ 18.  Therefore, petitioners do not have a Fifth

Amendment privilege because the information is in the hands of a third party.  *See*

*Speidell*, 978 F.3d at 744-45.  Accordingly, the Court concludes that there is no

requirement that the IRS provide a grant of absolute immunity before issuing a

summons to third parties because taxpayers do not have a Fifth Amendment privilege

with respect to that information.[4]  The Court therefore finds that there is no genuine

dispute of material fact as to whether the investigation of petitioners is being conducted

for a legitimate purpose.

### B.   Relevant to a Legitimate Purpose

The IRS argues that the information it seeks is relevant to its investigation

because it will "shed light on [petitioners'] correct income by substantiating, or

contradicting, sales and inventory figures."  Docket No. 10 at 8.  Revenue Agent

Hewell's declaration indicates that the information the MED summons seeks "can

establish whether a marijuana business properly reported its gross receipts and allowed

deductions for cost of goods sold."  Docket No. 10-1 at 4, ¶ 17.  Revenue Agent Hewell

states that the information from U.S. Bank and Wells Fargo would be used to verify the

---

[4] Although petitioners' lack of a Fifth Amendment privilege with regard to records
held by third parties is dispositive of this issue, the Court notes that petitioners'
argument that § 280E compels disclosure of information is not persuasive.  As the
Tenth Circuit recently noted, the tax scheme does not require persons to claim
deductions on their tax returns.  *See Green Solution Retail, Inc.*, 855 F.3d at 1121
("Deductions . . . are not a matter of right.  Neither do they turn upon equitable
considerations.  They are a matter of legislative grace.") (quoting *United States v. Akin*,
248 F.2d 742, 743 (10th Cir. 1957)).  It was petitioners' choice to take deductions under
§ 280E on their tax returns; any investigative action taken by the IRS in response flows
from petitioners' voluntary decision.  *See also Alpenglow Botanicals*, 2016 WL 7856477
at *6 (concluding that, because the IRS obtained information to make a tax-based
determination rather than criminal wrongdoing, petitioners failed to allege a plausible
Fifth Amendment claim).

books and records of CSW and Colorado Colitas and to determine whether CSW and Mr. Wemhoff reported their tax returns consistent with their books and records.  *Id.* at 4-5, ¶ 18.

Petitioners argue that "the [g]overnment has already conceded that METRC information is not relevant to a determination of income and expenses."  Docket No. 7 at 17.  In support, petitioners point to what appears to be a lead sheet completed by an individual IRS agent.  *See* Docket 7-13.  As the government points out, the IRS articulates its positions through formal statements of policy, not through statements of individual agents.  *See Conn. Gen. Life Ins. Co. v. Comm'r of Internal Revenue*, 177 F.3d 136, 145 (3d Cir. 1999).  Even if the exhibit is taken as a concession that METRC information does not directly verify the cost of goods sold, there is no evidence supporting petitioners' conclusion that METRC information is "not relevant to a determination of income and expenses."  *See* Docket No. 7 at 17.  In his declaration, Revenue Agent Hewell explains that this information is "particularly valuable during an audit" because it "can establish whether a marijuana business properly reported its gross receipts and allowed deductions for cost of goods sold."  *See* Docket No. 10-1 at 4, ¶ 17.  "The IRS has authority to summon information 'of even *potential* relevance to an ongoing investigation.'"  *Standing Akimbo*, 955 F.3d at 1160 (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984)).  The METRC data may also be relevant to the IRS's investigation in other ways, such as providing inventory figures and helping Revenue Agent Hewell verify the accuracy of internal books and records.  *Id.* Petitioners do not argue that the information from the banks is unrelated to a legitimate purpose, *see* Docket No. 7 at 17, but any argument to that effect would fail because the

9

information may help Revenue Agent Hewell verify the accuracy of internal books and records.  *See* Docket No. 10-1 at 4-5, ¶ 18.  The Court finds that petitioners have failed to create a genuine dispute of material fact here, and the IRS has satisfied the second *Powell* factor.

### C.   The IRS Does Not Already Have the Information Sought

Revenue Agent Hewell states that the IRS did not possess the information sought when he requested the summons and that the summonsed entities have not produced the requested information.  Docket No. 10-1 at 6, ¶¶ 25–26.   As petitioners do not challenge the government's prima facie showing on this factor, the Court finds that the government has shown that the IRS does not already have the information sought.  "The taxpayers bear the burden of providing facts to contest the IRS's prima facie showing under *Powell*."  *Standing Akimbo*, 955 F.3d at 1160.  Here, petitioners have failed to demonstrate a genuine dispute of material fact regarding this issue.

### D.  Required Administrative Steps

Petitioners claim that the IRS has not followed the required administrative procedures because "[t]here is nothing in the record to show that the IRS has served [petitioners] with a Notice of Audit for 2016."  Docket No. 7 at 15.  However, in its motion to dismiss, the IRS provides letters sent by Revenue Agent Hewell to both CSW and Mr. Wemhoff confirming appointments to examine their 2016 tax returns.  *See* Docket 10-2 at 24, 28.  Further, the IRS provides copies of the document requests, the summonses, and certifications that Revenue Agent Hewell served the summonses and served notice on the petitioners.  *See* Docket No. 10-2.  Finally, Revenue Agent Hewell states that the summonses were issued in compliance with the administrative steps required by the

10

Internal Revenue Code.  *See* Docket No. 10-1 at 6, ¶ 28; *Standing Akimbo*, 955 F.3d at 1160-61 (finding administrative steps satisfied where IRS agent stated that he complied with administrative steps required by IRS).  The Court finds that this element is satisfied and, accordingly, that the IRS has met its burden under *Powell* to show a prima facie case.

### E.   Lack of Good Faith or Abuse of Process

"Once the IRS [makes a prima facie case], a 'heavy' burden falls on the taxpayer 'to factually refute the *Powell* showing or factually support an affirmative defense.'" *Speidell*, 978 F.3d at 738 (quoting *Balanced Fin. Mgmt., Inc.*, 769 F.2d at 1443).  The Tenth Circuit has acknowledged that this framework may not comport with the Supreme Court's holding in *United States v. Clarke*, 573 U.S. 248 (2014), and summary judgment standards but found that "any tension created by *Clarke* is indirect."  *Speidell*, 978 F.3d at 739 ("*Clarke* does not obviously contradict or invalidate *Balanced Financial Management*.").  The Court will therefore consider petitioners' affirmative defenses in the context of the summary judgment standard and without requiring petitioners to satisfy a "heavy" burden.

Petitioners argue that, notwithstanding the IRS's prima facie case, the summonses should not be enforced because the IRS has not acted in good faith in issuing the summonses.  Docket No. 7 at 18.  Petitioners also argue that the summonses are unreasonable and unenforceable because they are overbroad, that the summons to the MED forces it to prepare documents that do not exist, that the summonses would violate petitioners' Fourth Amendment rights, and that the summonses require the commission of a state law crime.  *Id.* at 18–34.  None of these

arguments has merit.

First, petitioners allege that "[t]he IRS is not acting in good faith by alleging and investigating by means of summons inherently criminal activity . . . that may be shared with law enforcement" despite the fact that the IRS "fail[s] to officially refer the matters to the Department of Justice." *Id.* at 19.  As noted earlier, the IRS can enforce § 280E absent a criminal investigation or prosecution.  *See Green Sol. Retail, Inc.*, 855 F.3d at 1121; *Alpenglow Botanicals*, 894 F.3d at 1197.  Thus, there is no basis to conclude that the IRS is not acting in good faith.  *See Villarreal v. United States*, 524 F. App'x 419, 423 (10th Cir. 2013) (unpublished) (rejecting as conclusory a taxpayer's claim that the IRS's subpoena of bank records was a "harassment campaign").

Petitioners next claim that the MED summons is overbroad because it constitutes a "fishing expedition" of the records of third parties.  Docket No. 7 at 29–30 (quoting *United States v. Coopers & Lybrand*, 550 F.2d 615, 619-20 (10th Cir. 1977)). Petitioners allege that the MED summons is actually a "John Doe" summons pursuant to 26 U.S.C. § 7609(f) and that the IRS has not shown that the summons is warranted under the statutory factors.  *Id.*  The Court finds these arguments misplaced.  "A summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the ends sought."  *Coopers & Lybrand*, 550 F.2d at 621.  As the IRS points out, § 7609(f) "only applies when the summons does not identify the person with respect to whose liability the summons is issued."  *See Rifle Remedies, LLC v. United States*, No. 17-mc-00062-RM, 2017 WL 6021421 at *3 (D. Colo. Oct. 26, 2017).  The Court finds that the MED summons does not constitute a fishing expedition, as the IRS has shown that the information sought (licenses held) is proportionate to the ends

(confirming which entity or entities submitted information to METRC). *See Coopers &*

*Lybrand*, 550 F.2d at 621.  Further, "*Powell* does not require that the IRS explain why it

seeks information beyond showing its potential relevance to a legitimate purpose."

*Standing Akimbo*, 955 F.3d at 1166.  Therefore, petitioners' overbreadth argument fails.

Next, petitioners contend that the MED summons would force the MED to "create

documents," which is beyond the summoning power of the IRS.  Docket No. 7 at 31–34.

This argument also fails.  As another judge in this district has observed:

> Should the items requested exist and be in MED's possession, then MED
> should be expected to produce that which has been requested.  To take
> the analogy used by respondent, should MED possess something akin to
> a bank statement . . .  then compliance with the summons should be
> expected.  If, however, the summons should require MED to produce a
> report that it would not ordinarily or otherwise produce from its database of
> information, then respondent very well may find itself having to process
> that information itself.  In other words, in such a situation, MED may only
> need to produce the entirety of the database of information because that is
> the only document or data source that MED has created and possesses.

*See Rifle Remedies*, 2017 WL 6021421 at *2.  While the IRS cannot compel the MED to

create documents, that limitation does not mean that enforcing the summons

demonstrates either a lack of good faith or an abuse of process by the IRS.  *See id.*

Further, in *Standing Akimbo,* the Tenth Circuit rejected similar assertions by the

taxpayers, noting that, "[i]f the [MED] does not have the requested reports, then by the

IRS's guidelines the [MED] need not create or produce them.  Nothing requires the

[MED] to create the records, and the summons does not purport to say otherwise."  955

F.3d at 1164.  The Court finds that there is no genuine dispute of material fact as to this

issue.

Petitioners argue that the summonses to the MED violate their Fourth

Amendment rights because they have a reasonable expectation of privacy in the METRC records and the IRS compelling the MED to turn over that information amounts to an unconstitutional search.  Docket No. 7 at 25–29.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . shall not be violated."  U.S. Const. amend. IV.  The Fourth Amendment protects "what [one] seeks to preserve as private, even in an area accessible to the public," but not "[w]hat a person knowingly exposes to the public, even in [their] own home or office." *Katz v. United States*, 389 U.S. 347, 351 (1967).  In examining whether a person's Fourth Amendment rights are violated, courts ask "whether the person claiming the constitutional violation had a legitimate expectation of privacy in the premises searched."  *Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) (citing *Rakas v. Illinois*, 439 U.S. 128, 133 (1978)) (internal quotations omitted).

In *United States v. Miller*, 425 U.S. 435 (1976), the Supreme Court concluded that the Fourth Amendment did not protect documents provided by respondent to his bank from an IRS summons.  The Supreme Court reasoned that "[t]he depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government . . . even if the information is revealed on the assumption that it will be used only for a limited purpose."  *Id*. at 443.  Similarly, the Tenth Circuit in *Standing Akimbo* held that "[t]he [petitioners] have no reasonable expectation of privacy in the METRC data collected on their business."  955 F.3d at 1164.

Petitioners contend that they do not "voluntarily" give this information to the MED because they are required to do so by Colorado law.  Docket No. 7 at 27.  The court in

14

*Standing Akimbo* rejected this argument, stating that taxpayers voluntarily chose to operate a marijuana business under Colorado law and thus "agreed to provide certain information to the [MED]."  955 F.3d at 1164.  Additionally, "while Colorado law [] treat[s] the information as confidential, it also allows disclosure under certain circumstances, and 'even if the statute somehow provides [petitioners] with a right of privacy here, the statute would be preempted by the Supremacy Clause.'"  *Speidell*, 978 F.3d at 744 (quoting *Standing Akimbo*, 955 F.3d at 1165).  Accordingly, the IRS does not – as petitioners contend – need a warrant and a finding of probable cause to issue a summons for the METRC data.  *See* Docket No. 7 at 28–29.

Finally, petitioners suggest that enforcing the summons would compel individuals to commit a state law crime.  Docket No. 7 at 31.  The statute that petitioners rely on to criminalize disclosure of METRC information has been repealed and relocated.  *See* Colo. Rev. Stat. Ann. § 12-43.3-202(d).  The now-applicable statute states that MED "shall maintain the confidentiality of . . . [r]eports and other information obtained from a medical marijuana or retail marijuana licensee. . . . Such reports or other information may be used . . . for investigation or enforcement of any international, federal, state, or local securities law."  Colo. Rev. Stat. Ann. § 44-10-204(1)(a).  In *Standing Akimbo*, the Tenth Circuit found that this statute did not preclude sharing METRC data with the IRS, but even if it did, the Supremacy Clause would preempt it.  955 F.3d at 1165.  The court in *Speidell* followed this logic and concluded that a "MED employee's compliance with a summons seeking METRC information 'would not constitute a crime.'"  *Speidell*, 978 F.3d at 744 (quoting *Standing Akimbo*, 955 F.3d at 1167-68).  This argument is therefore insufficient to raise a genuine issue of material fact.

15

If a taxpayer cannot "cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing" because holding such a hearing "would be a waste of judicial time and resources." *Balanced Fin. Mgmt., Inc.*, 769 F.2d at 1444.  Because petitioners have not presented factual support for their claims that the IRS is not acting in good faith or is abusing the process, the Court finds that petitioners have not raised a proper affirmative defense.  Because the IRS has demonstrated it is entitled to enforce the summonses and petitioners have failed to show a material issue of disputed fact, petitioners' petition to quash the summons will be dismissed.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the United States' Motion to Dismiss Petition and Enforce Summonses [Docket No. 4] is **DENIED AS MOOT**.  It is further

**ORDERED** that the United States' Motion to Dismiss Amended Petition and Enforce Summonses [Docket No. 10] is **GRANTED**.  The summonses issued to U.S. Bank National Association, Wells Fargo Bank N.A., and the Colorado Marijuana Enforcement Division are **ENFORCED** pursuant to 26 U.S.C. § 7604.  It is further

**ORDERED** that petitioners' Amended Petition to Quash Summonses [Docket No. 7] is **DISMISSED**.  It is further

**ORDERED** that this case is closed.


DATED December 15, 2020.

16

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge